Thomas G. Waller
Alaska Bar No. 0109052
BAUER MOYNIHAN & JOHNSON LLP
2101 4TH Avenue - 24th Floor
Seattle, WA 98121
(206) 443-3400

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| JOSEPH ABRUSKA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NORTHLAND VESSEL LEASING COMPANY, LLC and NAKNEK BARGE, LLC, and NORTHLAND SERVICES, INC.,<br><br>　　　　　Defendants. | CASE NO. A04-209 CV (JKS) |

**DECLARATION OF LEO NAEKEL**

1. I, Leo Naekel, have been asked by Tom Waller to serve as defense expert in this lawsuit.

2. Attached as Exhibit 1 to this declaration is a true copy of the expert witness report I personally drafted.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNED this 4-27-06 day of April 2006, at Seattle, Washington.

_Leo C Naekel_ (signature)
Leo Naekel

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DECLARATION OF LEO NAEKEL
Abruska / Northland; No. A04-209 CV (JKS)
- 1 of 1 -

Leo C. Naekel           Phone 425.743.0524           Dated : 02-21-06
16632 1 st Ave S E
Bothell, WA 98012

          Evaluations and Opinions of Longshore Workplace
          Safety, Barge Industry Operations, and Regulatory
          Safety Standard and Rule Application.

Barge BARANOF TRADER Issues.

Section A. Was the Barge reasonably safe for expert and experienced longshoremen?
      Yes, as follows.
1) A two (2) wire Safety Hand Rail System was in place. The wires appear to Be Dead Ended with a turnbuckle for adjustment at each 90 degree turn, and At the Port and Stbd loading Key, and at the forward Breakwater/Spray Shield. (See Exhibit 4).
The loading key is an approximate 40' opening, either side, Port or Stbd Where the safety hand rail fence is removed or laid down to facilitate Cargo loading or unloading, and is replaced when completed.
The Dead Ending is important to maintain taut fence wires when a section, Such as the key is removed of laid down. The middle wire was also Dead Ended at each mooring cleat to allow room for safe mooring operations, And still maintain the ability to adjust the fence wires in way of stretching Or damage.

2) The walkway between the wood wear deck coaming and the gunwale is Clear, except for the lashing pad eyes welded approximately 3" outboard Of the wear deck coaming and typically 8' apart, leaving a 15" clear Walkway. (see exhibit 7)

3) While tank vents, valves, and manhole covers do obstruct a walkway total Clear path, they generally do not pose an obstruction to lashing or unlashing Because lashing to a vent or a manhole cover is not an acceptable strength Wise option. There is ample walkway space either side of a vent, for a man to pass by, and only a stepping hazard over a manhole cover.

4) The wood wear deck appears to be well maintained, clear of lashing gear, but With pad eye holes that can be tripping or ankle twisting hazards in the dark.. Pad eye holes in the deck are required to lash the inboard side of containers Under certain stowage requirements. (Room to work Industry Standards, Barge safety maintenance, and Federal Safety Rules a addressed in the Following four (4) sections.

Section B) Was there sufficient room, (approximately 17" to 18")between containers and the Perimeter Safety Hand Rail Wire?

                                                          Page 1

EXHIBIT 1  PG 1/19

Section B)
Continued.
1) Normal walking in a 16" or 18" wide walkway poses no problem, except
In way of fuel tank vents, where the vent normally only takes up 1/3 of the
Walkway space. Although moving past a vent can be close, it poses no problem
Due to the vent height at approximate upper leg height you need only to turn
Sideways to pass by. (Exhibit 8)

2) There is sufficient room for an experienced longshoremen to perform lashing
Work.
   a) Normal position to attach turnbuckle to longlink lashing chain is in a
      Standing upright position.
   b) Normal position to attach the lower turnbuckle shackle to the deck pad
      Eye is crouching or kneeling on one knee which places the workers hip
      Or low back area at he same height as the mid course (18") perimeter
      Safety wire.
   c) Normal position to tighten or loosen the turnbuckle is the same
      Crouching or kneeling position, then two (2) hands, one (1) at he top
      Eye to the turnbuckle to prevent turning, and one (1) hand with a
      Turning bar approximately 18" long, inserted thru the center of the
      Turnbuckle mid section.
   d) Vents and valves are normally not in the way, as there is a 7' to 8'
      Space between pad eyes, with adequate room in the walkway either
      Side of a vent or on top of manhole cover.
   e) Mooring cleats in way of a pad eye are only a space problem if the
      Mooring line is flaked out, or wrapped on a cleat, which the worker
      Must move.

Section C) Was the perimeter two(2) wire system similar to what is encountered on other
Barges? Is the two (2) wire system the industry standard? Is the two (2) wire
System a sound safety mechanism to prevent longshoremen from falling
Overboard?

1) The two (2) wire system is similar to what I have encountered on the
   Lower 48 west coast, and most port in Alaska, over 30 years. The only
   3 wire system I have encountered is on a B. P (British Petroleum)
   Combination Deck Cargo/tank barge at Prudhoe Bay. B. P. has raised
   All of its safety standards to surpass OSHA and USCG laws/rules.

2) The reason that the two (2) wire system is predominate in the Industry are
   OSHA Safety Laws, CFR 29, part 1918.53, 1918.36, and 1918.37, that
   require barges to have, (ie: Employers to provide) a taut handline or
   Reasonable grab rail. Specific requirements are taut wire perimeter
   Handline handrail, minimum 36" high to a maximun of 42" high with a
   Midwire approximately 18" above the deck.. (see exhibit 9, 10, 13 )
   OSHA Engineering, ANSI testing, and Industry input is required
   During the rule making process, and prior to Final Rules, Standards.

EXHIBIT _1_ PG 2/19

Section C) 2)
Continued.      And Laws. Due to these Safety Regulations the two (2) wire system is Standard within the Industry.

   3) INSPECTIONS; Inspected-Certificated Barges are inspected by three (3) Regulatory Agencies; USCG (Coast Guard), ABS (American Bureau of Shipping), and OSHA (Occupational Safety and Health Administration, Dept of Labor.

   USCG inspects Barges afloat yearly, called a COI. Items inspected are navigation lights, deck fixtures such as safety hand rails, deck plating., vents and valves, sideshell where visible, and barge hull internals. If all items are correct a new COI is issued for an additional year. USCG also does complete Drydock Inspection every 5 years.
   USCG 46 CFR 92.25(a) requires a 3 wire safety hand rail system on Ocean Deck Cargo Barges, where as 46CFR 32.02(a) exempts Unmanned Tank Barges, Therefore at a COI inspection of a Unmanned Combination Deck Cargo/Tank Barge is exempt and 46 CFR 92.25(a) does not apply. (see exhibit 12)

   ABS inspections are generally timed to coinside with USCG.

   OSHA inspections are random and scheduled by OSHA personell to coinside with cargo operations on barges at loading unloading berths or terminals. All cargo equipment, and safety equipment aboard the barge, as well safety fixtures affixed to the barge are inspected. Cargo equipment is generally forklifts tophandlers, cranes, and or motorized manlifts. Equipment and Safety gear are generally equipment ramps personnel ramps, manhole manway opening guards, safety fence hand rail systems, fall protection and life rings. PPE; safety glasses, hard hats, visibility vests, PFD work vests, dnd safety shoes.

   4) In my opinion the two wire hand rail safety system is sound. Having worked Within the confines of a two wire safety hand rail system for 30 years, and knowing the OSHA engineering and field testing, plus Industry wide Hearings conducted prior to implementation as law, gives me confidence in the safety provided

Section D) Who is responsible for and to ensure safety for longshoremen, the longshore Employer, or the vessel owner?

   1) Barge Safety, and Barge Safety Maintenance responsibility within the Barging industry falls to the Stevedoring Company that employs the longshoremen. The Stevedoring Co. is by law responsible for longshoremen safety aboard a vessel, regulated by OSHA on a vessel, and shoreside

EXHIBIT 1 PG 3/19

Section D) 1)
Continued

    regulated by A State Safety Agency, under the Federal Longshore and Harbor Workers Compensation Act.

  ) The Stevedoring Co employs the longshoremen as cargo handlers, receiving, Preparing, loading, stowing within Hazardous cargo guidelines. The Stevedoring is also responsible for the barge trim and list for safe towage, Cargo Surveys, which includes barge tow gear inspections, and Cargo lashings.
Vessel Owners; generally Bareboat Charter a vessel to a Barge-Cargo Operating Co. In some cases the owner furnishes just the bare hull. In most cases the barge is outfitted with a breakwater/spray shield, navigation lights, tow bridle, wood wear deck and perimeter safety fence, as part of the Bareboat Charter Agreement, either as special outfitting for a special project, or from a previous charter.

3) The Operating (Chartering) Co. generally outfits the barge at a shipyard, or Outfitting yard to the specifications required by the service the barge will be performing, including items required by various regulating agencies.
The Barge Operating Co generally contracts with a towing co which furnishes a tug to tow the barge from Port A to Port B, and contracts with a Stevedoring Co which provides the longshore labor, cargo handling equipment, and expertise to load and unload barges. The Barge Operating Co generally maintains it's own sales force, office personnel, Cargo rating, accounting, and provides hull and cargo insurance.

The Stevedoring Co. is generally the entity contracted to provide Barge Safety Maintenance, because they have the equipment and expertise to provide the Service at a loading terminal and at a remote outport loading or unloading Berth.

Section E) Do longshoremen work around obstacles such as tank vents, catch basins, Containments on a routine basis?

1) Longshoremen can and do routinely work around various obstacles such as tank Vents, loading manifolds, single valves, catch basins, mooring cleats, and oversize cargo. Vents and loading valve manifolds generally only take up $1/3^{rd}$ of a walkway, allowing adequate room to move past. Routine work is performed near or around vents and such obstacles because the work is adjacent to not on or in. Lashing rails, pad eyes, "D" rings are located adjacent to vents, containments, and manhole covers to: a) keep vents free of lashing chains that could apply bending forces, and binding forces on the vent operation, b) to keep manhole covers free to enable removal and or replacement, c) to allow adequate room to hook up and tighten of loosen a turnbuckle, d) lashing need to be accessible in the worst weather conditions such as ice, snow, wind, rain. Therefore, lashings are a planned by layout to

Section E) 1) Continued.

Be accessible even though in constricted areas such as barge perimeter Walkways. As long there is room to walk around or stoop under cargo, there is Room for an experienced lonshoremen to work safely.

Barge motion caused by surge alongside a dock in an area of huge tidal swings Is a hazard that experienced longshoremen work with routinely, on a daily basis. Longshoremen must continuously monitor and tighten loose mooring lines, and loosen tight mooring lines to control the barge surge. Additionally. Forklift, tophandler operators add to the barge motion while accelerating and braking.

End of Issues.

Summary:  Barge cargo operations can be hazardous

Due to cargo dimensions, i.e; heavy, oversized, (long wide high) barge deck layout Must be flexible, but remain within safety regulations, trim list and center of gravity Specifications for a particular barge.

Experienced lonshoremen with proper safety outfitting, tools, and PPE can and do Work safely.

*Leo C Naekel* (signature)

EXHIBIT  1   PG 5/19

## EXHIBITS

| | |
|---|---|
| EX – 1  | Barge perimeter walkway |
| EX – 2  | Safety handrail and lashings |
| EX – 3  | Longshoremen within perimeter walkway |
| EX – 4  | Fixed perimeter safety hand rail end post at key area |
| EX – 5  | Barge moorings during extensive tidal range |
| EX – 6  | Forklift tophandler operation and tide effects |
| EX – 7  | BARANOF TRADER perimeter walkway lashing rail layout |
| EX – 8  | Perimeter walkway safety fence, vent, cargo, lashing relationship to Available working space. |
| EX – 9  | CFR 29  1918.36 weather deck rails |
| EX –10  | CFR 29  1918,37 Barges |
| EX –11  | 46 CFR 92.25 (a) USCG 3 course guard rails |
| EX –12  | 46 CFR 32.02 – 10 (a) Unmanned tank barge guard rails |
| EX –13  | CFR 29 1918.36 and 1918,37  Final rule |

**WITNESS QUALIFICATIONS:**   30 years Barging Industry.

| | |
|---|---|
| 1976 thru 1979 | Loading, lashing, lightering cargo, Seattle, Nome, AK, Kotzebue, AK, Nikiski, AK |
| 1980 thru 1983 | Loading, stowing, lashing cargo, San Francisco area, and unloading at Prudhoe Bay, AK |
| 1984 thru 1989 | Loading, stowing, lashing, Seattle, and Anchorage, unloading Naknek, Dillingham, and Bethel, AK, and manage Kuskokwim River operation. |
| 1990 thru mid 2000 | Manage Stevedoring Longshore Terminal 115 Seattle, Pre-stowing loading, lashing, trimming, Inspecting, and maintaining Barges, (approx 2.5 barges per week) for Alaska South East, Cook Inlet, Aleutian Chain, and Hawaiian Service. |
| 2000 thru 2005 | Seasonal, (Arctic open water) July thru mid Oct., Pre-stow, loading lashing, oilfield materials,(mud pipe. Etc) drilling equipment, Drill Rigs, from and to Prudhoe Bay, AK, to and from Offshore Island And remote sites along the Arctic coast. |

**COMPENSATION.**    Daily Rate  $480.00  per 8hour day
Hourly Rate $ 60.00 per hour
Plus Expenses incurred, but not limited to; Travel Time,
Air fare, Auto Transportation, parking, Hotel Fare, meals.

Trial Testimony as an Expert Witness:
   1989   SOHIO (Standard Oil Ohio) Personal Injury Trial. SOHIO  defendant, At San Francisco, CA.

   2003   Alaska Cargo Transport, Wrongfull death Trial, Seattle, WA.

EXHIBIT  1   PG  6/19



Ex 1



EX-2

EXHIBIT  1  PG 8/19



EX-3

EXHIBIT __1__ PG __9/19__



EX-4

6

EXHIBIT 1  PG 10/19



Ex-5

//

EXHIBIT   /   PG  11/19

EX 6

 

EXHIBIT __1__ PG _12/19_



EX-7

10



EX 8

§ 1918.35 Open hatches.

Open weather deck hatches around which employees must work that are not protected to a height of 24 inches (.61 m) by coamings shall be guarded by taut lines or barricades at a height of 36 to 42 inches (.91 to 1.07 m) above the deck, except on the side on which cargo is being worked. Any portable stanchions or uprights used shall be supported or secured to prevent accidental dislodgement.

67 words

17 of 66 DOCUMENTS

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 3, 2006 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 29 -- LABOR
SUBTITLE B -- REGULATIONS RELATING TO LABOR
CHAPTER XVII -- OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, DEPARTMENT OF LABOR
PART 1918 -- SAFETY AND HEALTH REGULATIONS FOR LONGSHORING
SUBPART D -- WORKING SURFACES

Go to the CFR Archive Directory

29 CFR 1918.36

EX-9

§ 1918.36 Weather deck rails.

Removable weather deck rails shall be kept in place except when cargo operations require them to be removed, in which case they shall be replaced as soon as such cargo operations are completed.

34 words

18 of 66 DOCUMENTS

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 3, 2006 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 29 -- LABOR
SUBTITLE B -- REGULATIONS RELATING TO LABOR
CHAPTER XVII -- OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, DEPARTMENT OF LABOR
PART 1918 -- SAFETY AND HEALTH REGULATIONS FOR LONGSHORING

EXHIBIT  1  PG 15/19

29 CFR 1918.37

## SUBPART D -- WORKING SURFACES

**Go to the CFR Archive Directory**

*29 CFR 1918.37*

§ 1918.37 Barges.

EX-10

(a) Walking shall be prohibited along the sides of covered lighters or barges with coamings or cargo more than five feet (1.52 m) high unless a three-foot (.91 m) clear walkway or a grab rail or taut handline is provided.

(b) Walking or working shall be prohibited on the decks of barges to be loaded unless the walking or working surfaces have been determined by visual inspection to be structurally sound and maintained properly. If, while discharging a barge, an unsound deck surface is discovered, work shall be discontinued and shall not be resumed until means have been taken to ensure a safe work surface.

104 words

19 of 66 DOCUMENTS

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, LEXIS Publishing

\*\*\* THIS SECTION IS CURRENT THROUGH THE JANUARY 3, 2006 ISSUE OF \*\*\*
\*\*\* THE FEDERAL REGISTER \*\*\*

TITLE 29 -- LABOR
SUBTITLE B -- REGULATIONS RELATING TO LABOR
CHAPTER XVII -- OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, DEPARTMENT OF LABOR
PART 1918 -- SAFETY AND HEALTH REGULATIONS FOR LONGSHORING
SUBPART E -- OPENING AND CLOSING HATCHES

**Go to the CFR Archive Directory**

*29 CFR 1918.41*

§ 1918.41 Coaming clearances.

(a) Weather decks. If a deck load (such as lumber or other smooth sided deck cargo) more than five feet (1.52 m) high is stowed within three feet (.91 m) of the hatch coaming and employees handling hatch beams and hatch covers are not protected by a coaming at least 24-inch (.61 m) high, a taut handline shall be provided along the side of the deckload. The requirements of § 1918.35 are not intended to apply in this situation.

(b) Intermediate decks. (1) There shall be a three-foot (.91 m) working space between the stowed cargo and the coaming at both sides and at one end of the hatches with athwartship hatch beams, and at both ends of those hatches with fore and aft hatch beams, before intermediate deck hatch covers and hatch beams are removed or replaced. Exception: The three-foot (.91 m) clearance is not required on the covered portion of a partially open hatch, nor is it required when lower decks have been filled to hatch beam height with cargo of such a nature as to provide a safe surface upon which employees may work.

EXHIBIT 1   PG 16/19

EX-11

*Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

Abruska alleges that the railings on the BARANOFF TRADER did not comply with § 92.25-5(a), which provides in pertinent part:

> All vessels shall have efficient guard rails or bulwarks on decks and bridges. . . . At exposed peripheries of the freeboard and superstructure decks, the rails shall be in at least three courses, including the top. The opening below the lowest course shall not be more than 9 inches. The courses shall not be more than 15 inches apart.

46 C.F.R. § 92.25-5(a). Abruska's argument, simply stated, is that the BARANOFF TRADER did not meet these requirements. He points to Defendants' admissions that the barge only had two courses of railings, rather than three, and that the railings were 17 1/2 inches apart, rather than the required 15. *See* Docket No. 8, Exs. 2 at 1, 3 at 1, 4 at 2, 5 at 2.

Defendants respond that § 92.25-5 does not apply to the BARANOFF TRADER, which is an unmanned barge, because Volume IV, Chapter 5 of the Coast Guard's Marine Safety Manual ("MSM") exempts unmanned barges from the requirements of § 92.25-5. Docket No. 9 at 1. Defendants make this conclusion by linking a series of related arguments regarding exemption. The first is that the BARANOFF TRADER was issued a certificate of inspection ("COI") from the United States Coast Guard. *Id.* at 3, (Decl. of E. Hiersche) Ex. 1. Defendants seem to make one of two contentions. Either the COI exempts the BARANOFF TRADER from compliance with § 92.25-5, in effect superceding the Code's requirements, or the COI satisfies the remaining language of § 92.25-5. The first implication must fail since, as Abruska points out in his reply, an agency has discretion in its enforcement decisions. *See Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001) ("[A]gency's refusal to investigate or enforce is within the agency's discretion, unless Congress has indicated otherwise."). Any failure on the part of the Coast Guard to cite the BARANOFF TRADER for violating § 92.25-5, assuming the regulation applied to the barge, would not be evidence that the section was therefore inapplicable. Even assuming the BARANOFF TRADER's rails were statutorily insufficient, the COI means only that the Coast Guard chose to issue the COI in spite of any violation.

ORDER
F:\HOME\JUDGES\DOCS\SHARED\CIV\D.AK 2004\A04-0209.001.wpd         3

EXHIBIT __1__ PG 17/19

The second implication, however, links up with the rest of Defendants' argument, which is essentially that with the discretion afforded the Coast Guard by the regulation, the agency can exempt vessels from compliance. Section 92.25-5(a) further provides:

> If it can be shown to the satisfaction of the Officer in Charge, Marine Inspection, that the installation of rails of such height will be unreasonable and impracticable, having regard to the business of the vessel, rails of a lesser height or in some cases grab rails may be accepted and inboard rails may be eliminated if the deck is not generally accessible.

46 C.F.R. § 92.25-5(a). The COI issued to the BARANOFF TRADER was signed by John E. Veentjer, at the direction of the Officer in Charge, Marine Inspection. Docket No. 9 (Decl. of E. Hiersche), Ex. 1 at 1. While the COI does not explicitly mention rails, Defendants explain Veentjer's approval of the BARANOFF TRADER's safety features by pointing to Volume IV, Chapter 5 of the MSM. Section 5.C.1.a of the MSM provides: "The rail and guard requirements of 46 CFR 92.25 do not apply to unmanned deck cargo barges for ocean service. Like unmanned tank barges under 46 CFR 32.01-10(a),[1] these vessels are exempt from the rail and guard requirements."[2] Docket No. 9, Ex. 2 at 5–6. Because the BARANOFF TRADER is an unmanned barge—a point upon which Abruska appears to agree—Defendants conclude that the requirements of § 92.25-5 do not apply. Further, Defendants argue that the MSM exemption, i.e., the Coast Guard's interpretation of the Code, is entitled to "substantial deference." Id at 5–6. Therefore, the Court should defer to the Agency's determination that unmanned barges are exempt from the railing requirement.

Abruska responds that the MSM describes nothing more than an internal agency guideline with no legal effect. Docket No. 10 at 3. Notably, he points out that Volume I, Chapter 1, section 1.B.1 of the MSM itself states that it "must be used in concert with appropriate marine safety laws

---

[1] While the MSM refers to § 32.01-10(a) and "unmanned tank barges," it appears that the applicable regulation is actually § 32.02-10(a), which outlines the rail exemption for unmanned tank barges.

[2] Most of the MSM is available at http://www.uscg.mil/hq/g%2Dm/nmc/pubs/msm/. Unfortunately, Chapter 5 of Volume IV is, as of yet, unavailable online. The Court will therefore cite to the particular excerpts of the MSM provided by the parties.

ORDER

EX-13

> Final rule §§ 1918.35 and 1918.36 address hazards longshore workers face when conducting operations around open weather deck hatchways or when weather deck rails are removed to conduct cargo operations. Vessels calling at U.S. ports are of varied designs and capabilities. Some vessels have coamings, which are the vertical structures that surround the hatch opening on a ship, that are much higher than the section 1918.35's minimum acceptable range (36 to 42 inches (.91 to 1.07 meters)), while other vessels may have no hatch coamings but have flush decks or decks with a short sill. Decks of the latter two types pose substantial fall hazards to longshore workers. Sections 1918.35 and 1918.36 require that, when employees work around the perimeter of open hatchways that are not protected to a height of 24 inches (.61 m) on vessels with low or no hatch coamings, appropriate guarding, such as that provided by taut lines or barricades, must be provided to a height of 36 to 42 inches (.91 to 1.07 m) on all but the working side of the hatch (§ 1918.35). Weather deck rails must be kept in place except when cargo is being worked, and they must be replaced after cargo operations are finished (§ 1918.36).

With regard to 29 CFR § 1918.37 ("Barges"), the Federal Register reported,

> Final § 1918.37, "Barges," addresses the fall hazards associated with working on the decks of lighters and barges. Final paragraph (a) prohibits the use of marginal (less than three feet (.91 m) wide) deck space along the sides of <u>covered lighters or barges</u> on all such vessels having coamings more <u>than five feet (1.5 m) high but allows</u> an employer to provide, instead, a taut handline or a serviceable grab rail. Two commenters (Exs. 6-18, 6-42) asked OSHA to allow existing barges to be "grandfathered" from compliance with § 1918.37(a) on the grounds that "Many barges currently in service do not meet the three-foot standard [the width for walkways]. Rather the walkways on these barges are only 18-24 inches in width" (Ex. 6-18). OSHA is not providing such an exemption in the final rule because this requirement has been in place since the 1960's, and it allows considerable compliance flexibility, e.g. the use of a taut handline or a serviceable grab rail in lieu of a 3-foot wide walkway. This requirement is essentially identical to that proposed.

EXHIBIT ___1___ PG 19/19