NEIL T. O'DONNELL
CHRISTOPHER J. SLOTTEE
ATKINSON, CONWAY & GAGNON
Attorneys for Plaintiff Joseph Abruska
420 L Street, Suite 500
Anchorage, Alaska 99501-1989
Phone:  (907) 276-1700
Fax:  (907) 272-2082
nto@acglaw.com
cjs@acglaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH ABRUSKA,               )<br>                                             )<br>            Plaintiff,               )<br>                                             )<br>    vs.                                   )<br>                                             )<br>NORTHLAND VESSEL LEASING )<br>COMPANY, LLC, et al.,        )<br>                                             )<br>            Defendants.         )<br>_____) | Case No. 3:04-cv-209-TMB |

### PLAINTIFF JOSEPH ABRUSKA'S RENEWED MOTION
### FOR PARTIAL SUMMARY JUDGMENT

**I.      INTRODUCTION**

Plaintiff Joseph Abruska suffered severe injuries when he fell through the two courses of railings surrounding the unmanned barge, the Baranoff Trader.  In January 2005 Plaintiff Joseph Abruska moved for partial summary judgment, arguing that the Baranoff Trader violated United States Coast Guard regulations that required three courses of railings.  In June 2005 the Honorable James K. Singleton denied Plaintiff's Motion for Partial

Summary Judgment, finding that Plaintiff had failed to show that "installation of a third rail was reasonable and practicable in light of the BARANOFF TRADER's use and design."

Discovery subsequent to Judge Singleton's order establishes that installation of a third course of rails was reasonable and practicable in light of the Baranoff Trader's use and design. Bill Emory, Northland Services' manager in Naknek, testified that there was no reason why a third course of rails could or should not be installed in the area where Joseph fell. Therefore, Plaintiff renews his Motion for Partial Summary Judgment and asks the Court to enter an order finding that the Baranoff Trader was in violation of United States Coast Guard regulation 46 C.F.R. § 92.25-5 because it had only two courses of railing.

## II.   FACTUAL BACKGROUND

This is a maritime personal injury action brought pursuant to 33 U.S.C. § 905(b) of the Longshoreman and Harbor Workers' Compensation Act. On August 24, 2003, Abruska was unloading the Baranoff Trader, a freight barge docked at Naknek, Alaska. (Ex. 1, ¶ 8).[1] Defendant Northland Vessel Leasing Company, Inc., was the owner of the Baranoff Trader. (Ex. 1, ¶ 6). Defendant Naknek Barge Lines, LLC, chartered the Baranoff Trader such that it was the owner *pro hac vice* of the Baranoff Trader. (Ex. 1, ¶ 7). Defendant Northland Services was the time charterer of the Baranoff Trader, and also an owner of the Baranoff Trader under 33 U.S.C. § 905(b). (Ex. 1, ¶ 9).

---

[1] Exhibit 1 is the Defendants' Answers and Abruska's Amended Complaint.

At the time Abruska was unloading the Baranoff Trader, the barge had two courses of railings running down each side. (Ex. 2, p. 1; Ex. 3, p. 1).[2] The two courses of railings were 17½ inches apart. (Ex. 4, p. 2; Ex. 5, p. 2).[3]

While unloading the Baranoff Trader, Abruska fell between the barge's two courses of railings. Abruska was able to stop his fall by grabbing onto the lower railing. Unfortunately, the barge subsequently moved against the adjacent dock, crushing Abruska between the barge and the dock and causing severe injuries, including a closed right femur fracture, multiple pelvic fractures, and a sacral fracture. After being crushed between the dock and the Baranoff Trader, Abruska was able to pull himself onto a stanchion located beneath the dock, where he was rescued. Joseph was lifeflighted to the Alaska Native Health Center in Anchorage where he underwent an emergency intramedullary nailing of his right femur. Joseph continues to suffer from pain in his right leg and knee (despite the recent removal of the screws that held the intramedullary nail in place), and erectile dysfunction as a result of the injuries suffered in the accident.

---

[2] Exhibits 2 and 3 are Abruska's Requests for Admissions and the Defendants' responses. In response to Abruska's Request for Admission No. 1, the Defendants admitted that there "are only two courses of railings on the side of the freight barge Baranoff Trader in the area where Plaintiff Joseph Abruska had his accident on August 24, 2003." (Ex. 2, p. 1; Ex. 3, p. 1).

[3] Exhibits 4 and 5 are Abruska's Interrogatories and the Defendants' responses. In response to Abruska's Interrogatory No. 6, the Defendants stated that there were two "safety wires" in the general area where Joseph fell over the side and that those safety wires were 17½ inches apart. (Ex. 4, p. 2; Ex. 5, p. 2).

The Baranoff Trader was constructed in 1981. (Ex. 6, p. 1). It has a gross tonnage of 1410. (Ex. 6, p. 1).[4] It is not motorized. (Ex. 6, p. 2) (noting that the Baranoff Trader is an unmanned deck cargo barge). As such, the Baranoff Trader was a seagoing barge subject to the Coast Guard regulations contained in 46 C.F.R. § 92 et. seq. See 46 C.F.R. § 90.05-1.[5] Those Coast Guard regulations required "at least three courses" of rails on a vessel such as the Baranoff Trader and the courses could not be more than 15 inches apart. See 46 C.F.R. § 92.25-5(a). There is no dispute that the Baranoff Trader had only **two** courses of railings, which were **17½** inches apart. See Ex. 2, p. 1; Ex. 3, p. 1; Ex. 4, p. 2; Ex. 5, p. 2.

## III. PRIOR PROCEEDINGS

On January 31, 2005, Plaintiff moved for partial summary judgment, seeking a declaration that the Baranoff Trader was in violation of 46 C.F.R. § 92.25-5, the Coast Guard regulation requiring barges such as the Baranoff Trader to have three courses of railings not more than 15 inches apart. See Docket 8, 10. The Defendants opposed, arguing that barges such as the Baranoff Trader are categorically exempt from complying with the

---

[4] Exhibit 6 is an excerpt from a survey of the Baranoff Trader. The complete survey is available upon request. The complete survey was also filed as Exhibit 6 to Plaintiff's original Motion for Partial Summary Judgment. See Docket 8.

[5] 46 C.F.R. § 90.05-1 states that the subchapter containing 46 C.F.R. § 92 et. seq. is applicable to all vessels indicated in Column 4 of Table 90.05-1. Column 4 of Table 90.05-1 includes "[a]ll seagoing barges...." See 46 C.F.R. § Table 90.05-1. A copy of 46 C.F.R. § 90.05-1 and 46 C.F.R. § Table 90.05-1 is attached as Attachment A. A copy of 46 C.F.R. § 92.25-5 is attached as Attachment B.

requirements of 46 C.F.R. § 92.25-5 by the United States Coast Guard Marine Safety Manual.  See Docket 9.

On June 6, 2005, although he found the issue to be "close," the Honorable James K. Singleton denied Plaintiff's motion.  (Ex. 7, p. 5).  The Court found that 46 C.F.R. § 92.25-5 did apply to the Baranoff Trader.  (Ex. 7, p. 4).  The Court also rejected the Defendants' arguments that the Marine Safety Manual was controlling and that the Certificate of Inspection issued to the Baranoff Trader conclusively established that it did not violate any regulations.  (Ex. 7, pp. 3-5).  The Court noted that the Marine Safety Manual was not entitled to deference.  (Ex. 7, p. 5).  As an internal agency manual, its provisions had only "an interpretive effect."  (Ex. 7, p. 5).

The Court, however, found that the regulations permitted the United States Coast Guard to exempt unmanned tank barges from the requirements of 46 C.F.R. § 92.25-5 if installation of a third course of railings would be "unreasonable and impracticable." (Ex. 7, p. 6).  Specifically, the court held that:

> In effect, Abruska's argument about the reasonableness and practicality of rails attempts to shift the burdens in this case.  It is *his* burden as the moving party to show that the BARANOFF TRADER was in violation of § 92.25-5.  It is certainly true that the Coast Guard cannot supersede or overrule regulations.  It is equally true that the Coast Guard cannot enforce arbitrary rules, even if allowed regulatory discretion.  But at the same time, it is clear to the Court that the applicable federal regulations do not anticipate rigid, inflexible interpretation of § 92.25-5.  The rule itself allows variances, as do other sections of the code regulating shipping, when the appropriate Coast Guard authorities determine that equivalents will be effective.  *See, e.g.,* 46 C.F.R. §§ 32.02-10(a), 90.15-1.  **What Abruska has failed to**

> **show is that installation of a third rail was reasonable and practicable in light of the BARANOFF TRADER's use and design.**

(Ex. 7, pp. 7-8) (italic emphasis in original; bold emphasis added).  Thus, the Court denied Plaintiff's Motion for Partial Summary Judgment.  (Ex. 7, pp. 8-9).

## IV.    SUBSEQUENT DISCOVERY

In September 2005 Plaintiff's deposed Bill Emory.  (Ex. 8, p. 5).  Mr. Emory is the Northland Services Operations Manager for Bristol Bay and Dutch Harbor.  (Ex. 8, p. 7).  His duties include supervising Northland Services operations in Naknek, Alaska.  (Ex. 8, p. 7).  Mr. Emory has been working for Northland Services, and working on barges, for eighteen years.  (Ex. 8, p. 70).  Mr. Emory has worked on "several hundred" barges during his career.  (Ex. 8, p. 18).  He is very familiar with the Baranoff Trader, having worked on it "countless times."  (Ex. 8, p. 18).

Mr. Emory explained that on unmanned barges such as the Baranoff Trader, the wire railings running between the stanchions surrounding the periphery of the barge can be removed.  (Ex. 8, p. 22).  For example, when a barge is loaded and unloaded, the wire railings in the "key," the loading area in the center of the barge, are removed so that cargo can be loaded onto the barge.  (Ex. 8, pp. 22-23).  These are the only wire railings that are ever removed.  (Ex. 8, p. 23).  The wire railings on the ends of the barge, such as the ones in the area where Joseph fell, are never removed.  (Ex. 8, p. 23).  Mr. Emory testified that even though he had worked on the Baranoff Trader "countless times," he had never seen wire railings removed in any area other than the "key."  (Ex. 8, p. 23).

Mr. Emory also explained that the wire railings are connected to turnbuckles, which are in turn attached to eyelets welded onto the stanchions. (Ex. 8, pp. 25, 107). Mr. Emory admitted that there was no reason why another eyelet could not be welded to a stanchion so that three wire railings could be strung. (Ex. 8, p. 107). There was no physical or practical reason for not having three wire railings. (Ex. 8, p. 107). Additionally, having three wire railings would have no impact on loading and unloading operations. (Ex. 8, p. 110).

## V.    INSTALLATION OF A THIRD RAIL IS REASONABLE AND PRACTICABLE IN LIGHT OF THE BARANOFF TRADER'S USE AND DESIGN

Judge Singleton denied Plaintiff's Motion for Partial Summary Judgment because "Abruska has failed to show that installation of a third rail was reasonable and practicable in light of the BARANOFF TRADER'S use and design." (Ex. 7, p. 8). Mr. Emory's testimony establishes that installation of a third course of railings was practicable and reasonable in light of the Baranoff Trader's use and design.

There was no physical barrier to installing a third wire railing. (Ex. 8, p. 107). Installation of a third wire railing would have no effect on loading and unloading operations. (Ex. 8, p. 107). Furthermore, the purpose of the wire railings is to prevent people from falling over the side. (Ex. 8, p. 109). Joseph, for example, fell between the two wire railings.

(Ex. 9; Ex. 10).[6] Installing a third wire railing, thus shortening the distance between wire railings, would obviously increase the safety of those working on barges such as the Baranoff Trader by preventing accidents such as Joseph's. The fundamental purpose of the Marine Safety Program and the Marine Safety Manual is to develop proactive standards and requirements that increase the safety of marine workers and passengers. (Ex. 11, pp. 8-9).[7] It is not reasonable for the United States Coast Guard to interpret 46 C.F.R. § 92.25-5 in such a way that reduces the safety of marine personnel on barges by exempting unmanned barges from the specific requirements of the regulation, when there is no practical or reasonable reason why a third course of railings could not be installed.

## VI.    CONCLUSION

Plaintiff has met the burden of proof required by Judge Singleton. There is no practical or reasonable reason why a third course of railings could not be installed on unmanned barges such as the Baranoff Trader. (Ex. 7, pp. 7-8). The United States Coast Guard could not categorically exclude unmanned tank barges from the requirements of 46 C.F.R. § 92.25-5. (Ex. 7, pp. 7-8). Since it is undisputed that the Baranoff Trader did not have three wire railings not more than 15 inches apart, the Court should grant Plaintiff's

---

[6] Exhibit 9 is an accident report created by the Defendants. It states that Joseph fell through the two railings. (Ex. 9, p. 2). The report is consistent with Joseph's description of accident. (Ex. 10, p. 164-65).
[7] Exhibit 11 is an excerpt from Chapter 1 of the Marine Safety Manual, which describes the purpose behind the United States Coast Guard's Marine Safety Program and Marine Safety Manual.

renewed Motion for Partial Summary Judgment and find that the Baranoff Trader was in violation of 46 C.F.R. § 92.25-5 at the time of Plaintiff's accident.

DATED this 3rd day of May, 2006.

                            ATKINSON, CONWAY & GAGNON
                            Attorneys for Joseph Abruska

                    By    s/ Christopher J. Slottee
                            Christopher J. Slottee
                            420 L Street, Suite 500
                            Anchorage, AK 99501
                            Phone: (907) 276-1700
                            Fax: (907) 272-2082
                            E-mail: cjs@acglaw.com
                            ABA No. 0211055

I certify that on May 3, 2006, a copy
a copy of the foregoing was served electronically
on the following attorneys or parties of record:

Thomas G. Waller, Esq.

By     s/ Christopher J. Slottee
        Christopher J. Slottee