RECEIVED
BY MAIL

JUN 0 8 2005

ATKINSON, CONWAY
& GAGNON, INC.

FILED

JUN 07 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOSEPH ABRUSKA,

Plaintiff,

vs.

NORTHLAND VESSEL LEASING
COMPANY, LLC and NAKNEK
BARGE, LLC,

Defendants.

Case No. A04-0209 CV (JKS)

ORDER

**INTRODUCTION**

Plaintiff Joseph Abruska moves for partial summary judgment on the issue of whether Defendants Northland Vessel Leasing Company, LLC ("Northland Leasing") and Naknek Barge, LLC ("Naknek") violated 46 C.F.R. § 92.25-5. Docket No. 8. Specifically, the motion alleges that the barge upon which Abruska was injured, the BARANOFF TRADER, was deficient in that it only had two courses of railings rather than the three allegedly required by § 92.25-5. Defendants oppose the motion, and Abruska has replied. *See* Docket Nos. 9 (Opp'n); 10 (Reply). The motion is ripe for a ruling.

**FACTUAL AND PROCEDURAL BACKGROUND**

Abruska was employed by Northland Services, Inc. Docket No. 8, Ex. 1 at 1, 6. Northland Leasing owned the BARANOFF TRADER, and Naknek was the owner pro hac vice of the barge. *Id*. On August 24, 2003, Abruska was employed to unload the BARANOFF TRADER. *Id*., Ex. 1 at 1–2, 6. He alleges that while he was "engaged in shackling operations," he slipped and fell "between the two cables running the circumference of the BARANOFF TRADER." *Id*., Ex. 1 at 7.

1

Exhibit 7
Page 1 of 9 Pages

He caught himself on the lower cable, but when the barge moved back against the dock, Abruska was "crushed" between the dock and the barge. *Id.* He alleges that he suffered extensive personal injuries from the accident and brought suit in federal court, alleging that Northland Leasing and Naknek were negligent "in using and furnishing unsafe and improper railings." *Id.*, Ex. A at 8. The Court has jurisdiction. *See* 28 U.S.C. § 1333(1).

## DISCUSSION

As outlined above, Abruska argues in his motion for partial summary judgment that the BARANOFF TRADER did not meet the requirements of the applicable federal regulations. He moves the Court for a declaration that the barge did not comply with 46 C.F.R. § 92.25-5. The standards for summary judgment are well settled. Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party. 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v.*

ORDER

Exhibit ___1___

Page _1_ of _1_ Pages

*Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

Abruska alleges that the railings on the BARANOFF TRADER did not comply with § 92.25-5(a), which provides in pertinent part:

> All vessels shall have efficient guard rails or bulwarks on decks and bridges. . . . At exposed peripheries of the freeboard and superstructure decks, the rails shall be in at least three courses, including the top. The opening below the lowest course shall not be more than 9 inches. The courses shall not be more than 15 inches apart.

46 C.F.R. § 92.25-5(a). Abruska's argument, simply stated, is that the BARANOFF TRADER did not meet these requirements. He points to Defendants' admissions that the barge only had two courses of railings, rather than three, and that the railings were 17 1/2 inches apart, rather than the required 15. *See* Docket No. 8, Exs. 2 at 1, 3 at 1, 4 at 2, 5 at 2.

Defendants respond that § 92.25-5 does not apply to the BARANOFF TRADER, which is an unmanned barge, because Volume IV, Chapter 5 of the Coast Guard's Marine Safety Manual ("MSM") exempts unmanned barges from the requirements of § 92.25-5. Docket No. 9 at 1. Defendants make this conclusion by linking a series of related arguments regarding exemption. The first is that the BARANOFF TRADER was issued a certificate of inspection ("COI") from the United States Coast Guard. *Id.* at 3, (Decl. of E. Hiersche) Ex. 1. Defendants seem to make one of two contentions. Either the COI exempts the BARANOFF TRADER from compliance with § 92.25-5, in effect superceding the Code's requirements, or the COI satisfies the remaining language of § 92.25-5. The first implication must fail since, as Abruska points out in his reply, an agency has discretion in its enforcement decisions. *See Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001) ("[A]gency's refusal to investigate or enforce is within the agency's discretion, unless Congress has indicated otherwise."). Any failure on the part of the Coast Guard to cite the BARANOFF TRADER for violating § 92.25-5, assuming the regulation applied to the barge, would not be evidence that the section was therefore inapplicable. Even assuming the BARANOFF TRADER's rails were statutorily insufficient, the COI means only that the Coast Guard chose to issue the COI in spite of any violation.

ORDER

Exhibit 7

Page 3 of 9 Pages

The second implication, however, links up with the rest of Defendants' argument, which is essentially that with the discretion afforded the Coast Guard by the regulation, the agency can exempt vessels from compliance. Section 92.25-5(a) further provides:

> If it can be shown to the satisfaction of the Officer in Charge, Marine Inspection, that the installation of rails of such height will be unreasonable and impracticable, having regard to the business of the vessel, rails of a lesser height or in some cases grab rails may be accepted and inboard rails may be eliminated if the deck is not generally accessible.

46 C.F.R. § 92.25-5(a). The COI issued to the BARANOFF TRADER was signed by John E. Veentjer, at the direction of the Officer in Charge, Marine Inspection. Docket No. 9 (Decl. of E. Hiersche), Ex. 1 at 1. While the COI does not explicitly mention rails, Defendants explain Veentjer's approval of the BARANOFF TRADER's safety features by pointing to Volume IV, Chapter 5 of the MSM. Section 5.C.1.a of the MSM provides: "The rail and guard requirements of 46 CFR 92.25 do not apply to unmanned deck cargo barges for ocean service. Like unmanned tank barges under 46 CFR 32.01-10(a),[1] these vessels are exempt from the rail and guard requirements."[2] Docket No. 9, Ex. 2 at 5–6. Because the BARANOFF TRADER is an unmanned barge—a point upon which Abruska appears to agree—Defendants conclude that the requirements of § 92.25-5 do not apply. Further, Defendants argue that the MSM exemption, i.e., the Coast Guard's interpretation of the Code, is entitled to "substantial deference." *Id* at 5–6. Therefore, the Court should defer to the Agency's determination that unmanned barges are exempt from the railing requirement.

Abruska responds that the MSM describes nothing more than an internal agency guideline with no legal effect. Docket No. 10 at 3. Notably, he points out that Volume I, Chapter 1, section 1.B.1 of the MSM itself states that it "must be used in concert with appropriate marine safety laws

---

[1] While the MSM refers to § 32.01-10(a) and "unmanned tank barges," it appears that the applicable regulation is actually § 32.02-10(a), which outlines the rail exemption for unmanned tank barges.

[2] Most of the MSM is available at http://www.uscg.mil/hq/g%2Dm/nmc/pubs/msm/. Unfortunately, Chapter 5 of Volume IV is, as of yet, unavailable online. The Court will therefore cite to the particular excerpts of the MSM provided by the parties.

ORDER

Exhibit 7
Page 4 of 9 Pages

and regulations. In any case of apparent conflict between provisions of this manual and any statute or regulation, the legal requirements shall be observed." *Id.*, Ex. 3 at 7. The Commandant Notice accompanying Volume IV, which contains the allegedly exempting section to which Defendants point, is consistent with this principle. It states: "In cases of apparent conflict between this volume and provisions of statutes or regulations, the latter provisions shall be applied and Commandant (G-M) shall be advised of the apparent conflict." *Id.*, Ex. 4 at 2. Abruska reads section 5.C.1.a of the MSM to conflict with § 92.25-5, in which case the provisions of the Code control. And finally, because the MSM was not subject to the notice and comment procedures of the Administrative Procedures Act, Abruska argues that it has no legal effect, should not be given deference, and cannot override the express terms of the Code. *Id.* at 4, 9.

This motion presents several issues for the Court to resolve. First, the Court must determine if § 92.25-5 gives the Coast Guard discretion regarding the rail requirement. If not, then the MSM presents simply an interpretation of the rule entitled to no deference. The Court would simply look to the regulation in determining whether the BARANOFF TRADER met its requirements. If the regulation does afford the Coast Guard discretion, then the Court must determine if that discretion has been expressed by the MSM. And, if so, whether the COI issued by the Coast Guard expresses that discretion and meets the requirements of the regulation.

After reviewing the parties' briefs and the regulations in this case, the Court finds the issue close. Clearly, this case would be much easier if the Coast Guard had issued a certificate that specifically exempted the BARANOFF TRADER from the three-rail requirement after evaluating the reasonableness of the barge's rails in light of its commercial purpose. However, such is not the case. The Court must act on the COI's silence and determine whether that silence signifies anything.

Initially, several points are apparent. First, the MSM, as a Coast Guard manual, is not entitled to *Chevron* deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Thus, even if it is consistent with § 92.25-5, its provisions have only an interpretive effect. *See Cmty. Hosp., Monterrey Peninsula v. Thompson*, 323 F.3d 782, 790–91 (9th Cir. 2003). In other words, the MSM is entitled to "respect," but only to the extent it has the "power to persuade." *Christensen,*

ORDER

Exhibit __7__

Page _5_ of _9_ Pages

529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The MSM's power to persuade is determined in part by "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements," and other factors, all of which are in turn dependant upon "the body of experience and informed judgment" of the Coast Guard. *See Skidmore*, 323 U.S. at 140.

With regard to the issue of whether the Court should even turn to the MSM, Abruska's first argument—the MSM conflicts with the facial language of § 92.25-5—fails to account for the fact that the regulation provides for exceptions to its requirements. As outlined above, the regulation clearly allows variances from the three-rail requirement if the Officer in Charge, Marine Inspection determines that the requirements would be "unreasonable and impracticable." The issue, therefore, is not whether the Coast Guard may approve variances—something clearly anticipated by the regulations[3]—but rather whether the MSM expresses the Coast Guard's conclusion that three rails at the prescribed height is unreasonable and impracticable as applied to unmanned barges.

The harder issue raised by Abruska is whether the MSM can exempt all barges falling under the province of § 92.25-5 or whether the regulation requires an individual determination as to each specific barge. Stated another way, Abruska argues that the MSM is overbroad because it categorically exempts all unmanned barges. Instead, Abruska seems to anticipate an individual determination regarding the safety features of specific vessels; express certification that is lacking in the BARANOFF TRADER's COI.

Abruska's own arguments undercut his objections. He admits that, in the least, the MSM has made a categorical distinction between unmanned and manned barges. Section 5.C.1.a applies only to unmanned barges, meaning that manned barges still fall under the regulation's provisions. And, as Abruska points out, there are many regulations that differentiate between manned and unmanned barges. Docket No. 10 at 14–15. But rather than undercutting the reasonableness of the MSM, these regulations tend to support the Coast Guard's interpretation. Each of the regulations

---

[3] Indeed, not only does § 92.25-5(a) provide for variances upon the approval of the Marine Inspection Officer, but § 92.25-5(b) and 46 C.F.R. 90.15-1 also provide further evidence that the regulations were intended to be flexible.

ORDER

Exhibit 1

Page 6 of 9 Pages

cited by Abruska that distinguish between required features on unmanned and manned barges focus on features of the manned barges that are less necessary on unmanned barges because the unmanned barges will have no or fewer personnel. *See id.* Even though § 92.25-5 does not make a similar distinction between manned and unmanned barges, distinguishing between the two in the MSM on the basis that unmanned barges will need less safety features related to personnel than will manned barges seems reasonable—just as it is reasonable in the other regulations that do so. In other words, Abruska fails to demonstrate why rails are safety features qualitatively so much more important than the other safety features that are not required on unmanned barges under the applicable regulations. Unmanned barges are exempted from having features such as anchors, chains, hawsers, fire axes, and portable fire extinguishers; exemptions that seem explainable only by the unmanned status of the barges. *See* 46 C.F.R. §§ 95.05-15, 95.60-5(b), 96.07-5(a).

Perhaps more important is the only reference in § 5.C.1.a that may explain the Coast Guard's rationale; a reference Abruska ignores. As related above, § 5.C.1.a exempts rails on unmanned barges by linking the directive to unmanned *tank* barges. Under the applicable federal regulations, 46 C.F.R. § 32.02-10(a) exempts unmanned tank barges from the exact same rail requirements outlined by § 92.25-5. Yet, Abruska does not explain why it was reasonable for the regulations to exempt unmanned tank barges and unreasonable and impracticable for the Coast Guard to also exempt regular unmanned barges, which are presumably similar vessels. Indeed, Abruska does not discuss the differences between unmanned tank barges and unmanned barges at all, despite the MSM's direct reference to § 32.02-10(a)'s exemption for unmanned tank barges. In other words, it is unclear to the Court the differences that make regular unmanned barges in so much more need of three rails than unmanned tank barges.

In effect, Abruska's argument about the reasonableness and practicality of rails attempts to shift the burdens in this case. It is *his* burden as the moving party to show that the BARANOFF TRADER was in violation of § 92.25-5. It is certainly true that the Coast Guard cannot supercede or overrule regulations. It is equally true that the Coast Guard cannot enforce arbitrary rules, even if allowed regulatory discretion. But at the same time, it is clear to the Court that the applicable federal regulations do not anticipate rigid, inflexible interpretation of § 92.25-5. The rule itself

ORDER

Exhibit __7__

Page _7_ of _9_ Pages

allows variances, as do other sections of the code regulating shipping, when the appropriate Coast Guard authorities determine that equivalents will be effective. *See, e.g.,* 46 C.F.R. §§ 32.02-10(a), 90.15-1. What Abruska has failed to show is that installation of a third rail was reasonable and practicable in light of the BARANOFF TRADER's use and design.

The last issue for the Court to consider is whether the COI issued by the Coast Guard to the BARANOFF TRADER meets the requirements of § 92.25-5 that the Officer in Charge, Marine Inspection determine that the required rails are "unreasonable and impracticable." As an initial point, the suggestion that § 92.25-5 requires an individual determination as to each vessel is undercut by the definition of "vessel." Section 90.10-37 of Title 46 states: "Where the word 'vessel' is used in this subchapter, it shall be considered to include *all* vessels indicated [in the applicable Table], except as otherwise noted in this subpart." (emphasis added). The Coast Guard's interpretation in section 5.C.1.a, which applies to a class of barges—namely unmanned barges—seems to be consistent with how the regulations define their references to vessels.

As to the import to give the COI, 46 C.F.R. § 90.10-27 defines "Officer in Charge, Marine Inspection" to mean the person

> in charge of an inspection zone for the performance of duties with respect to the inspections, enforcement, and administration of Subtitle II of Title 46, U.S. Code, Title 46 and Title 33 U.S. Code, and regulations issued under these statutes.

*See also* 46 C.F.R. § 1.01-15(b). The Officer in Charge is therefore in charge of inspecting vessels that fall under the Coast Guard's purview. That job is governed by the certificate of inspection process outlined in 46 C.F.R. § 91.15-1, *et seq.* The standards justifying the issuance of a COI are outlined by the applicable regulations under Title 46, as well as the technical provisions of the MSM. As the transmittal notice accompanying Volume IV of the MSM provided by Abruska explains, the MSM serves as "[a] comprehensive manual which provides guidance on the application of Coast Guard regulations and explains the rationale behind their development." Docket No. 10, Ex. 4 at 1. The COI issued to the BARANOFF TRADER seems to be a logical extension of Coast Guard policy as expressed by the MSM. And, because the MSM does not conflict with § 92.25-5, it is hard to say that Defendants have violated the regulation. Accordingly, the motion for partial summary judgment will be denied.

ORDER

Exhibit 7

Page 8 of 9 Pages

**IT IS THEREFORE ORDERED:**

The motion for partial summary judgment at **Docket No. 8** is **DENIED**.

Dated at Anchorage, Alaska, this _6_ day of June 2005.

**JAMES K. SINGLETON, JR.**
United States District Judge

A04-0209--CV (JKS)  ᴀ  6-7-05
-------------------------------------------------------------
N. O'DONNELL (ATKINSON)
T. WALLER (BAUER)

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 2004\A04-0209.001.wpd        9

Exhibit _7_

Page _9_ of _9_ Pages