NEIL T. O'DONNELL
CHRISTOPHER J. SLOTTEE
ATKINSON, CONWAY & GAGNON
Attorneys for Plaintiff Joseph Abruska
420 L Street, Suite 500
Anchorage, Alaska 99501-1989
Phone:  (907) 276-1700
Fax:  (907) 272-2082
nto@acglaw.com
cjs@acglaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| JOSEPH ABRUSKA, | ) | Case No. 3:04-cv-209-TMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NORTHLAND VESSEL LEASING | ) | |
| COMPANY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST MOTION TO COMPEL PRODUCTION

## I.    INTRODUCTION

Pursuant to Federal Civil Rule 37, Plaintiff Joseph Abruska moves to compel

the production of relevant and discoverable information.[1]  The defense has refused to

---

[1] Plaintiff's counsel certifies that he attempted to resolve this issue without Court intervention but was not successful.

produce discoverable information on the corporate relationship between Northland Services,

Northland Vessel Leasing, Naknek Barge Lines, and Northland Holdings.

      The information sought is discoverable because: (1) the defense claims that it

did not have notice of the dangerous condition that caused Plaintiff's accident and injuries,

and the information sought could establish that notice to one Defendant was notice to all

Defendants; and (2) the defense claims that it was Northland Services' obligation to remedy

the dangerous condition and not the duty of the other Defendants, and the information

sought could establish that all of the Defendants should be treated as one entity, with the

same obligations.

## II.     FACTUAL BACKGROUND

      This is a maritime personal injury action brought pursuant to 33 U.S.C.

§ 905(b) of the Longshoreman and Harbor Workers' Compensation Act.  On August 24,

2003, Joseph Abruska was unloading the Baranoff Trader, a freight barge docked at Naknek,

Alaska.  (Defendants' Answer, ¶ 13) (Docket 3)  Defendant Northland Vessel Leasing

Company, Inc., was the owner of the Baranoff Trader.  (Id. at ¶ 6)  Defendant Naknek

Barge Lines, LLC, chartered the Baranoff Trader such that it was the owner *pro hac vice* of the

Baranoff Trader.  (Id. at ¶ 7)  Defendant Northland Services was the time charterer of the

Baranoff Trader, such that it was also an owner of the Baranoff Trader under 33 U.S.C.

§ 905(b).  (Defendants' Answer, ¶ 9) (Docket 17)

      At the time Joseph was unloading the Baranoff Trader, the barge had two

courses of railings running down each side.  (Defendants' Interrogatory Answers, p. 1, Ex. 1;

Defendants' Requests for Admission Answers, p. 1, Ex. 2)  The lower wire railing was loose

in the area where Joseph was working.  (Investigation Report, Ex. 3; Donkersloot Dep.,

p. 20, Ex. 4)  Employees of Northland Services knew that the lower wire railing was loose.

(Donkersloot Dep., p. 20, Ex. 4)

        While unloading the Baranoff Trader, Joseph fell between the barge's two

courses of railings below the top railing, and over the loose lower railing.  Joseph was able to

stop his fall by grabbing onto the lower course of railing.  Unfortunately, the barge

subsequently moved against the adjacent dock, crushing Joseph between the barge and the

dock and causing severe injuries, including a closed right femur fracture, multiple pelvic

fractures, and a sacral fracture.

        An accident investigation report prepared by Northland Services determined

that "[t]he lower safety line, although connected to vertical stanchions, was loose and did not

provide an effective barrier."  (Investigation Report, p. 4, Ex. 3) (emphasis added).

Northland Services concluded that the loose wire railing was a "major contributing factor"

to Joseph's accident.  (Id. at 5) (emphasis in original).  Northland Services specifically found

that "Joseph was able to fall through the safety lines due to the lower line being slack."  (Id.)

(emphasis added).

        Luke Donkersloot, an employee and manager of Northland Services,

acknowledged that he knew that the lower wire railing was loose before Joseph's accident.

(Donkersloot Dep., p. 31, Ex. 4)  Mr. Donkersloot testified that "everybody was aware" of

the loose wire railing.  (Id.)  No one, however, either fixed the loose wire railing before

Joseph's accident or warned Joseph that the wire railing was loose.

## III.   THE INFORMATION SOUGHT IS DISCOVERABLE BECAUSE OF THE DEFENSES ASSERTED IN THIS CASE

Northland Vessel Leasing, Northland Services, and Naknek Barge Lines are all

considered to be "owners" of the Baranoff Trader under 33 U.S.C. § 905(b).[2]  Consequently,

under the LHWCA, they can be held liable for Joseph's injuries if they knew of the

dangerous conditions on the Baranoff Trader.  See, e.g., Scindia Steam Navigation Co. v.

De Los Santos, 451 U.S. 156, 166-67 (1981).  Northland Services clearly knew of the danger

posed by the loose wire.  (Donkersloot Dep., p. 31, Ex. 4) (admitting that "everybody was

aware" of the loose wire railing).

Northland Vessel Leasing and Naknek Barge Lines, however, have denied

almost all knowledge of the Baranoff Trader.  They claim that they do not know where the

Baranoff Trader is, where it has been, its repair status, who is working on it, or almost

anything connected with the barge.  It is clear that Northland Vessel Leasing and Naknek

---

[2] Northland Vessel Leasing is the owner of the Baranoff Trader.  (Defendants' Answer, ¶ 6 (Docket 3)  Naknek Barge Lines and Northland Services are the bare boat charterer and time charterer of the Baranoff Trader, respectively.  (Defendants' Answer, ¶ 7) (Docket 3); (Defendants' Answer, ¶ 9) (Docket 17)  Under 33 U.S.C. § 905(b), bare boat and time charterers are considered to be owners of a vessel.  See 33 U.S.C. § 902(21) (the term "vessel" includes the vessel's "owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.")  See also Rodriguez v. Bowhead Transportation Co., 270 F.3d 1283, 1286 (9th Cir. 2001) (noting that there was "no distinction between charterers and shipowners as far as who is a 'vessel' under the LHWCA.")

Barge Lines are going to claim at trial that they had no knowledge whatsoever as to the condition of the Baranoff Trader or whether there were any hazards on the Baranoff Trader.

With the defense's recent production of an expert report from Leo Naekel, it is also apparent that the defense intends to claim that Northland Services, in its role as a stevedoring company, was responsible for the safety and maintenance of the Baranoff Trader, and that the owners of the vessel had no similar obligations.[3]  (Naekel Report, Ex. 5)  Mr. Naekel claims that the owners of the Baranoff Trader had no obligation to maintain or repair the loose wire railing that Joseph fell over.  (Id.)  Mr. Naekel's opinion assumes that Northland Services, Northland Vessel Leasing, and Naknek Barge Lines are separate entities. (Id.)

Plaintiff's discovery requests sought information about the corporate relationship between Northland Services, Northland Vessel Leasing, Naknek Barge Lines, and Northland Holdings,[4] including whether they share employees, owners, or directors. (Ex. 6, Ex. 7).  The Defendants, for the most part, refused to produce any information in

---

[3] Northland Services was both the stevedoring company that employed Joseph and the time charterer of the Baranoff Trader.  Northland Services can be held liable for breaching its duties as an owner of the Baranoff Trader, while it cannot be liable in a LHWCA suit for breaching its duties as a stevedoring company.  See, e.g., Gravatt v. City of New York, 226 F.3d 108 (2nd Cir. 2000) (an employer who was also a vessel owner is liable to its employees covered under LHWCA to the extent that it breached its duties of care in its capacity as a vessel owner); Koenrschild v. W.H. Streit, Inc., 834 F. Supp. 711 (D.N.J. 1993) (employer acting in capacity as vessel owner or operator may be sued for acts of negligence in its capacity as owner or operator of vessel).

[4] Northland Holdings appears to be the parent company of Northland Vessel Leasing and Northland Services.

response to these requests, claiming that the information sought was not relevant, was confidential, and that Plaintiff should have directed his requests to a different entity.  (Id.) In subsequent correspondence, the Defendants claimed that this information is not discoverable because Plaintiff did not explicitly plead a piercing claim.

The Defendants' objections are not well taken.  First, the information sought is relevant and discoverable because of the defenses raised in this case.  For example, the information sought could result in piercing the Defendants' corporate veils, such that Northland Services, Northland Vessel Leasing, and Naknek Barge Lines will be considered by the Court to be one entity.  If the Defendants are considered to be one entity, then the notice that Northland Services had of the dangerous condition would be imputed to all of the Defendants.  Piercing the corporate veil of the Defendants would also render Mr. Naekel's opinion irrelevant, given that it is based on the assumption that the Defendants are in fact separate corporate entities.

Furthermore, Northland Vessel Leasing, Naknek Barge Lines, and Northland Services are limited liability companies.  Notice to managers, owners, or employees of an LLC is notice to the company itself.  These companies are also charged with the knowledge of their employees.  Consequently, information about who the managers, owners, and employees of the Defendants are could establish, for example, that someone employed by both Northland Services and Northland Vessel Leasing had notice of the loose wire on the Baranoff Trader, and that Northland Vessel Leasing therefore also had notice of the hazard.

Second, basic corporate information is not confidential.  Regardless, just as was done earlier in this case, Plaintiff will agree to a reasonable confidentiality statement. The Defendants' concern about the confidentiality of its corporate documents is therefore no basis to refuse discovery.

Third, the Defendants' objection that Plaintiff should have directed his requests to a different entity is baseless, given that the Federal Rules require only that the Defendants' have the ability to obtain the requested documents, which they clearly do.

Fourth, a corporate piercing claim is not a claim for substantive relief.  As such, Plaintiff did not have to plead it.

## A.     INFORMATION IN SUPPORT OF A PIERCING CLAIM IS RELEVANT AND DISCOVERABLE

Plaintiff's discovery requests seek basic information about the corporate structure of the Defendants.  The purpose of these discovery requests is to determine whether Northland Services, Northland Vessel Leasing, and Naknek Barge Lines were in fact separate corporate entities, or whether they can be considered to be, under the law, one entity.  Given the claims by Northland Vessel Leasing and Naknek Barges Lines that they had almost no knowledge regarding the Baranoff Trader, Plaintiff's discovery requests seek relevant and discoverable information.

The Alaska Supreme Court has held that where a corporation does not maintain the appropriate corporate formalities, the "corporate veil" may be pierced and two corporate entities considered to be one in the eyes of the law.  See, e.g., Nerox Power Systems v. M-B Contracting Co., Inc., 54 P.3d 791, 802-03 (Alaska 2002) (corporate veil

pierced to hold shareholder liable for debts of corporation); <u>Marine Solution Services, Inc. v.</u>

<u>Horton</u>, 70 P.3d 393, 402 (Alaska 2003) ("the corporate identity will be disregarded only

when 'the separate personalities of the corporation and the individual no longer exist.'

Relevant factors for considering whether a corporation is merely an alter ego are

commingling of funds and assets, undercapitalization, and failure to observe corporate

formalities.") (quoting 18 Am. Jur. 2d Corporations § 45 (2002)).  There are several factors

that are relevant to the question of whether two corporations are actually separate entities.

<u>Jackson v. General Electric Co.</u>, 514 P.2d 1170, 1172-73 (Alaska 1973).  The factors are:

> (1)     The parent corporation owns all or most of the capital stock of the subsidiary;
>
> (2)     The parent and subsidiary corporations have common directors or officers;
>
> (3)     The parent corporation finances the subsidiary;
>
> (4)     The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
>
> (5)     The subsidiary has grossly inadequate capital;
>
> (6)     The parent corporation pays the salaries and other expenses or losses of the subsidiary;
>
> (7)     The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
>
> (8)     In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
>
> (9)     The parent corporation uses the property of the subsidiary as its own;

     (10)    The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest;

     (11)    The formal legal requirements of the subsidiary are not observed.

Id. at 1173.

     The discovery requests propounded by Plaintiff seek information related to these factors. Plaintiff's discovery requests seek information about whether the Defendants shared common ownership, directors, employees, equipment, bank accounts, and offices.[5] (Ex. 6, Ex. 7) Plaintiff's discovery requests seek to determine the source of the Defendants' finances, which is an important factor of the piercing test enunciated in Jackson. Jackson, 514 P.3d at 1173. Plaintiff's discovery requests also seek to determine if one of the Defendants pays the debts or expenses of the other Defendant, another important factor in favor of piercing the corporate veil. Id.

     Plaintiff has already obtained evidence supporting a piercing claim. For example, Northland Services and Northland Vessel Leasing apparently share officers, as Barry Hachler signed the Baranoff Trader's Bare Boat Charter for Northland Vessel Leasing and the Baranoff Trader's Time Charter for Northland Services. (Bare Boat and Time Charters, Exs. 8, 9). In both cases, Mr. Hachler represented himself to be the Senior Vice

---

     [5] For example, Plaintiff asked for the Defendants' Articles of Incorporation, Articles of Organization, or Certificates of Formation. (Ex. 6, p. 3) Plaintiff also asked for the Defendants' Operating Agreements and Bylaws, a list of members and/or stockholders, a list of managers, officers, and directors, minutes of board of directors meetings, and lists of employees of the corporations. (Ex. 6) Plaintiff's discovery requests were generally limited to the year of the accident, 2003.

President, Chief Financial Officer, and Secretary of both businesses.  (Id.)  Additionally, individuals employed by Northland Holdings, the parent company of Northland Vessel Leasing and Northland Services, use Northland Services e-mail addresses and Northland Vessel Leasing and Northland Services apparently share the same offices.[6]  (Exs. 10, 11)[7]

By claiming that they had no knowledge regarding the Baranoff Trader, despite the fact they are owners of the barge, the Defendants made the requested information relevant and discoverable.  The information sought could establish that the Defendants are not separate corporate entities and that Northland Services' knowledge should be imputed to Northland Vessel Leasing and Naknek Barge Lines.

Mr. Naekel's expert opinion also renders information on the corporate structure of the Defendants relevant and discoverable.  In his report, Mr. Naekel offers an opinion on who is responsible for the safety of longshoremen working on a barge.  (Naekel Report, p. 5, Ex. 5)  Mr. Naekel states that the stevedoring company is generally the entity that maintains the safety equipment on a barge.  (Id.)  Mr. Naekel distinguishes between the duties owed by a stevedoring company and the duties owed by a charterer or owner of a barge.  (Id.)

---

[6] Plaintiff does not claim that Northland Vessel Leasing and Northland Services have the same offices in Alaska.  Based on their filings with government agencies, they appear to share offices in Washington.  (Ex. 11)

[7] Exhibit 10 are e-mails produced in discovery by the defendants.  They show that employees of Northland Holdings use Northland Services e-mail addresses.  (Ex. 10) Exhibit 11 are filings by Northland Services and Northland Vessel Leasing with the State of Alaska.  They indicate that the two companies share at least two officers and the same mailing address.  (Ex. 11)

Mr. Naekel's opinion assumes that Northland Vessel Leasing, Northland Services, and Naknek Barge Lines are separate, distinct companies. Information that challenges that assumption, and establishes that they are not in fact separate companies, but rather are owned, operated, and staffed by the same people is clearly relevant and discoverable. The defense cannot offer expert testimony and then deny discovery that would contradict that testimony.

By claiming that they had no knowledge regarding the Baranoff Trader, despite the fact they are owners of the barge, the Defendants made the requested information relevant and discoverable. The information sought could establish that the Defendants are not separate corporate entities and that Northland Services' knowledge is imputed to Northland Vessel Leasing and Naknek Barge Lines.

**B. THE INFORMATION SOUGHT IS RELEVANT TO ESTABLISH THAT THE DEFENDANTS HAD NOTICE OF THE DANGEROUS CONDITIONS ON THE BARANOFF TRADER**

Northland Vessel Leasing and Naknek Barge Lines are limited liability companies. Notice to managers, owners, or employees of an LLC is notice to the company itself. See, e.g., AS 10.50.260 (charging LLC with notice of information received by member or manager); RCW 25.15.150 (managers and members are agents of LLC depending on certificate of formation). Furthermore, a company is charged with the knowledge of its employees. See, e.g., Bendix Corp. v. Adams, 610 P.2d 24, 28 (Alaska 1980) (corporation may be charged with notice given to agent); Plywood Marketing Associates v. Astoria

Plywood Corp., 558 P.2d 283, 290 (Wash. App. Ct. 1976) ("Generally a corporate principal is chargeable with notice of facts known to its agent....")

For example, if someone employed by both Northland Services and Northland Vessel Leasing had notice of the loose wire on the Baranoff Trader or the other hazards, then both Northland Services and Northland Vessel Leasing had notice of the hazard. Consequently, information about the managers, owners, and employees of the Defendants is clearly relevant and discoverable.

### C.    PLAINTIFF WILL MAINTAIN THE CONFIDENTIALITY OF ANY DOCUMENTS PRODUCED BY THE DEFENDANT

In response to many of Plaintiff's discovery requests, the Defendants objected on the grounds that Plaintiff's requests seek "confidential" information. As was done previously in this case, Plaintiff agrees to keep any documents produced in response to these discovery requests confidential and to destroy them upon completion of this litigation. This should be sufficient to allay any the defense's concerns over the confidentiality of its corporate records.

### D.    THE DEFENSE IS OBLIGATED TO PRODUCE ANY DOCUMENTS OR INFORMATION WITHIN ITS POSSESSION, CUSTODY, OR CONTROL

In response to several of Plaintiff's discovery requests, the Defendants complained that the request was "more properly directed" to a different party or entity. The Federal Civil Rules, however, requires the defense to produce any documents or information within its "possession, custody, or control." Federal Civil Rule 34(a).

"Control" is broadly construed when determining if a party should be compelled to produce materials requested under Federal Civil Rule 34.  See Camden Iron and Metal, Inc. v. Marubeni America Corp., 138 F.R.D. 438, 441 (D.N.J. 1991) ("Federal courts construe 'control' very broadly under Rule 34"); Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 465 (D.Mass 1993) ("Case law reveals that the word 'control' is broadly construed in application.")  The focus is on the nature of the relationship between the two corporations.  Alcan Int'l Ltd. v. S.A. Day Manufacturing Co, Inc., 176 F.R.D. 75, 78 (W.D.N.Y. 1996).  If a party has the right, authority or ability to obtain information, the information must be produced.  Camden, 138 F.R.D. at 441.

The Ninth Circuit has held that "[a] corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."  United States v. International Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989).  Similarly, in Alcan Int'l Ltd., one corporate member of a "unified worldwide business group" was compelled to produce documents in connection with litigation involving a different corporate member of the business group.  Alcan Int'l Ltd., 176 F.R.D. at 79.  The court noted that both corporations were members of a business group under the common control of the same company.  Id.  Both corporations used the same corporate logo.  Id.  There was also regular contact between the two corporations regarding business matters.  Id.  Thus, the court concluded that:

> it is "inconceivable" that SPC would not have access to this information and the ability to obtain it, not only for the purpose of proving its claims in this lawsuit but also for the purpose of

conducting its business under its distribution and representative agreements with Solvay Fluor.

Id. See also Cooper Indus., Inc. v. British Aerospace, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) (where documents plaintiff sought from nonparty related to work defendant did for nonparty every day, defendant had access to documents and was compelled to produced them); Camden, 138 F.R.D. at 443 (where documents plaintiff sought from nonparty related to a transaction defendant worked on, defendant was compelled to produce them.)

Northland Vessel Leasing and Northland Services appear to be owned by the same company, Northland Holdings. Northland Services charters the Baranoff Trader and Northland Vessel Leasing owns the Baranoff Trader. (Defendants' Answer, ¶ 6 (Docket 3); (Defendants' Answer, ¶ 9) (Docket 17) Northland Services and Northland Vessel Leasing appear to share officers. (Exs. 8, 9) Northland Holdings employees use Northland Services e-mail addresses. (Ex. 10) Northland Vessel Leasing and Northland Services appear to share same offices in Washington. (Ex. 11) They are represented by the same counsel. While the true extent of the intertwining of Northland Vessel Leasing, Northland Services, and Northland Holdings cannot be determined at this time because the Defendants have refused to produce discoverable information, it is clear that the companies have significant contacts, overlapping employees, and that the requested information could be obtained by the Defendants.

The Defendants cannot avoid producing discoverable information by claiming that it is in the hands of a sister or parent corporation. Clearly, given the close corporate

relationship of the Defendants, the Defendants have the ability to obtain the requested

information from their related companies.

E.   **THE FACT THAT INFORMATION MAY BE IN THE PUBLIC DOMAIN DOES NOT EXCUSE THE DEFENDANTS FROM PRODUCING DISCOVERABLE INFORMATION**

Plaintiff also asked the defense to produce its filings with the Secretary of

State of Washington, the Department of Corporations for the State of Delaware, and the

Department of Commerce for the State of Alaska.  The defense refused to produce these

documents, claiming that they were in the public domain.

The Federal Civil Rules, however, do not require that Plaintiff find innovative

means of obtaining the requested information.  There is no exception to Federal Civil Rule

34 stating that a party may refuse to produce documents that are in the public domain.  See

Federal Civil Rule 34.  The rule only requires that the requested documents be in the

possession, custody, or control of the Defendants, and the requested documents are clearly

in the possession, custody, or control of the Defendants.

Additionally, it would be much more of a burden, in both time and expense,

for Plaintiff to obtain the documents from each of the different state entities.  In contrast, it

would be simple for the Defendants to produce the requested documents, as they have

undoubtedly retained and organized copies of the requested information.

F.   **A PIERCING CLAIM IS NOT A CLAIM FOR SUBSTANTIVE RELIEF**

Finally, the Defendants will argue that Plaintiff failed to specifically allege a

piercing claim in their complaint, and that this discovery should therefore not be permitted.

First, information about the owners, managers, and employees of the Defendants is relevant and discoverable even in the absence of a veil piercing claim. The Defendants are charged with the knowledge of their owners, managers, and employees. See supra Section III B. Regardless of whether Plaintiff's complaint must assert a veil piercing claim, that information is discoverable.

Second, Federal Civil Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a). A claim for piercing the corporate veil is not a substantive claim for relief. International Financial Services Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731, 736 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim….") See also Fletcher Cyc. Corp. § 41.10, p. 577 (A piercing claim is "not in itself a claim for substantive relief.") Because it is not a substantive claim for relief, F.R.C.P. 8(a) did not require Plaintiff to specifically plead a piercing the corporate veil claim.

For example, in McCormick v. City of Dillingham, 16 P.3d 735 (Alaska 2001), the Alaska Supreme Court held that a complaint did not need to specifically request piercing of the corporate veil in order to obtain that relief. Id. at 743. It was sufficient if the complaint put the defendant on notice that it might be held liable for the underlying tortious acts. Id. at 743-44. Plaintiff's complaint clearly put the Defendants on notice that Plaintiff sought to hold them responsible for "using, furnishing, and maintaining unsafe and improper railings." (Complaint, ¶ 24) (Docket 1). That is all that is necessary.

## IV.    CONCLUSION

Information on the Defendants' corporate structure, including correspondence regarding the Baranoff Trader, is relevant and discoverable.  The defense's claims that they have no knowledge of the Baranoff Trader, or the dangerous defects on the Baranoff Trader, make the information relevant and discoverable.  Therefore, the Court should grant Plaintiff's Motion to Compel.

DATED this 3rd day of May, 2006.

ATKINSON, CONWAY & GAGNON
Attorneys for Joseph Abruska

By_____s/ Christopher J. Slottee_____
        Christopher J. Slottee
        420 L Street, Suite 500
        Anchorage, AK 99501
        Phone:  (907) 276-1700
        Fax:  (907) 272-2082
        E-mail:  cjs@acglaw.com
        ABA No. 0211055

I certify that on May 3, 2006, a copy
a copy of the foregoing was served electronically
on the following attorneys or parties of record:

Thomas G. Waller, Esq.

By _____s/ Christopher J. Slottee_____
        Christopher J. Slottee