Thomas G. Waller
Alaska Bar No. 0109052
BAUER MOYNIHAN & JOHNSON LLP
2101 4TH Avenue - 24th Floor
Seattle, WA 98121
(206) 443-3400

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| JOSEPH ABRUSKA,<br><br>        Plaintiff,<br><br>v.<br><br>NORTHLAND VESSEL LEASING COMPANY, LLC and NAKNEK BARGE, LLC; NORTHLAND SERVICES, INC.,<br><br>        Defendants. | CASE NO. A04-209 CV (JKS) |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Seven months after defendants responded and made objections to plaintiff's written discovery requests, plaintiff now files a motion to compel discovery. He files the motion only after (in fact, the very day after) defendants filed a motion for summary judgment. Not one of plaintiff's discovery requests concerning defendants' corporate status is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's entire motion is predicated on a legally invalid contention that supposedly calls for the discovery: i.e., that the barge BARANOF TRADER was required to have one or more taut wires on the perimeter of the barge. Armed with this inaccurate notion, plaintiff theorizes -- despite no notice in the pleadings and no supporting evidence whatsoever --

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

that one or more defendants disregarded corporate formalities. Plaintiff claims to need the corporate discovery to prove this new, unstated legal theory.

Plaintiff's arguments and discovery requests assume too much. As a matter of law, the barge had no perimeter guard rail requirement. *Infra.* Thus, even if a loose barge wire was present (as plaintiff has alleged), it cannot reasonably be argued -- since no barge wire whatsoever was required -- that the loose wire was a "dangerous condition." Whether one or more of the defendants had notice of the purported loose wire, and defendants' corporate status, is legally irrelevant to the issues in the litigation.[1] Plaintiff's carefully cloaked allegation -- that defendants are in some sort of collective scheme to hide knowledge of an allegedly loose wire -- is not merely lacking any factual basis; the allegation has no genuine relevance to the issues pled by plaintiff.

## I   PROCEDURAL OPPOSITION

LR 37.1 CERTIFICATION

Undersigned counsel disagrees and otherwise denies that plaintiff's counsel has conferred or attempted to confer in a good faith effort to resolve the pending discovery dispute. The attorneys have not once spoken on the issue. No phone calls have been made. *Decl. of T. Waller.*

The litigation of this matter has, to date, been forthright and civil. *Decl. of T. Waller.* Written discovery has been exchanged courteously in the past year between the parties. *Id.* Depositions and travel arrangements of parties and lay and expert witnesses have been requested and easily agreed-to in Naknek, Anchorage, Portland (Oregon) and

---

[1] As further explained below, plaintiff does not explain which entity's "veil" he seeks to pierce; instead, he makes blanket assertions, without supporting evidence, that the various companies were simply "the same."

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 2 of 13 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

San Diego. *Id.* Barge viewing, as requested by plaintiff, was arranged in Seattle. *Id.* The discovery needs of both parties have always been met or discussed. *Decl. of T. Waller.*

The discovery requests at issue were received by defendants Northland Vessel Leasing and Naknek Barge Lines on September 2, 2005.[2] *Decl. of T. Waller.* The requests were irrelevant, substantially overly broad, sought confidential information and included the following:

- corporate financial statements of defendants;
- job titles, addresses, phone numbers and dates of employment of all persons employed by *Northland Services*. (The discovery requests were directed to Naknek Barge Lines and Northland Vessel Leasing; Northland Services was not yet a party and was otherwise a separate and distinct business entity.);
- names of persons or entities that formed Northland Services (Again, the discovery were directed to Naknek Barge Lines and Northland Vessel Leasing, but sought information about Northland Services);
- names and percentages of ownership of current [2005] shareholders of Northland Services (Not only was the request directed to Naknek and/or Northland Vessel Leasing, the requested information had no relevance to the August 2003 incident);
- requests directed to Northland Vessel *Leasing* seeking written communications between Northland *Services* and Naknek Barge Lines;
- requests directed to Northland Vessel *Leasing* for documents relating to formation of Northland *Services*.

*See, Plaintiff's Exhibit Nos. 6 & 7.* More generally, plaintiff's requests asked for business information having no reasonable link to the issues identified in plaintiff's complaint.

Defendants responded to plaintiff's discovery requests on September 30, 2005. *Decl. of T. Waller.* Undersigned defense counsel included a letter with the responses stating the following:

---

[2] Plaintiff's employer, Northland Services, Inc., was not a party to the litigation when the discovery was sent and answered. Plaintiff has never sent written discovery requests to defendant Northland Services since it was joined to the lawsuit last year. *Id.*

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 3 of 13 -

> *Dear Chris,*
>
> *Attached are the responses of Naknek Barge Lines and Northland Vessel Leasing to Mr. Abruska's most recent discovery requests. You will note -- as you might have expected -- objections to most of the requests. If you will tell me sometime what information you truly believe is relevant to this §905(b) claim, I will work with my clients to get you what's needed. For now, it appears things are a bit off-track for an otherwise mostly routine third-party Longshore Act claim.* Ex. 1, Decl. of T. Waller.

Plaintiff's counsel did not respond to the letter in any fashion. *Decl. of T. Waller.* Six months passed -- and discovery closed -- in the period between defendants' response to the discovery and plaintiff's renewed demand for the written discovery. *Id.*

Written discovery closed on February 1, 2006. *Docket 21.* Depositions of witnesses concluded April 3, 2006. *Id.* During the entirety of discovery, plaintiff made no request for depositions of any corporate personnel or 30(b)(6) depositions of any of the defendants. *Decl. of T. Waller.* In April 2005, defendants stated in other discovery responses, "At the time of the accident, each was an independent business entity [Northland Vessel Leasing and Naknek Barge Lines], with separate and distinct business functions; both entities were wholly-owned by Northland Holdings, Inc." *Ex. 2, Decl. of T. Waller.* Plaintiff still did not pursue depositions or written discovery. Plaintiff did not send any written discovery whatsoever to Northland Services. *Id.*

If depositions of corporate personnel had been requested, the information gathered would have simply confirmed the separateness of the defense entities, as set forth in defendants' discovery responses of April 200_5_ and as previously explained by Barry Hachler, Senior Vice President and Chief Financial Officer of Northland Services, Inc.:

> *Northland Services, Inc. and Northland Vessel Leasing Company . . . shared common ownership and officers, but were operated as wholly separate and distinct business entities. . . . Northland Vessel Leasing Company had no offices, no staff, no employees and no involvement in the operations of any of its*

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 4 of 13 -

> *vessels. It was a single-purpose holding company; its sole function was to hold title to vessels for demise (bareboat) charter to third parties. . . . Northland Vessel Leasing Company and Naknek Barge Lines were entirely separate entities, with distinct directors, officers, management, employees and ownership. . . . Northland Services and Naknek Barge Lines were entirely separate entities, with distinct directors, officers, management, employees and ownership. . . .*

*Decl. of B. Hachler.*

Two months after the discovery deadline (in April 2006) -- and over six months after defense counsel had invited plaintiff's counsel to discuss the discovery requests -- plaintiff's counsel wrote a letter demanding answers to all the discovery. *Decl. of T. Waller.* Undersigned defense counsel responded in kind with a written letter dated April 18, 2006 asking again for candid discussion and explanation from plaintiff's counsel:

> *[P]lease let us know if your recent [April 3, 2006] claim for corporate veil piercing has any evidentiary support whatsoever. Our files contain nothing of the sort. Also, please let me know whether I might obtain for you -- without burdening or harassing defendants -- information that may help you confirm what is set forth above.*

*Ex. 3, Decl. of T. Waller.*

Plaintiff's apparent response to the letter came two weeks later, in the form of his motion to compel. There was no good faith effort to confer. *Decl. of T. Waller.* Written discovery had closed three months earlier. *Docket 21.*

Based solely on procedural irregularities, plaintiff's Motion to Compel should be denied. First, the motion is exceedingly ill-timed; written discovery closed two months ago. Second, plaintiff's failed to <u>*confer*</u> in good faith as required by the procedural rules. Substantive issues need not be considered.

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 5 of 13 -

## II    SUBSTANTIVE OPPOSITION

A.    <u>The Discovery Requested Is Unrelated to Any Allegation in Plaintiff's Complaint.</u>

Plaintiff did not allege in his complaint and has never (until his very recent letters) made a claim for piercing the corporate veil. He nevertheless contends he "clearly put the Defendants on notice that Plaintiff sought to hold them responsible for 'using, furnishing, and maintaining unsafe and improper railings'." *Motion, p. 16.* Plaintiff further contends this "notice" was sufficient under Fed.R.Civ.P. 8 (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief.") Plaintiff's claim of "sufficient notice" is patently false and has no legal merit. Lacking sufficient pleading and notice of his claims, plaintiff has no grounds for his corporate fishing expedition. His citations to the case-law miss the point altogether.

The purpose of pleading under the Federal Rules is to give an adverse party or parties fair notice of a claim. *Nagel v. Pocono Medical Ctr,* 168 FRD 22 (M.D. Pa. 1996). Piercing the corporate veil claims are evaluated applying the notice pleading standard of Fed.R.Civ.P. 8(a). *Laborers Combined Funds of Western Pennsylvania v. Ruscitto*, 848 F. Supp. 598, 600 (W.D. Penn. 1994). The Rule requires that pleadings set forth a short and plain statement of all claims that demonstrate the pleader's entitlement to relief. The system requires that a claimant give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997), *citing*, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957). "Fair notice" means that a complaint must include the following: "(1) the jurisdiction of the court; (2) ownership of a right by plaintiff; (3) violation of that right be defendant; (4) injury resulting to plaintiff by such violations; and (5) justification for *equitable* relief where that is sought." *Patten v. Dennis*, 134 F.2d 137, 138 (9th Cir. 1943)(emphasis). A complaint will be deemed inadequate if it fails to --

> 1) provide notice of circumstances which give rise to the claim; or
> 2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.

*Beanal v. Freeport McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 6 of 13 -

As Mr. Abruska candidly admits in his motion, piercing the corporate veil is an *equitable* remedy. *International Financial Services Corp. v. Chromas Technologies Canada, Inc.,* 356 F.3d 731, 739 (7th Cir. 2004). Thus, within the context of a claim seeking to pierce the corporate veil, a complaint must set forth sufficient notice that the plaintiff intends to hold the shareholder or parent company liable for the debts or obligations of the company or subsidiary. *See e.g., Laborers Combined Funds,* 848 F. Supp. at 600, footnote 2 ("Based on plaintiff's complaint, it is clear that they are seeking to hold defendants personally liable [.]"); *McCormick v. City of Dillingham*, 16 P.3d 735, 743 (Alaska 2001) ("The complaint provided *McCormick* with sufficient notice that he might be held responsible for *Hillbilly's* failure to pay Dillingham taxes [.]")(emphasis).

Mr. Abruska's complaint, here, offers nothing of the sort and further scrutiny of his pleadings simply affirms the inadequacy.

Within the requirements of Rule 8(a), it is well reasoned that a plaintiff plead the basis of a piercing the corporate veil theory. The requirements of Rule 8(a) are designed to present sufficient notice so as to properly frame discovery. Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[]").[3] Where, as here, there might be myriad theories of liability against the three defendants -- with each theory requiring different proof and elements -- a plaintiff must give sufficient notice of why it believes the defendant is liable in order to properly frame discovery. A plaintiff is not allowed to allege simply that a defendant is liable, then root around the corporate records groping for a legal theory.

Equally important, a defendant must be put on notice that it is being held responsible for the torts of another. Here, the complaint filed by Mr. Abruska contains no such allegation. His pleadings allege simply, "Plaintiff Joseph Abruska's injuries were caused by the negligent conduct of Defendant Northland Vessel Leasing Company, LLC and/or Defendant Naknek Barge Lines,

---

[3] If the Court were to accept plaintiff's argument that he did not need to plead "piercing the corporate veil" because it is not a "claim," then logically he would not be entitled to discovery on this issue under Rule 26(b)(1).

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 7 of 13 -

LLC, and/or Defendant Northland Services, Inc. in using, furnishing, and maintaining unsafe and improper railings." There is neither hint nor suggestion that any one of the defendants may be held liable for the action(s) of the other. Likewise, the complaint offers no suggestion that plaintiff is pursuing an alter ego theory to hold one company or individual liable for the actions of another. *If plaintiff had given any notice whatsoever to defendants of a claim for corporate disregard, defendants could have -- and would have -- sent discovery to plaintiff asking questions about his evidence and proof. Plaintiff would inevitably have offered no supporting evidence whatsoever and a summary judgment motion would have long ago dismissed any such baseless claim. By failing to offer notice, plaintiff denied defendants this procedural entitlement.* Mr. Abruska, meanwhile, has had nearly three years since his accident to offer up evidence -- any evidence -- of corporate disregard. He has offered up nothing.

To the extent Mr. Abruska is pursing an alter-ego theory, the outcome is no different. To adequately plead corporate disregard under an "alter ego" theory requires a plaintiff to allege in its pleading that the "subsidiary was so dominated by its parent as to be a 'mere instrumentality'." *Citicorp International Trading Co., Inc. v. Western Oil & Refining Co., Inc.*, 771 F. Supp. 600, 608 (S. D. NY 1991) (holding that amended complaint cured defects in earlier complaint as to pleading alter ego because complaint alleged domination and control). Mr. Abruska has neither pled nor offered any genuine facts to support an alter ego theory.

Contrary to Mr. Abruska's arguments and case interpretations, a party seeking to pierce the corporate veil must allege facts and theories supporting veil piercing. *Fed.R.Civ.P. 8(a).* A complaint is not insufficient if it alleges merely that a defendant(s) is liable, but gives no indication or notice as to capacity. Mr. Abruska's prayer for *damages* -- which has no reference to equitable relief -- simply affirms the inadequacy of his pleadings. Absent such notice or reference, Mr. Abruska has no legitimate reason or legal grounds to demand from three separate entities what amounts to their entire corporate and financial files.

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

B.  <u>Northland Vessel Leasing Company Had No Employees and Therefore No "Overlapping" Employees With Naknek Barge Lines</u>.

Plaintiff argues, "if someone employed by both Northland Services and Northland Vessel Leasing [no mention of defendant Naknek Barge Lines] had notice of the loose wire on the BARANOF TRADER or the other hazards, then both Northland Services and Northland Vessel Leasing had notice of the hazard." *Motion, p. 12.* Plaintiff offers no sliver of evidence -- as there is no such evidence -- to identify any "someones" who may have been jointly employed.[4] Plaintiff further alleges, without citation, explanation or apparent good faith belief, "it is ***clear*** that the companies have . . . overlapping employees [.]"  (emphasis) *Motion, p. 14.* Plaintiff's argument is both clearly wrong knowingly baseless.

Northland Vessel Leasing was a vessel holding company that had no employees or operational interests whatsoever. *Decl. of Barry Hachler.* ("Northland Vessel Leasing Company had no offices, no staff, no employees and no involvement in the operations of any of its vessels. It was a single-purpose holding company; its sole function was to hold title to vessels for demise (bareboat) charter to third parties.") There was not and could not have been any overlap of employees; Northland Vessel Leasing had no employees whatsoever.

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA  98121

(206) 443-3400
FAX (206) 448-9076

---

[4] During the course of discovery, defendants gave plaintiff the names of all persons aboard the barge when plaintiff was injured. Not one of the persons was employed by Northland Vessel Leasing. There has never been any suggestion, argument or evidence tending to suggest the employees aboard the barge were jointly employed or that anyone other than those barge personnel had notice of any conditions aboard the barge. *Decl. of T. Waller.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 9 of 13 -

C. <u>The BARANOF TRADER Was Not Required to Have *Any* Perimeter Wires; Thus, Whether or Not a Wire Was Loose -- and Whether or Not Various Employees May Have Known About It -- Is Legally Irrelevant.</u>

The BARANOF TRADER was certified as an Inspected Vessel by the United States Coast Guard on September 24, 2000. *Declaration of Ed Hiersche, Ex. 1.* The barge's Certificate of Inspection lists its service as "Freight Barge," but its "Conditions of Carriage" (page 2 of the Certificate) authorizes the carriage of 100,000 gallons of fuel. *Id.* ("This vessel is authorized to carry Grade D in port and stbd. after rake wing tanks to a maximum capacity of 100,000 gallons [.]")

A Certificate of Inspection (COI) certifies that a vessel has been physically inspected by representatives of the U.S. Coast Guard and that it is in conformance with the applicable vessel inspection laws and regulations. 46 CFR § 91.15 *et seq.* The inspection process includes a series of initial inspections (46 CFR § 91.20) during construction, an inspection for certification (46 CFR § 91.25-10) and annual and periodic inspections (46 CFR § 91.27) at regular intervals. At each level of inspection, the Coast Guard inspector must verify that all lifesaving appliances comply with the "applicable regulations." <u>See</u>, <u>e.g.</u>, 46 CFR § 91.25-10.

In an earlier Order entered by Judge Singleton, the Court found that unmanned tank barges are <u>*exempt*</u> from all rail and guard requirements. *Order, Docket 11, at p. 8 ("Under the applicable federal regulations, 46 CFR §32.02-10(a) exempts unmanned tank barges from the exact same rail requirements outlines by § 92.25-5.")*[5] The following Coast Guard regulations affirm the BARANOF TRADER, as a tank vessel, is exempt from those same rail and guard requirements:

> 46 CFR 30.01-5  Application of Regulations
> (d)   This subchapter is applicable to all U.S.-flag vessels indicated in Column 2 of Table 30.01-5(d). [Column 2: "*All vessels carrying combustible or flammable liquid cargo in bulk.*"]
>
> 46 CFR § 32.02-10  Rails -- TB/ALL
> (a)   All tank vessels, ***except unmanned tank barges***, . . . shall have efficient guard rails or bulwarks on decks and bridges.

---

[5] Judge Singleton found previously, "[T]he BARANOF TRADER is an unmanned barge [.]" *Order* at 4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 10 of 13 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

> 46 CFR § 30.10-69  Tank vessel -- TB/ALL
> The term tank vessel means a vessel that is constructed or adapted to carry or that carries, oil or hazardous material in bulk as cargo or cargo residue, and that --
>
> (a) Is a vessel of the United States [.]
>
> 46 CFR 30.10-5  Cargo -- TB/ALL
> The term cargo means combustible liquid, flammable liquid, or liquefied flammable gas unless otherwise stated.
>
> 46 CFR 30.10-15  Combustible liquid -- TB/ALL
> The term combustible liquid means any liquid having a flashpoint above 80[degrees] F. (as determined from an open-cup tester, as used for test of burning oils). In the regulations of this subchapter, combustible liquids are referred to by grades, as follows:
>
> (a) Grade D. Any combustible liquid having a flashpoint below 150[degrees] F. and above 80 [degrees] F.

There is no genuine dispute the BARANOF TRADER was an unmanned tank vessel. It was inspected by the U.S. Coast Guard and constructed and authorized to carry 100,000 gallons of Grade D (combustible liquid) in bulk. As a matter of law, the barge was exempt from the perimeter rail requirements identified in plaintiff's motion. No rails whatsoever were required on the barge's perimeter.

Given the regulatory exemption for rail requirements, it is factually and legally irrelevant whether or not someone (or some entity) knew that a perimeter was loose.[6]

### III    RESPONSE TO PLAINTIFF'S DISCOVERY

Without waiver of any objections or discounting the above facts and discussion, defendants offer plaintiff the attached, supplemental discovery responses. *Ex. 4, Decl. of T. Waller.* The information and documents affirm there was no overlap of employees between the answering defendants, there was no corporate disregard by the defendants and there was and remains no hint

---

[6] It is also no use for plaintiff to suddenly contend the wire was unsafe -- even if not required -- simply because it was loose: he admits in his Motion to Compel that he "stopped his fall by grabbing onto the lower [loose] course of railing." *Motion, p. 3*. By his own account, he would have fallen into the water (with no means of escape) if the "loose" wire had not been there.

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

of evidence that plaintiff's discovery was reasonably likely to ever lead to the discovery of admissible evidence.

## IV   CONCLUSION

Plaintiff's request in September 2005 for defendants' internal corporate information and finances had no legitimate link with the allegations of his complaint. Plaintiff's complaint offered neither notice nor claim for breach of a corporate veil. If plaintiff had genuinely had any reason for or interest in obtaining those corporate records -- other than to postpone summary judgment -- he would have communicated with defense counsel sometime between September 2005 and April 2006. Similarly, plaintiff would have (and undoubtedly should have) pursued other discovery -- e.g., corporate depositions under Rule 30(b)(6) -- tending to prove his otherwise baseless allegations of corporate disregard. It was only after defendants filed their summary judgment motion that plaintiff finally filed his motion to compel.

As set forth in the documents produced by defendants (without waiver of any objections), plaintiff's recent allegation of corporate disregard has no basis in law or fact.

Defendants respectfully ask the Court to deny plaintiff's motion to compel.

DATED this 22nd day of May, 2006.

BAUER MOYNIHAN & JOHNSON LLP

/s/ Thomas G. Waller
_____
Thomas G. Waller, Alaska Bar No. 0109052
Attorneys for Defendants
2101 Fourth Avenue, Suite 2400
Seattle, Washington 98121
Tel: 206-443-3400
Fax: 206-448-9076
E-mail: tgwaller@bmjlaw.com

ATTORNEYS AT LAW

BAUER MOYNIHAN & JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

## CERTIFICATE OF SERVICE

I declare under penalty of perjury of the laws of the state of Washington that on May 22, 2006 I electronically filed the **above document** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Neil T. O'Donnell**: nto@acglaw.com
**Christopher J. Slottee :** cjs@acglaw.com

BAUER MOYNIHAN & JOHNSON LLP

s/Suya Edwards
_____
Suya Edwards
E-mail: sedwards@bmjlaw.com

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA  98121

(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
Abruska / Northland; No. A04-209 CV (JKS)
- 13 of 13 -