1   Thomas G. Waller
    Alaska Bar No. 0109052
2   BAUER MOYNIHAN & JOHNSON LLP
    2101 4TH Avenue - 24th Floor
3   Seattle, WA 98121
    (206) 443-3400
4

5   Attorneys for Defendants

6

                UNITED STATES DISTRICT COURT
7         FOR THE DISTRICT OF ALASKA AT ANCHORAGE

8   JOSEPH ABRUSKA,

9               Plaintiff,

10        v.

11   NORTHLAND VESSEL LEASING COMPANY,
     LLC and NAKNEK BARGE, LLC,         CASE NO. A04-209 CV (JKS)
12
             Defendants.
13

14      SUPPLEMENTAL RESPONSES OF NAKNEK BARGE, LLC TO PLAINTIFF'S
    REQUESTS FOR PRODUCTION AND INTERROGATORIES DATED AUGUST 31, 2005

15   TO:    Plaintiff, above-named; and

16   TO:    His attorneys Neil T. O'Donnell, Christopher J. Slottee and Atkinson, Conway & Gagnon

17      Defendant Naknek Barge, LLC supplements its prior discovery responses.

18

19      DATED this _22_ day of May, 2006.

20                     BAUER MOYNIHAN & JOHNSON LLP

21

22

23                     Thomas G. Waller, AKB No. 0109052
                     Attorneys for Defendants

24

25

26

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

DEFENDANT'S SUPPLEMENTAL RESPONSES TO
PLAINTIFF'S DISCOVERY REQUESTS OF AUGUST 31, 2005
Abruska / Northland; No. A04-209 CV (JKS)
- 1 of 2-

EXHIBIT __4__ PG _36-77_

1   I declare under penalty of perjury that on May __22__, 2006, I caused to be served in the manner indicated below a true and
    accurate copy of the foregoing document upon the following:

2
    Neil T. O'Donnell                          [✓] By Mail
3   Christopher J. Slottee                     [ ] By Hand Delivery
    Atkinson, Conway & Gagnon, Inc.            [✓] By Facsimile
    420 L Street, Suite 500                    [ ] By Air Courier
4   Anchorage, AK  99501
    Tel:  907.276.1700
5   Fax:  907.272.2082

6
    BAUER MOYNIHAN & JOHNSON LLP
7

8   Suya Edwards

9   By: Suya Edwards

10

11

12

13

14

15

16

17

18

19

20

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

21

22

23

24

25

26

DEFENDANT'S SUPPLEMENTAL RESPONSES TO
PLAINTIFF'S DISCOVERY REQUESTS OF AUGUST 31, 2005
Abruska / Northland; No. A04-209 CV (JKS)
- 2 of 2-

EXHIBIT __4__ PG _37-77_

**Supplemental Responses**
**Requests for Production to Naknek Barge Lines, LLC**

<u>Request for Production No. 1</u>: Articles of incorporation, articles of organization and/or certificate of incorporation.

> *Naknek Barge Lines was at all times material a limited liability company and did not have the requested documents.*

<u>Request for Production No. 2</u>: Amendments to articles of incorporation, articles of organization and/or certificate of incorporation.

> *Naknek Barge Lines was at all times material a limited liability company and did not have the requested documents.*

<u>Request for Production No. 3</u>: Operating agreements, bylaws and/or limited liability company agreements.

> *Without waiver of objection(s), see attached Agreement.*

<u>Request for Production No. 4</u>: Amendments to operating agreements, bylaws and/or limited liability company agreements.

> *Without waiver of objection(s), see Agreement produced in response to RFP No. 3.*

<u>Request for Production No. 5</u>: Any document listing the names of your members and/or stockholders for year 2003.

> *Without waiver of prior objection(s), see Agreement produced in response to RFP No. 3, including identification of sole member.*

<u>Request for Production No. 6</u>: Any document listing the names of your managers, officers and/or board of directors for 2003.

> *Without waiver of prior objection(s), see Agreement produced in response to RFP No. 3, including identification President and CEO.*

<u>Request for Production No. 7</u>: All minutes of meetings of board of directors, officers, managers, stockholders, and/or members held in 2003.

> <u>*OBJECTION.*</u>  *The documents requested contain confidential information and are not reasonably calculated to lead to the discovery of admissible information.*

EXHIBIT _4_ PG 38-77

Request for Production No. 8: Any document listing the names and job titles of all employees of Naknek Barge Lines in 2003.

*Without waiver of prior objection(s), the following persons were employed in 2003:*

| | | | |
|---|---|---|---|
| Joseph Bouffiou | Mark Bouffiou | Steven Cloud | Tom Harrington |
| Ed Hiersche | Erik Howard | Shirley Martinez | Fred Nitschke |
| George Trohl | Janet Stebbins | Simaile Vaega | Fernanado Vizcarra |
| Leighton Ash | Steven Bowen | David Branch | Elliott Buckley |
| Filoteo Cepe | Jame Cunningham | Michael DeVaney | Brian Ekstrand |
| Kenneth Fultz | Floyd Gallegos | Stephen Gieber | Steven Glasman |
| Frederick Haag | Erich Hiersche | Scott Hull | David Ircink |
| Jeff Jackson | Andrew Keeton | Tim Kinkopf | James Metz |
| Frank Moody | Sean Moody | Lance Muir | Branon Myers |
| Eric Nelius | Terry Patterson | Brandon Reid | Adam Santner |
| Clayton Smith | Stacey Smith | John Strong | Robin Thomas |
| Steven Thomas | Matt Windholtz | Chris Young | Roman Zaretski |

Request for Production No. 9: Any document listing names and job titles of all officers, directors and/or managers of Naknek Barge Lines in 2003.

*Without waiver of prior objection(s), see response to RFP Nos. 6 & 8, above.*

Request for Production No. 10: Any financial statements for years 2003, 2004 and 2005.

*OBJECTION. The documents requested contain confidential information and are not reasonably calculated to lead to the discovery of admissible information.*

Request for Production No. 11: Any document describing and/or listing any financial contribution made to Naknek Barge Lines by any member, manager, officer and/or director in past 3 years.

*OBJECTION. The documents requested contain confidential information and are not reasonably calculated to lead to the discovery of admissible information.*

Request for Production No. 12: Naknek Barge Lines's corporate book for years 2003, 2004 and 2005.

*Without waiver of objection(s), the term "corporate book" is not a recognized term for an LLC.*

EXHIBIT 4 PG 39-77

Request for Production No. 13: Any document relating to formation of Naknek Barge Lines.

*Without waiver of prior objection(s), see attached certificates.*

Request for Production No. 14: Any document relating to formation of Northland Services.

*Without waiver of objection(s), Naknek Barge Lines and Northland Services were at all times material separate and unaffiliated business entities. The request for Northland Services formational documents is not properly directed to Naknek Barge Lines.*

Request for Production No. 15: Any documents relating to the formation of Northland Holdings.

*Without waiver of objection(s), Naknek Barge Lines and Northland Holdings were at all times material separate and unaffiliated business entities. The request for Northland Holdings formational documents is not properly directed to Naknek Barge Lines.*

Request for Production No. 16: Any documents relating to the purchase of any stock, securities, or other interest in Naknek Barge Lines by Northland Vessel Leasing, Northland Services or Northland Holdings.

*Without waiver of objection(s), none of the listed entities purchased any stock, securities or other interest in Naknek Barge Lines during times material to this lawsuit.*

Request for Production No. 17: Any documents relating to the purchase of the freight barge BARANOF TRADER.

*Naknek Barge Lines has no responsive documents.*

Request for Production No. 18: Any documents relating to purchase of stock, securities or any other interest in Northland Vessel Leasing by Naknek Barge Lines, Northland Services or Northland Holdings.

*Without waiver of objection(s), Naknek Barge Lines has not purchased any stock, securities or any other interest in Northland Vessel Leasing.*

Request for Production No. 19: Any insurance policies under which Naknek Barge Lines and Northland Services are joint insureds, including but not limited to (a) auto policies; (b) property loss properties; (c) umbrella policies and (d) general liability policies.

*Insurance information has previously been disclosed.*

EXHIBIT  4  PG 40-77

Request for Production No. 20:  Any insurance policies under which Naknek Barge Lines and Northland Holdings are joint insureds, including but not limited to (a) auto policies; (b) property loss properties; (c) umbrella policies and (d) general liability policies.

*Insurance information has previously been disclosed.*

Request for Production No. 21:  Any insurance policies under which Naknek Barge Lines and Northland Vessel Leasing are joint insureds, including but not limited to (a) auto policies; (b) property loss properties; (c) umbrella policies and (d) general liability policies.

*Insurance information has previously been disclosed.*

Request for Production No. 22:  All orders, reports, memos, instructions or correspondence sent by any officer, director, manager, member or employee of Northland Services to any officer, director, manager, member or employee of Naknek Barge Lines re: BARANOF TRADER.

*Without waiver of objection(s), relevant communications have previously been disclosed.*

Request for Production No. 23:  All orders, reports, memos, instructions or correspondence sent by any officer, director, manager, member or employee of Naknek Barge Lines to any officer, director, manager, member or employee of Northland Services re: BARANOF TRADER.

*Without waiver of objection(s), relevant communications have previously been disclosed.*

Request for Production No. 24:  All orders, reports, memos, instructions or correspondence sent by any officer, director, manager, member or employee of Northland Vessel Leasing to any officer, director, manager, member or employee of Naknek Barge Lines re: BARANOF TRADER.

*Without waiver of objection(s), relevant communications have previously been disclosed.*

Request for Production No. 25:  All orders, reports, memos, instructions or correspondence sent by any officer, director, manager, member or employee of Naknek Barge Lines to any officer, director, manager, member or employee of Northland Vessel Leasing re: BARANOF TRADER.

*Without waiver of objection(s), relevant communications have previously been disclosed.*

EXHIBIT _4_ PG _41-72_

Request for Production No. 26:  Any document listing the addresses of all offices used by Naknek Barge Lines.

> *Without waiver or objection(s), see attached Affidavit of Citizenship.*

Request for Production No. 27:  Any report filed with the Sec. of State of the State of Washington within the past three years.

> *Without waiver of objection(s), see attached Certificate of Existence/Authorization.*

Request for Production No. 28:  Any report filed with the Division of Corporations of State of Delaware within the past three years.

> *Without waiver of objection(s), see Response to No. 13, above .*

Request for Production No. 29:  Any report filed with the Department of Commerce of State of Alaska within the past three years.

> *Without waiver of objection(s), see attached Certificate of Compliance.*

EXHIBIT  4   PG 42-77

**Supplemental Responses**
**Interrogatories to Naknek Barge Lines, LLC**

<u>Interrogatory No. 1</u>: If any officer, director, manager or employee of Naknek Barge Lines ever received any salary, fee or other compensation from Northland Vessel Leasing while working for Northland Vessel Leasing, state the name and address of each person, the reason for the compensation and the date the compensation was paid.

*Naknek Barge Lines is not aware of any such persons during the relevant time periods.*

<u>Interrogatory No. 2</u>: If any officer, director, manager or employee of Northland Vessel Leasing ever received any salary, fee or other compensation from Naknek Barge Lines while working for Northland Vessel Leasing, state the name and address of each person, the reason for the compensation and the date the compensation was paid.

*Naknek Barge Lines is not aware of any such persons during the relevant time periods.*

<u>Interrogatory No. 3</u>: Names, job titles, addresses, phone numbers and dates of employment for every person employed by both Naknek Barge Lines and Northland Services in August 2003.

*Naknek Barge Lines is not aware of any of its employees ever working for Northland Services.*

<u>Interrogatory No. 4</u>: All persons and/or entities and percentage of ownership who were stockholders and/or members of both Naknek Barge Lines and Northland Services in August 2003.

*Without waiver of objection(s), Naknek Barge Lines is not aware of any such persons or entities. As previously stated, ownership interest in Northland Services is otherwise not information properly requested of Naknek Barge Lines.*

<u>Interrogatory No. 5</u>: Names, job titles, addresses, phone numbers and dates of employment for every person employed by both Naknek Barge Lines and Northland Vessel Leasing in August 2003.

*Naknek Barge Lines is not aware of its employees ever working for Northland Vessel Leasing, nor is it aware of the employees, if any, of Northland Vessel Leasing*

EXHIBIT __4__ PG _43-77_

Interrogatory No. 6:  All persons and/or entities and percentage of ownership who were stockholders and/or members of both Naknek Barge Lines and Northland Vessel Leasing in August 2003.

> *OBJECTION.  The information requested is not reasonably calculated to lead to the discovery of admissible information.  Without waiver of objection, ownership interest in Northland Vessel Leasing is not information properly requested of Naknek Barge Lines.*

Interrogatory No. 7:  Names, job titles, addresses, phone numbers and dates of employment for every person employed by Naknek Barge Lines in August 2003.

> *Without waiver of objection(s), see response to RFP No. 8, above.*

Interrogatory No. 8:  Names and percentages of ownership of all persons and/or entities who were shareholders and/or members of Naknek Barge Lines in August 2003.

> *Without waiver of objection(s), see response to RFP No. 3 above.*

Interrogatory No. 9:  Names and percentages of ownership of all persons and/or entities currently shareholders and/or members of Naknek Barge Lines.

> *OBJECTION.  The information requested is not reasonably calculated to lead to the discovery of admissible information.*

Interrogatory No. 10:  State the names of persons and/or entities that formed Naknek Barge Lines.

> *Without waiver of objection(s), see response to RFP No. 3 above.*

Interrogatory No. 11:  If Naknek Barge Lines has ever used for its own benefit property owned by Northland Vessel Leasing or Northland Services state the date, time of use, type of property used, amount paid for the property and purpose of use (incl. machinery, raw material, money, employees, or any other asset owned, leased, held or employed by Northland Vessel Leasing or Northland Services).

> *Without waiver of objection, charter documents previously identified in discovery evidence the use by Naknek Barge Lines of a barge owned by Northland Vessel Leasing.*

Interrogatory No. 12:  If Naknek Barge Lines has ever had a common bank account with Northland Vessel Leasing or Northland Services list type, location and purpose of the common bank account.

> *Naknek Barge Lines has never shared a common bank account with other entities.*

EXHIBIT  4  PG 44-77

## CERTIFICATE OF SERVICE

I declare under penalty of perjury that on May _____, 2006, I caused to be
served in the manner indicated below a true and accurate copy of the foregoing
document upon the following:

Neil T. O'Donnell                      [ ] By Mail
Christopher J. Slottee                 [ ] By Hand Delivery
Atkinson, Conway & Gagnon,             [ ] By Facsimile
Inc.                                   [ ] By Air Courier
420 L Street, Suite 500                [ ] By E-Mail
Anchorage, AK  99501
Tel:  907.276.1700
Fax:  907.272.2082


BAUER MOYNIHAN & JOHNSON LLP



_____

By:  Suya Edwards

8

EXHIBIT  4  PG 45-77

RESPONSE TO
REQUEST FOR PRODUCTION NO. 3

EXHIBIT _4_ PG _46-77_

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

OF

## NAKNEK BARGE LINES, LLC

A DELAWARE LIMITED LIABILITY COMPANY

EXHIBIT __4__ PG _47-77_  79828v3

# TABLE OF CONTENTS

PAGE

*ARTICLE I CERTAIN DEFINITIONS* ...........................................................................1

*ARTICLE II THE LLC* .............................................................................................4
  2.1    *Organization.* ...........................................................................................4
  2.2    *LLC Name.* ..............................................................................................4
  2.3    *Purpose.* .................................................................................................4
  2.4    *Powers.* ..................................................................................................4
  2.5    *Principal Place of Business.* .......................................................................4
  2.6    *Term.* .....................................................................................................4
  2.7    *Filings; Agent for Service of Process.* ..........................................................4
  2.8    *Reservation of Other Business Opportunities.* ...............................................4
  2.9    *Citizenship.* .............................................................................................5
                                                                                                    5

*ARTICLE III CAPITAL CONTRIBUTIONS ADDITIONAL FINANCING AND
CONTRIBUTIONS.* ..................................................................................................5
  3.1    *Capitalization.* .........................................................................................5
  3.2    *Additional Financing.* ...............................................................................5
  3.3    *Other Matters.* .........................................................................................5
                                                                                                    6

*ARTICLE IV DISTRIBUTIONS* ................................................................................6
  4.1    *Distributions of Available Cash Flow.* .........................................................6
  4.2    *Withholding.* ............................................................................................6
                                                                                                    6

*ARTICLE V MEMBERSHIP; MEETINGS.* ................................................................6
  5.1    *Limited Liability.* ......................................................................................6
  5.2    *Authority of and Action by Members.* ..........................................................6
  5.3    *Required Vote or Approval of Members.* ........................................................7
  5.4    *Meetings.* ................................................................................................7
  5.5    *Notice of Meeting.* ....................................................................................7
  5.6    *Proxies.* ..................................................................................................7
  5.8    *Written Consent.* .......................................................................................7
                                                                                                    7

*ARTICLE VI MANAGEMENT* ..................................................................................8
  6.1    *Classes of Managers.* ................................................................................8
  6.2    *Management.* ...........................................................................................8
  6.3    *Removal of the Manager.* ...........................................................................8
  6.4    *Vacancies.* ..............................................................................................9
  6.5    *Limitation of Liability of the Manager* .........................................................9
  6.6    *Indemnification.* .......................................................................................9
                                                                                                   10

*ARTICLE VII BOOKS AND RECORDS.* ..................................................................11
  7.1    *Books and Records; Financial Statements to Members.* ................................11
  7.2    *Tax Matters.* ...........................................................................................11
  7.3    *Right of Inspection.* ................................................................................12
  7.4    *Financial Records.* ..................................................................................12

*ARTICLE VIII FISCAL MATTERS* .........................................................................12
  8.1    *Fiscal Year.* ...........................................................................................12
                                                                                                   12

-i-

EXHIBIT 4 PG 48-77    79828v3

| | | |
|---|---|---|
| 8.2 | Deposits. | 12 |
| 8.3 | Agreements, Consents, Checks, Etc. | 12 |
| 8.4 | Accountant. | 12 |
| 8.5 | Legal Counsel. | 12 |

**ARTICLE IX TRANSFER OR ASSIGNMENT OF INTERESTS** ..... 12

| | | |
|---|---|---|
| 9.1 | Consent Required for Transfer. | 12 |
| 9.2 | Restriction on Transfer. | 13 |

**ARTICLE X DISSOLUTION AND WINDING UP** ..... 13

| | | |
|---|---|---|
| 10.1 | Liquidating Events. | 13 |
| 10.2 | Winding Up. | 14 |

**ARTICLE XI AMENDMENTS** ..... 14

| | | |
|---|---|---|
| 11.1 | Amendments. | 14 |

**ARTICLE XII MISCELLANEOUS** ..... 14

| | | |
|---|---|---|
| 12.1 | Notices. | 14 |
| 12.2 | Binding Effect. | 15 |
| 12.3 | Creditors. | 15 |
| 12.4 | Remedies Cumulative. | 15 |
| 12.5 | Construction. | 15 |
| 12.6 | Headings. | 15 |
| 12.7 | Severability. | 15 |
| 12.8 | Incorporation by Reference. | 15 |
| 12.9 | Further Action. | 15 |
| 12.10 | Variation of Pronouns. | 15 |
| 12.11 | Governing Law. | 15 |
| 12.12 | Waiver of Action for Partition. | 16 |

EXHIBIT A - PERCENTAGE INTEREST OF MEMBERS

EXHIBIT 4 PG 49-77 79828v3

# AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
### OF

### NAKNEK BARGE LINES, LLC

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "*Agreement*") is entered into effective as of May 10, 2000, by MARINE CAPITAL MANAGEMENT, LLC, a Delaware limited liability company (the "*Member*"), pursuant to the provisions of the Act (as defined below).

## RECITALS:

A.    Northland Services, Inc., a Washington corporation ("*NSI*"), and Service Oil & Gas, Inc., an Alaska corporation ("*SOG*"), entered into a Limited Liability Company Agreement dated as of May 1, 2000 (the "*Original Agreement*"), pursuant to which they formed the LLC (as defined below).

B.    Immediately prior to the execution and delivery of this Agreement, NSI and SOG have sold all of the outstanding membership interest in the LLC to the Member.

C.    The Member desires to amend and restate the Original Agreement in its entirety by this Agreement.

## ARTICLE I
## CERTAIN DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings set forth in this Article I (such meanings to be equally applicable in both the singular and plural forms of the term defined).

1.1.    "*Act*" means the Delaware Limited Liability Company Act (6 Del.C. § 18-101, *et seq.*), as amended from time to time (or any corresponding provisions of succeeding law).

1.2.    "*Affiliate*" means any (i) corporation, partnership, trust, limited liability company or other entity controlled by or under common control with the Member or in which the Member is or may be an officer, shareholder, partner (general or limited), trustee, member, manager, or owner; (ii) officer, director, shareholder, partner (general or limited), trustee, member, manager, owner or employee of any corporation, partnership, trust, limited liability company or other entity controlled by or under common control with the Member; and (iii) corporation, partnership, trust, limited liability company or other entity or business in which the Member has any interest whatsoever.

1.3.    "*Agreement*" means this Limited Liability Company Agreement, as amended, modified, supplemented or restated from time to time. Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole, unless the context otherwise requires.

79828v3

EXHIBIT __4__ PG _50_-_77_

1.4.    *"Available Cash Flow"*    means, with respect to the applicable period of measurement (*i.e.*, any period beginning on the first day of the LLC taxable year or other period commencing immediately after the last day of the prior calculation of Available Cash Flow, and ending on the last day of the month, quarter or other applicable period immediately preceding the date of calculation), the excess, if any, of the gross cash receipts of the LLC for such period from all sources whatsoever, including, without limitation, the following:

(a)    (i) all rents, revenues, income and proceeds derived by the LLC from its operations; (ii) all proceeds and revenues received on account of (A) any sales of Property, (B) any payments of principal, interest, costs, fees, penalties or otherwise on account of any loans made by the LLC or (C) any financings or refinancings of any Property; (iii) the amount of any insurance proceeds and condemnation awards of Property; (iv) all Capital Contributions received by the LLC from the Member; (v) all cash amounts previously reserved by the LLC, if the specific purposes for which such amounts were reserved are no longer applicable; and (vi) the proceeds of liquidation of Property in accordance with this Agreement,

over the sum of:

(b)    (i) all operating costs and expenses of the LLC and capital expenditures made during such period (without deduction, however, for any capital expenditures, charges for depreciation or other expenses not paid in cash or expenditures from reserves described in (vii) below); (ii) all costs and expenses expended or payable during such period in connection with the sale or other disposition, or financing or refinancing, of Property or the recovery of insurance or condemnation proceeds; (iii) all fees provided for under this Agreement, if any; (iv) all debt service, including principal and interest, paid during such period on all indebtedness of the LLC; (v) all capital contributions, advances, reimbursements or similar payments made to any Person in which the LLC has an interest; (vi) all loans made by the LLC to any Person in which the LLC has an interest; and (vii) any reserves as reasonably determined by either Manager for working capital, capital improvements, payments of periodic expenditures, debt service or other purposes.

1.5.    *"Capital Contributions"*    means, with respect to the Member, the amount of money contributed to the LLC with respect to the Interest in the LLC held by such Member, as set forth on Exhibit A.

1.6.    *"Certificate"*    means the Certificate of Formation of the LLC filed with the Secretary of State of the State of Delaware in accordance with the Act, as such Certificate may be amended from time to time in accordance with the Act.

1.7.    *"Citizen"* has the meaning given such term in Section 2 of the Shipping Act, 1916, 46 U.S.C. app. § 802, as amended from time to time with respect to a Person qualified to operate a vessel in the United States coastwise trade.

EXHIBIT  4  PG 51-77 79828v3

1.8.  "*Code*" means the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).

1.9.  "*GAAP*"  means  United  States  generally  accepted  accounting  principles, consistently applied.

1.10.  "*Interest*" means the Member's ownership interest in the LLC, including any and all benefits to which the holder of such Interest may be entitled as provided in this Agreement, together with all obligations of the Member to comply with the terms and provisions of this Agreement.

1.11.  "*Initial Members*" means NSI and SOG, together.

1.12.  "*LLC*" means the company formed pursuant to this Agreement and the company continuing the business of this company in the event of dissolution as herein provided.

1.13.  "*Managers*"  means Julian F. DePree and Michael J. Doan, or any successor Managers chosen by the Member pursuant to Section 6.2.

1.14.  "*Member*" means from time to time the Initial Member (to the extent such Initial Member holds an Interest at such time) and any Transferee of the Interest in the LLC permitted under Sections 9.1 and 9.2.

1.15.  "*Officer*" shall have the meaning set forth in Section 6.4.

1.16.  "*Person*"  means any individual, general partnership, limited partnership, corporation, trust, limited liability company or other association or entity.

1.17.  "*Property*" means all real and personal property acquired and held by the LLC and any improvements thereto and shall include both tangible and intangible property.

1.18.  "*Regulations*" means the final or temporary regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

1.19.  "*Service*" means the Internal Revenue Service of the United States of America or any successor federal government agency or agencies with similar regulatory and enforcement authority.

1.20.  "*Transfer*" means, as a noun, any voluntary or involuntary transfer, sale, pledge, hypothecation or other disposition or encumbrance and, as a verb, voluntarily or involuntarily to transfer, sell, pledge, hypothecate or otherwise dispose of or encumber.

1.21.  "*Transferee*" means any Person who has acquired a beneficial interest in the Interest of a Member of the LLC.

EXHIBIT  4  PG 52-77  79828v3

1.22.  *"Transferor"* means any Member who has Transferred or who is Transferring all or any part or interest in its Interest.

## ARTICLE II
### THE LLC

2.1.  Organization.  The Initial Members formed the LLC pursuant to the provisions of the Act and upon the terms and conditions set forth in the Original Agreement and the Member hereby amends and restates such terms and conditions in their entirety pursuant to this Agreement.  The Member shall be deemed admitted as a member of the LLC upon its execution of this Agreement.

2.2.  LLC Name.  The name of the limited liability company formed hereby shall be "Naknek Barge Lines, LLC" and all business of the LLC shall be conducted in such name or such other name as the Member shall determine.  The LLC shall hold all of its property in the name of the LLC and not in the name of any Member, Manager or Officer.

2.3.  Purpose.  The purpose and business of the LLC shall be to engage in any lawful business permitted by the Act and the laws of any and all jurisdictions in which the LLC may conduct business.

2.4.  Powers.  The LLC shall possess and may exercise all the powers and privileges granted by the Act, all other applicable law and by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion and attainment of the business, purposes or activities of the LLC.

2.5.  Principal Place of Business.  The principal place of business of the LLC shall be 821 2nd Avenue, Seattle, Washington 98104 or such other location as may be designated by either Manager from time to time.

2.6.  Term.  The term of the LLC shall be perpetual unless and until the LLC is dissolved pursuant to the Act or as set forth herein.  The existence of the LLC as a separate legal entity shall continue until cancellation of the Articles in the manner required by the Act.

2.7.  Filings; Agent for Service of Process.

(a)  The Certificate has been filed in the office of the Secretary of State of the State of Delaware in accordance with the provisions of the Act.  The Managers, either collectively or individually, shall take any and all other actions reasonably necessary to perfect and maintain the status of the LLC under the laws of the State of Delaware.  The Managers, either collectively or individually, shall cause amendments to the Certificate to be filed whenever required by the Act.  Such amendments shall be executed by a Manager.

-4-

EXHIBIT  4  PG 53-11  79828v3

(b)    The Member hereby ratifies and adopts the Certificate filed with the Secretary of State of the State of Delaware and all actions taken in connection with the preparation and filing of the Certificate.

(c)    The registered agent for service of process on the LLC in the State of Delaware, and the address of such agent, shall initially be The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. A Manager, in his sole and absolute discretion, may change the registered agent and appoint successor registered agents.

(d)    Upon the dissolution of the LLC, but subject to the election by the Member to continue the business of the LLC pursuant to <u>Section 10.1</u>, a Manager (or, in the event there is no Manager, the Person responsible for winding up and dissolution of the LLC pursuant to <u>Article X</u>), shall promptly execute and cause to be filed articles of dissolution in accordance with the Act and the laws of any other states or jurisdictions in which the LLC has registered to transact business or otherwise filed articles.

2.8.    <u>Reservation of Other Business Opportunities</u>.  No business opportunities other than those actually exploited by the LLC pursuant to <u>Section 2.3</u> shall be deemed the property of the LLC, and any Manager, the Officer or the Member may engage in or possess an interest in any other business venture, independently or with others, of any nature or description; and neither the LLC nor any Manager, Officer or Member shall have any rights by virtue hereof in and to such other business ventures, or to the income or profits derived therefrom.  The provisions of this <u>Section 2.8</u> shall be subject to, and not in any way affect the enforceability of, any separate agreement by any Manager, Officer, Member or Affiliate thereof restricting or prohibiting certain business activities of such Manager, Officer or Member or such Affiliate(s) thereof.

2.9    <u>Citizenship</u>. Each Member represents that they are a Citizen and covenants not to take any action whereby the laws of the United States relating to Coastwise trading are breached or the Coastwise trading privileges of the LLC are jeopardized or suspended.

**ARTICLE III**
CAPITAL CONTRIBUTIONS
ADDITIONAL FINANCING AND CONTRIBUTIONS

3.1.    <u>Capitalization</u>. The name, address and Percentage Interest of the Member is set forth on <u>Exhibit A</u> hereto. A Manager shall update <u>Exhibit A</u> from time to time to reflect any changes thereto.

3.2.    <u>Additional Financing</u>.

(a)    The sums of money required to finance the business and affairs of the LLC shall be derived from the Capital Contribution made by the Member to the LLC and set forth on <u>Exhibit A</u>, from funds generated from the operation and the business of the

-5-

EXHIBIT  4   PG 54-77   79828v3

LLC and from any loans or other indebtedness which either Manager may approve for the LLC.

(b)     The Member shall not be required to make additional Capital Contributions or otherwise provide financing to the LLC.

3.3.    Other Matters.

(a)     The Member shall not receive any interest, salary or drawing with respect to its Capital Contributions or its Capital Account or for services rendered on behalf of the LLC or otherwise in its capacity as the Member, except as otherwise provided in this Agreement.

## ARTICLE IV
## DISTRIBUTIONS

4.1.    Distributions of Available Cash Flow.  Except as otherwise provided in Article X, the Managers, acting collectively, shall distribute Available Cash Flow from time to time in their sole discretion to the Member.

4.2.    Withholding.  All amounts withheld pursuant to the Code or any provision of any state or local law with respect to any payment, distribution or allocation to the LLC or the Member shall be treated as amounts distributed to the Member pursuant to this Article IV for all purposes of this Agreement. The Managers, acting collectively, are authorized to withhold from distributions or, with respect to allocations, to the Member and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provision of any other federal, state or local law.

## ARTICLE V
## MEMBERSHIP; MEETINGS

5.1.    Limited Liability.

(a)     The debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the LLC, and, except as otherwise specifically provided by the Act, no Manager, Officer or Member shall be obligated personally for any such debt, obligation or liability of the LLC solely by reason of being a Manager or Member of the LLC.

(b)     To the extent that at law or in equity, a party shall have duties (including fiduciary duties) and liabilities to the LLC or the Member, such duties and liabilities may be restricted by provisions of this Agreement.

(c)     Each of the Managers shall be fully protected in relying in good faith upon the records of the LLC and upon such information, opinions, reports or statements

-6 -

EXHIBIT   4   PG 55 - 99    79828v3

presented to the LLC by any Person as to the matters such Manager reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the LLC, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or net cash flow or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

5.2.    Authority of and Action by Members.  Except for a Person who is a Member and also a Manager or Officer, no Member shall be entitled to participate in or vote in matters involving the management or the business of the LLC, all such authority being vested in Managers or the Officers.  A Member who is not also a Manager or an Officer shall have no authority, either express or implied, to bind the LLC.

5.3.    Required Vote or Approval of Members.  Unless otherwise specified in this Agreement, approval by or authorization of any action by or on behalf of the LLC which requires a vote, consent, approval or action of or an election by the Member shall require the consent of the Member.  Such vote may be taken at an annual or special meeting of the Members in accordance with the provisions of this Article V or by written consent in accordance with the provisions of Section 5.7.

5.4.    Meetings.  Meetings of the Member, for any purposes described in the meeting notice, may be called by either Manager.

5.5.    Notice of Meeting.  Written or telephonic notice stating the place, day and hour of the meeting and, in case of a special meeting, the purposes for which the meeting is called, shall be delivered not less than two (2) days before the date of the meeting. When the Member is present at any meeting, or if not present sign in writing a waiver of notice of such meeting, or subsequently ratify all the proceedings thereof, the transactions of such meeting are as valid as if a meeting were formally called and all requisite notice had been given.

5.6.    Proxies.  At a meeting of the Member, the Member may vote by proxy executed in writing by the Member or by the Member's duly authorized attorney-in-fact. Such proxy shall be filed with either Manager (or such other individual as a Manager shall designate to be the chairman of the meeting) before or at the time of the meeting. No proxy shall be valid after three months from date of execution, unless otherwise provided in the proxy.

5.7.    Written Consent.  Any action requiring the vote, consent, approval or action of or an election by the Member or required to be taken at a meeting of the Member may be taken without a meeting if a consent in writing, setting forth the action so taken, will be signed by the Member.

EXHIBIT  4  PG 56-77  79828v3

# ARTICLE VI
## MANAGEMENT

6.1.    Classes of Managers.  The LLC shall have two classes of managers:  Managers and Officers.  The Manager and the Officers shall have the rights and obligations set forth for each of them herein.

6.2.    Management.  The business and affairs of the LLC shall be managed by the Managers.  The Managers, collectively and individually, shall have all power and authority to manage, to direct the management, business and affairs of and to make all decisions to be made by or on behalf of the LLC.  The collective and individual powers of the Managers shall include all powers, statutory or otherwise, possessed by or permitted to managers of a limited liability company under the laws of the State of Delaware.  The Managers shall have full power and authority to do all things deemed necessary or desirable to conduct the business of the LLC, but shall delegate the day-to-day operation and control of the LLC to the Officers.  Approval by, consent of or action taken by any of the Members or Officers in accordance with authority granted by or under this Agreement shall constitute approval or action by the LLC and shall be binding on the LLC and each Member.  Any Person dealing with the LLC shall be entitled to rely on a certificate or any writing signed by any Officer as a duly authorized action on behalf of the LLC unless some other approval is otherwise specifically required hereunder.

6.3.    Managers.

(a)    Managers of the LLC shall not be required to be Members of the LLC. The Members shall from time to time select authorized Managers.

(b)    Julian F. DePree shall be the initial Manager appointed by J.P. DePree Limited Partnership and Michael J. Doan and shall serve as initial Managers, each to serve until the earliest of such Manager's death, resignation or removal.

(c)    If a Manager dies or resigns or is removed, he or she may be replaced by a new Manager selected by the Members.

(d)    Upon the unanimous agreement of all of Members, an individual designated as Manager pursuant to this Section 7.3(a) may be removed by the Members with or without cause and a replacement designated for any individual so removed.

6.4.    Officers.  The Officers of the Company shall not be required to be Members of the LLC, and shall initially include a President and such other Officers as may be deemed necessary (including, without limitation, a Vice President or Vice Presidents, Treasurer, Assistant Treasurer and Assistant Secretaries).  Any and all Officer(s) appointed by the Managers shall have such titles, power and duties as may reasonably be prescribed by the Managers.

6.5.    Election of Officers and Term of Office.  The President and Chief Executive Officer, the Chief Financial Officer and the Secretary, if any, shall be agreed upon and selected annually by the Managers.  Each Officer shall hold office until a successor shall have been duly

EXHIBIT _4_  PG _57-77_ 79828v3

elected or appointed and shall have qualified or until such Officer's death, resignation or removal in the manner provided hereinafter.

6.6.   Resignation of a Manager.  A Manager may resign by written notice to the Members.

6.7.   Vacancies.  After the resignation or removal of a Manager, the Member shall select a successor Manager. A successor Manager shall be a Citizen, but shall not be required to be a Member.

6.8.   President and Chief Executive Officer.   The President and Chief Executive Officer shall be the chief executive officer of the LLC and shall be generally in charge of its business and affairs, subject to the control of the Managers. James L. Harper shall be the initial President and Chief Executive Officer of the LLC.

6.9.   Chief Financial Officer.  The Chief Financial Officer, if any, shall be the chief financial officer of the LLC, and shall be responsible for maintaining all necessary financial records.  The Chief Financial Officer shall also perform such duties as may reasonably be specified by the President or a Manager.  The Chief Financial Officer shall be an individual agreed upon and selected by both of the Managers.

6.10.  Secretary.  The Secretary, if any, shall keep the minutes of all meetings of the Members and the Managers, and shall have custody of the minute books and other records pertaining to the organization and business of the LLC.  The Secretary shall perform such other duties as may be reasonably required by a Manager or the President

6.11.  Salaries.  The salaries of the Officers and Managers shall be reasonably fixed from time to time by the Members. No Manager or Officer shall be prevented from receiving a salary solely for the reason that such Manager or Officer is also a Member.

6.12.  Limitation of Liability of the Managers.  To the fullest extent permitted under the Act, the Delaware General Corporation Law or any other applicable law as currently or hereafter in effect, neither the Managers nor any Affiliate of any Manager shall be personally liable, responsible or accountable in damages or otherwise to the LLC or the Member for or with respect to any action or failure to act on behalf of the LLC taken in good faith and within the scope of the authority conferred on the Managers by this Agreement or by law.  In addition to, and not by way of limitation of, the preceding sentence, no Manager shall be liable, either collectively or individually, to the LLC or the Member for monetary damages for breach of fiduciary duty as the Manager, except for liability (i) for any breach of the Manager's duty of loyalty to the LLC or the Member or (ii) for acts or omissions not in good faith or which involve gross negligence, intentional misconduct or a knowing violation of law.   Any repeal or modification of this Section 6.5 shall not adversely affect any right or protection of any Manager existing prior to such repeal or modification.

EXHIBIT   4  PG 58 -77  79828v3

6.13. <u>Indemnification</u>. The LLC shall indemnify and hold harmless each of its Managers and each of its Affiliates (the "*Indemnified Parties*", and each an "*Indemnified Party*") from and against any loss, expense, damage or injury suffered or sustained by the Indemnified Parties (or any of them) by reason of any acts, omissions or alleged acts or omissions arising out of its or their activities on behalf of the LLC or in furtherance of the interests of the LLC, including, but not limited to, any judgment, award, settlement, reasonable attorney's fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim; <u>provided</u> that the acts, omissions or alleged acts or omissions upon which such actual or threatened action, proceeding or claim is based were not performed or omitted fraudulently or in bad faith or as a result of gross negligence or willful misconduct by any such Indemnified Party; and, <u>provided further,</u> that such Indemnified Party reasonably believed that the acts, omissions, or alleged acts or omissions, upon which such actual or threatened action, proceeding or claim is based were in the best interests of the LLC. Such indemnification shall be made only to the extent of the assets of the LLC.

6.14  <u>Limitations on Authority of Officers and Managers.</u>

(a)    Notwithstanding anything else herein, approval of all of the Members shall be required for any of the following matters and no Manager or Officer shall do any of the following until such approval of the Members is obtained:

(i)    cause the LLC to incur any Indebtedness, other than Permitted Indebtedness;

(ii)    cause the LLC to Transfer any property having a value in excess of $25,000 in any single transaction or series of related transactions;

(iii)    guarantee in the name or on behalf of the LLC the payment of money or the performance of any contract or other obligation of any Person;

(iv)    cause the LLC to engage in any business or activity that is not within the purpose of the LLC, as set forth in <u>Section 2.3</u>, or to change such purpose;

(v)    cause the LLC to use its name, credit or property for other than LLC purposes;

(vi)    cause the LLC to loan funds to any Person;

(vii)    cause the LLC to merge, convert or consolidate with or into any other Person;

(viii)    take any action that benefits any Member or an Affiliate thereof to the detriment of another Member or the LLC, except to the extent expressly contemplated by this Agreement;

EXHIBIT __4__ PG _59-77_  79828v3

(ix)    confess a judgment against the LLC in connection with a threatened or pending legal action involving the payment by the LLC of more than $25,000;

(x)    commingle LLC funds with those of any other Person;

(xi)    cause the LLC to file in any court pursuant to any statute of the United States or of any state a petition in bankruptcy or insolvency, file for reorganization or for the appointment of a receiver or a trustee of any or all of its properties, or seek the appointment of a trustee, receiver or liquidator of any or all of its Properties;

(xii)    amend in any material respect or terminate the Certificate or the certificate of formation or limited liability company agreement of the LLC;

(xiii)    cause or permit the LLC to enter into any agreement or take any action with a Member, Manager or Officer (or any Affiliate of any thereof), unless such agreement or action is specifically permitted by this Agreement;

(xiv)    make any tax election in respect of the LLC other than as provided in Section 7.2;

(xv)    cause the LLC to enter into any contract or agreement for the purchase of goods or services worth more than $25,000, other than the bareboat charters and time charters to be entered into in the ordinary course of business by the Companies;

(xvi)    admit a new Member to the LLC other than by the Transfer of an existing Interest in accordance with Article IX;

(xvii)    dissolve or terminate the LLC; or

(xviii)    any other thing that, though not specifically enumerated herein, is substantially equivalent to taking any action described in clauses (i) through (xvii) above.


## ARTICLE VII
### BOOKS AND RECORDS

7.1.    Books and Records; Financial Statements to Members.  The Managers shall keep proper and usual books and records pertaining to the business of the LLC.  The books and records of the LLC shall be kept at the principal office of the LLC or at such other places, within or without the State of Delaware, as a Manager shall from time to time determine.

-11-

EXHIBIT   4   PG 60-77 79828v3

7.2.    Tax Matters.  All elections and decisions required or permitted to be made by the LLC under any applicable tax law shall be made by a Manager.  A Manager or Officer shall cause to be prepared and filed any required income tax returns on a timely basis.

7.3.    Right of Inspection.  The Member of record shall have the right to examine, at any reasonable time or times for all purposes, the books and records of account, minutes and records of the LLC and to make copies thereof.  Such inspection may be made by any agent or attorney of the Member.  Upon the written request of the Member, the Managers shall cause to be mailed to such Member its most recent financial statements, showing in reasonable detail its assets and liabilities and the results of its operations, and a copy of its federal, state and local income tax returns.

7.4.    Financial Records.  All financial records shall be maintained and reported using GAAP.

## ARTICLE VIII
## FISCAL MATTERS

8.1.    Fiscal Year.  The fiscal year of the LLC shall begin on the first day of January and end on the last day of December each year, unless otherwise determined by either Manager.

8.2.    Deposits.  All funds of the LLC shall be deposited in an account or accounts in such banks, trust companies or other depositories as either Manager may select.

8.3.    Agreements, Consents, Checks, Etc.  All agreements, consents, checks, drafts or other orders for the payment of money, and all notes or other evidences of indebtedness issued in the name of the LLC shall be signed by (i) any Manager, (ii) those Persons specifically authorized from time to time by any Manager or (iii) the Member.

8.4.    Accountant.  An accountant(s) may be selected from time to time by either Manager to perform such tax and accounting services as may from time to time be required. The accountant may be removed by any Manager without assigning any cause.

8.5.    Legal Counsel.  One or more attorney(s) at law may be selected from time to time by any Manager to review the legal affairs of the LLC and to perform such other services as may be required and to report to the Managers with respect thereto. The legal counsel may be removed by any Manager without assigning any cause.

## ARTICLE IX
## TRANSFER OR ASSIGNMENT OF INTERESTS

9.1.    Consent Required for Transfer.  No Member may Transfer less than all of its rights or Interest in the LLC or resign from the LLC; provided, however, that any Member may Transfer all of his Interest in the LLC with the prior written consent of each of the Managers. Until any consent required under the previous sentence is given, a Transferee will not be

EXHIBIT __4__ PG _61-77_    79828v3

admitted to the LLC or otherwise be recognized by the LLC as having any rights as a Member, including any right to receive distributions from the LLC (directly or indirectly) or to acquire an interest in the capital or profits of the LLC.

9.2.    <u>Restriction on Transfer</u>. Notwithstanding <u>Section 9.1</u>, no Transfer by the Member will be permitted unless the Transferee is a Citizen and until the Transferee (x) delivers to each of the Managers a written instrument evidencing such Transfer; (y) executes a copy of this Agreement accepting and agreeing to all of the terms, conditions and provisions of this Agreement; and (z) pays to the LLC its reasonable out-of-pocket costs and expenses incurred in connection with such Transfer and the admission of the Transferee as the Member.

## ARTICLE X
## DISSOLUTION AND WINDING UP

10.1.    <u>Liquidating Events</u>.  The LLC shall dissolve and commence winding up and liquidating only upon the first to occur of any of the following ("*Liquidating Events*"):

(a)    The sale of all or substantially all of the Property;

(b)    The agreement of the Member;

(c)    The happening of any other event that makes it unlawful, impossible or impractical to carry on the business of the LLC;

(d)    Any time there is no Member, unless the personal representative of the Member, or any designee or nominee of the personal representative of the Member, agrees in writing to continue the LLC, at which time such personal representative or such designee or nominee of the personal representative, as the case may be, shall be admitted as the Member hereunder, notwithstanding any provision of <u>Article IX</u>; and

(e)    The entry of a decree of judicial dissolution under the Act or any other event or circumstance requiring dissolution under the Act, subject however to any cure for such event or circumstance as may be set forth in the Act.

The death, retirement, resignation, expulsion, bankruptcy or dissolution of the Member shall not be a Liquidating Event.  Moreover, the Member hereby agrees that the LLC has until the dissolution of the LLC to make any distribution of the Member's Interest required to be paid in the event of bankruptcy of the Member. Further, in an event specified in <u>Section 10.1(d)</u> occurs, the personal representative of the Member shall be obligated to agree in writing to continue the LLC and to be admitted as a Member hereunder as contemplated under <u>Section 10.1(d)</u>.

The Member hereby agrees that, notwithstanding any provision of the Act, the LLC shall not dissolve prior to the occurrence of a Liquidating Event. The Member further agrees that in the event the LLC is dissolved prior to a Liquidating Event, the LLC may be continued upon the election of the Member at such time to so continue the LLC; <u>provided</u> such election occurs within thirty (30) days of the event triggering such dissolution. An election under this <u>Section 10.1</u> shall be effected whether the Member elects in writing or at a meeting of the Member.

-13-

EXHIBIT ___4___ PG 62-97 79828v3

10.2.  Winding Up.  Upon the occurrence of a Liquidating Event requiring dissolution under the Act or upon the election of the Member to discontinue the business and operations of the LLC and dissolve the LLC, the LLC shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors and the Member.  Neither the Managers, collectively or individually, nor the Member shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the LLC's business and affairs.  If either Manager remains after the occurrence of a Liquidating Event, such Manager shall continue to have the same duties and authority as existed prior to the occurrence of a Liquidating Event, subject to the requirements of the previous sentence.  The Manager(s) (or, in the event there are no Manager remaining, any Person selected by the Member shall be responsible for overseeing the winding up and dissolution of the LLC and shall take full account of the LLC's liabilities and the Property of the LLC shall be liquidated as promptly as is consistent with obtaining the fair value thereof but in any case by the later of (x) the end of the LLC taxable year in which such Liquidating Event occurred or (y) the date ninety (90) days after such Liquidating Event occurred, and the proceeds therefrom, to the extent sufficient, shall be applied and distributed, subject to any reasonable reserves maintained for contingent or other obligations of the LLC, in the following order:

(a)  first, to the satisfaction (whether by payment or the making of reasonable provision for payment thereof) of all of the LLC's debts and liabilities to creditors other than the Member;

(b)  second, to the satisfaction (whether by payment or the making of reasonable provision for payment thereof) of all of the LLC's debts and liabilities to the Member; and

(c)  the balance, if any, to the Member.

## ARTICLE XI
## AMENDMENTS

11.1.  Amendments.  This Agreement may be altered, amended or repealed, or a new Agreement may be adopted, upon the prior written consent of the Member.  The Managers shall update Exhibit A from time to time to the extent changes thereto are made or required pursuant to this Agreement, and such updates shall not be considered an amendment to or alteration of this Agreement.

## ARTICLE XII
## MISCELLANEOUS

12.1.  Notices.  Any notice or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given on the date of service if served personally; three (3) business days after the date of mailing, if mailed, by first class mail, registered or certified, postage prepaid; one (1) business day after delivery to the courier if sent by private receipt courier guaranteeing next day delivery, delivery charges prepaid, and in each

EXHIBIT _4_ PG 63-77

79828v3

case, addressed to the Member at the address shown for the Member on <u>Exhibit A</u> hereto or at such other place as the Member may, from time to time, designate in written notices to each of the Managers. All communications to the Member in the normal course of the business of the LLC shall be deemed sufficiently given if sent by regular mail, postage prepaid.

12.2.  <u>Binding Effect</u>. Except as otherwise provided in this Agreement, every covenant, term and provision of this Agreement shall be binding upon and inure to the benefit of the Member and the Member's heirs, legatees, legal representatives, successors, transferees and assigns.

12.3.  <u>Creditors</u>. None of the provisions of this Agreement shall be for the benefit of or enforced by any creditor of the LLC or any Member.

12.4.  <u>Remedies Cumulative</u>. No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

12.5.  <u>Construction</u>. Every covenant, term and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against the Member.

12.6.  <u>Headings</u>. Section and other headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

12.7.  <u>Severability</u>. Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Agreement.

12.8.  <u>Incorporation by Reference</u>. <u>Exhibit A</u> attached to this Agreement and referred to herein is hereby incorporated in this Agreement by reference.

12.9.  <u>Further Action</u>. The Member agrees to perform all further acts and execute, acknowledge and deliver any documents which may be reasonably necessary, appropriate or desirable to carry out the provisions of this Agreement.

12.10. <u>Variation of Pronouns</u>. All pronouns and any variations thereof shall be deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require.

12.11. <u>Governing Law</u>. The laws of the State of Delaware shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the Members, without regard to the principles of conflicts of laws.

EXHIBIT  4  PG 64-77    79828v3

12.12. <u>Waiver of Action for Partition</u>.  The Member irrevocably waives any right that it may have to maintain any action for partition with respect to any of the Property of the LLC.

[signature page follows]

EXHIBIT ___4___ PG 65 -111 79828v3

IN WITNESS WHEREOF, the undersigned has entered into this Limited Liability Company Agreement as of the date first set forth above.

**MARINE CAPITAL MANAGEMENT, LLC**
a Delaware limited liability company

By:      Julian F. DePree, Jr.
Title:    Manager

EXHIBIT 4 PG 66-77 79828v3

# EXHIBIT A

## TO THE

### AMENDED AND RESTATED

### LIMITED LIABILITY COMPANY AGREEMENT

### OF
### NAKNEK BARGE LINES, LLC

| NAMES AND ADDRESSES | PERCENTAGE INTEREST |
|---|---|
| | |
| 1.  Marine Capital Management, LLC<br>580 North Western Avenue<br>Suite 200<br>Lake Forest, Illinois 60045-1941 | 100% |
| **TOTALS:** | 100% |

79828v3

EXHIBIT ___4___ PG 67-77

RESPONSE TO
REQUEST FOR PRODUCTION NO. 13

EXHIBIT  4  PG 68-77

### State of Delaware

# Office of the Secretary of State

PAGE   1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "NAKNEK BARGE LINES, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTIETH DAY OF APRIL, A.D. 2000.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

_Edward J. Freel, Secretary of State_

3195576   8300

001201613

AUTHENTICATION:        0392413

DATE:        04-20-00

EXHIBIT   4   PG 69-77

File Number _____0040675-9_____



## To all to whom these Presents Shall Come, Greeting:

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that

NAKNEK BARGE LINES, LLC,
A DELAWARE LIMITED LIABILITY COMPANY, APPEARS TO HAVE COMPLIED WITH ALL PROVISIONS OF THE LIMITED LIABILITY COMPANY ACT OF THIS STATE RELATING TO THE FILING OF THE APPLICATION FOR ADMISSION ON APRIL 26, 2000 AND IS REGISTERED TO TRANSACT BUSINESS IN THE STATE OF ILLINOIS.**********************************************



**In Testimony Whereof,** I, hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this _____26TH_____ day of _____APRIL_____ A.D. _____2000_____.

_Jesse White_

SECRETARY OF STATE

C-260.1

EXHIBIT 4 PG 70-71

RESPONSE TO
REQUEST FOR PRODUCTION NO. 26

EXHIBIT ___4__ PG _71-72_

AFFIDAVIT OF U.S. CITIZENSHIP

STATE OF ILLINOIS     }
                         }
COUNTY OF COOK     }

     I, Julian F. DePree, Jr., of 999 South Ringwood Lane, Lake Forest, Illinois 60045, being duly sworn, depose and say:

1.     That I am a Manager of Naknek Barge Lines, LLC, a limited liability company organized and existing under the laws of the State of Delaware (hereinafter called the "Company"), with offices at 821 2nd Avenue, Seattle, Washington 98104, in evidence of which formation a certified copy of the Certificate of Formation has been filed herewith, together with a certified copy of the Company's Amended And Restated Limited Liability Company Agreement;

2.     That I am authorized by and in behalf of the Company to execute and deliver this Affidavit of United States Citizenship;

3.     That the Company is member managed without officers or directors and the names of the Managers of the Company are as follows:

| Name | Title | Date and Place of Birth |
| --- | --- | --- |
| Julian F. DePree, Jr. | Manager | March 9, 1944, Mt. Kisco, New York, United States |
| Michael J. Doan | Manager | June 14, 1960, Davenport, Iowa, United States |

and that each of said individuals is a citizen of the United States by virtue of birth in the United States;

4.     That the information as to ownership, upon which the Company relies to establish that the required percentage of equity ownership is vested in citizens of the United States, is as follows:

The Members of the Company are:

| Name Interest | Membership | % of Ownership |
| --- | --- | --- |
| Marine Capital Management, LLC | Sole Member-Owner | 100% |

and that the aforesaid individual member is a citizen of the United States as established more fully in its Affidavit of U.S. Citizenship, submitted separately;

5.     That 75 percent or greater of the interest in said Company as established by the data hereinbefore set forth is owned by citizens of the United States; that the title to 75 percent or greater of the equity interest in said Company is vested in citizens of the United States free from

EXHIBIT 4 PG 72-77

any trust or fiduciary obligations in favor of any person not a citizen of the United States; that such proportion of the voting power of said Company is vested in citizens of the United States; that through no contract or understanding is it so arranged that more than 25 percent of the voting power of said Company may be exercised, directly or indirectly, in behalf of any person who is not a citizen of the United States; and that by no means whatsoever is any interest in said Company in excess of 25 percent conferred upon or permitted to be exercised by any person who is not a citizen of the United States; and

6.      That affiant has carefully examined this affidavit and asserts that all of the statements and representations contained therein are true to the best of his knowledge, information and belief.

Dated:   May 10, 2000


_____
Julian F. DePree, Jr.
Manager


STATE OF ILLINOIS          }
                           }
COUNTY OF COOK             }

Subscribed and sworn to before me a this _____ day of May, 2000.


┌─────────────────────────────┐
│      "OFFICIAL SEAL"         │
│   Christine K. Ubersox       │      _____
│ Notary Public, State of Illinois │          Notary Public
│ My Commission Exp. 01/13/2002 │
└─────────────────────────────┘

My Commission expires on: _____


- 2 -

EXHIBIT ___4___ PG _73-77_

RESPONSE TO
REQUEST FOR PRODUCTION NO. 27

EXHIBIT 4 PG 14-11

# STATE of WASHINGTON



# SECRETARY of STATE

*I, RALPH MUNRO, Secretary of State of the State of Washington and custodian of its seal,*

hereby issue this

**CERTIFICATE OF EXISTENCE/AUTHORIZATION**

**OF**

**NAKNEK BARGE LINES, LLC**

**I FURTHER CERTIFY** that the records on file in this office show that the

above named limited liability company was formed under the laws of the

State of DELAWARE and was issued a Certificate of Registration

in Washington on April 26, 2000.

**I FURTHER CERTIFY** that as of the date of this certificate, no cancellation

have been filed, and that the limited liability company is duly authorized to

transact business in the limited liability company form in the State of Washington.



Date:    April 28, 2000

*Given under my hand and the Seal of the State
of Washington at Olympia, the State Capital*



DM
Ralph Munro, Secretary of State

EXHIBIT 4 PG

RESPONSE TO
REQUEST FOR PRODUCTION NO. 29

EXHIBIT _4_ PG _76-77_

File No 69648-E

# State of Alaska
# Department of Community and Economic Development
# Division of Banking, Securities and Corporations

# CERTIFICATE
## OF
# COMPLIANCE

The undersigned, as Commissioner of Commerce and Economic Development of the State of Alaska, and custodian of corporation records for said state, hereby certifies that

### NAKNEK BARGE LINE, LLC

authorized to transact business in Alaska as

### NAKNEK BARGE LINE, LLC

is a limited liability company organized under the laws of **DELAWARE** and on **APRIL 28, 2000.** qualified as a limited liability company authorized to do business in Alaska.

I FURTHER CERTIFY that said company is in good standing and has filed all biennial reports due at this time and has paid all biennial fees due and payable at this time.

No information is available in this office on the financial condition, business activity or practices of this company.

IN TESTIMONY WHEREOF, I execute this certificate and affix the Great Seal of the State of Alaska on **MAY 3, 2000.**

Deborah B. Sedwick
Commissioner of Community
and Economic Development

EXHIBIT  4  PG 77–77