Thomas G. Waller
Alaska Bar No. 0109052
BAUER MOYNIHAN & JOHNSON LLP
2101 4TH Avenue - 24th Floor
Seattle, WA 98121
(206) 443-3400

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| JOSEPH ABRUSKA,<br><br>     Plaintiff,<br><br>  v.<br><br>NORTHLAND VESSEL LEASING COMPANY, LLC and NAKNEK BARGE LINES, LLC; NORTHLAND SERVICES, INC.,<br><br>     Defendants. | CASE NO. A04-209 CV (TMB) |

**DEFENDANTS' REPLY RE: SUMMARY JUGMENT**

I SUMMARY

  A shipowner may rely on the expertise of longshoremen and leave unremedied conditions that would otherwise be considered unreasonably dangerous to less skilled persons. *Ludwig v. Pan Ocean Shipping Co., Ltd.*, 941 F.2d 849 (9th Cir. 1991). As a matter of law, Northland Services (as employer) was a knowledgeable, skilled, expert and experienced stevedore. The vessel defendants had no duty to remedy or warn longshore employer Northland Services of a condition that was not genuinely hazardous to expert and experienced longshoremen exercising reasonable care. In his *Opposition* brief, Abruska offers only his own unqualified opinions about how the BARANOF TRADER could have been improved. He offers no genuine or credible evidence to create a genuine issue of material fact sufficient to preclude summary judgment.

  Abruska offers in his *Opposition* the same, seemingly attractive, five-step road to recovery he has alleged throughout litigation: (1) a perimeter barge wire was missing; (2) one of the two

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 1 of 15 -

remaining perimeter wires was loose; (3) nobody did anything about it; (4) Joseph Abruska was hurt; (5) one or more of the defendants (Abruska isn't sure which) should pay. If his theory fails, Abruska argues, then there must be issues of fact important enough to delay resolution of the case until settlement or trial. Abruska cites not a single genuine fact that will be discovered between now and trial. Discovery is closed. The facts are all in.

To support his theory of recovery, Abruska offers a generally accurate discussion of the *turnover duty* and how the various defendants could or might be found liable under various theories. He does not offer, however, an explanation as to how any of the defendants could realistically or actually be found liable. The cases Abruska cites in his *Opposition* and the analyses he offers inevitably and entirely support summary judgment against him.

Abruska offers in his one hundred fifty-plus pages of *Opposition* and exhibits not one shred of evidence (testimonial or otherwise) to deny that expert and experienced longshoremen can and do regularly work aboard the BARANOF TRADER and other identical barges safely, productively and without falling overboard. The only three witnesses (two lay, one expert) who are qualified to testify about the barge and its work agree unanimously -- without opposition from Abruska -- that expert and experienced longshoremen regularly and routinely work on barges with two perimeter wires and with wires that are not absolutely tight. None of the longshoremen has ever heard of a fellow longshoreman falling overboard. None of the longshoremen consider a two-wire system or a "loose" wire a genuine or unreasonable hazard. A three-wire barge system is virtually unknown to the three longshoremen. Abruska's allegation of a mandated (regulatory) third barge wire is legally groundless.

Abruska's *Opposition* is ultimately grounded on a no-fault seaworthiness standard that was abolished thirty-four years ago with the '72 Amendments to the Longshore Act. At best, Abruska has shown that a condition or appurtenance on board the BARANOF TRADER (i.e., a "loose wire") was unreasonably hazardous *to him*. However, an "unreasonable hazard" is simply an end-around statement of "unseaworthiness" and proves nothing subsequent to the '72 Amendments. A

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

breach of the *turnover duty* occurs only if the hazard poses a danger to an <u>expert and experienced</u> <u>longshore worker exercising reasonable care</u>. *Ludwig v. Pan Ocean Shipping, Co.*, 941 F.2d 849, 852 (9th Cir. 1991). Abruska offers no evidence -- none whatsoever -- to controvert the testimony and opinions of Emory, Donkersloot and Naekel. Abruska has arguments and theories, but no evidence from any source sufficient to prove his case or to avert summary judgment.

    Abruska's effort to defeat summary judgment in hopes of further evidence at trial is equally groundless. He accurately states that negligence cases are usually (though clearly not always) inappropriate for summary judgment. "Reasonable care" is the legal nuance that usually averts summary judgment. Abruska, however, offers no genuine evidence to support his unqualified and self-serving opinions about "reasonable care." Moreover, he overlooks or simply disregards the unique species of negligence found in § 905(b) cases. *See, Bandeen v. United Carriers (Panama), Inc.*, 712 F.2d 1336, 1340-1341 (9th Cir.1983)("It is the exceptional case, under *Scindia*, in which the shipowner remains liable as a "deep pocket" defendant;"); *Keller v. United States*, 1995 AMC 397, 38 F.3d 16, (1st Cir. 1994) (["T]he 'foreseeability' standard to which a vessel owner is held under its "duty of safe condition" has been relaxed [.]);" *Stahl v. Konkar Poseidon Corp.*, 883 F.2d 1024 (9th Cir. 1989)("Every shipowner has the authority to oversee stevedoring operations. If that authority, without more, suffices to charge the shipowner with a responsibility for detecting unsafe methods of operations and warning the longshoremen about them, then shipowners will be back in their pre-1972 position.")

    Abruska's accident and recognized injuries are equally genuine and unfortunate. However, there are no missing facts that need to be sorted out at trial. The hypothetical or theoretical dangers Abruska argues are neither genuine nor sufficient to avert summary judgment.

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 3 of 15 -

II    REPLY TO PLAINTIFF'S "FACTS"

Defendants reply point-by-point to the "Facts" set out in Section II of Abruska's *Opposition* brief.

A.    Abruska's accident and injuries

Abruska's statement of facts is generally accurate, though he does offer up two pages of purposefully extraneous injury discussion and several exhibits of medical records. The goal of his damages discussion is self-evident, improper and speaks rather plainly about Abruska's genuine summary judgment concerns.

Abruska also fails to mention in his *Opposition* that none of the genuinely skilled longshoreman testifying in the case (Emory, Donkersloot and Naekel) had concern before Abruska's accident, or afterwards, about a two-wire system. They likewise had no concern over the allegedly "loose" perimeter wire. Not one of the longshoreman had ever heard of a longshoremen "losing his balance" and falling overboard from a barge.[1]

B.    ABRUSKA'S WORK HISTORY

Abruska's review of his work history is notable only in its absence of any relevant or related work. Abruska had never before worked in any capacity aboard a barge. He had apparently, by his own account, never even stepped aboard a barge (working or otherwise). He had never worked a chain, shackle or turnbuckle. He had never worked around perimeter wires. He clearly knew nothing about how a barge afloat surges back and forth, away from the dock, as cargo is worked on deck. (*Opposition*, p. 3).

Abruska's relevant employment history is nevertheless insufficient to create a genuine issue of fact.

---

[1] Abruska makes much of a Northland Services Accident Report that identifies "inexperience," lack of "induction" and absence of supervision as factors contributing to the incident. Abruska ignores each of those factors -- in fact, denies their relevance -- and focuses solely on the ostensibly loose wire. In sum, Abruska endorses the portions of the report favoring his theory, but denies anything and everything to the contrary. As noted below, defendants recognize for purposes of summary judgment that the wire was "loose."

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 4 of 15 -

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

C.  ABRUSKA'S EMPLOYMENT BY NORTHLAND SERVICES

~~Abruska apparently contends --- for the first time --- he needed no training or supervision to~~ work as a longshoreman. His contention is clearly inaccurate. Firstly, trained longshoremen do not "lose their balance" and fall off barges. Secondly, and more importantly, Abruska's barge supervisor (Luke Donkersloot), recognized that Abruska's inexperience was "probably the biggest" factor precipitating his fall. *Ex. 1, p. 13.*

Though Abruska clearly wants to discount his inexperience and lack of supervision, he cannot reasonably deny he had no business working alone, for the first time, aboard a nearly-dark barge, lashing cargo around its perimeter, at 2:00 in the morning.

Abruska's two-hour employment history with Northland Services is nevertheless insufficient to create a genuine issue of fact.

D.  COAST GUARD REGULATION: RAILINGS

Abruska repeats the unsuccessful legal arguments he previously made to Judge Sedwick about the barge's perimeter wires. The arguments he makes in his *Opposition* add nothing to the discussion.

From an evidentiary standpoint, Abruska offers no genuine facts to indicate the barge was hazardous (i.e., "unseaworthy") with a two-wire system. More importantly, he offers no genuine facts or opinions to suggest a two-wire barge -- *even if in violation of a Coast Guard regulation* -- is unreasonably hazardous to expert and experienced longshoremen. The uncontroverted testimony is that the two-wire system was and remains adequate and safe for expert and experienced longshoremen exercising reasonable care.[2] There was no requirement for three perimeter wires aboard the BARANOF TRADER.[3]

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

---

[2] As an end-around to the governing legal standards under §905(b), Abruska argues that industry standards and practices are irrelevant. Properly considered, no other single fact (especially such an undisputed fact) could be more relevant in the evaluation of the "expert and experienced" longshore standard.

[3] Defendants further discuss regulatory issues in their *Opposition* to plaintiff's *Motion to Compel*, both on file with the Court.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 5 of 15 -

Abruska's discussion on negligence *per se* with respect to Coast Guard regulations and their applicability to longshoremen -- and his reliance on the *Duty* decision (footnote 6) -- is especially flawed. The *Duty* case involved a §905(b) claimant traveling to a worksite aboard a U.S. Coast Guard inspected workboat. *Duty v. East Coast Tender Service, Inc.* 660 F.2d 933, 935 (4th Cir. 1981). The boat's Certificate of Inspection required a licensed operator. ("The obtaining of the certificate . . . was necessitated by law. So too was operation in conformity with the certificate.") *Id.* The boat was at, at the time, underway, at sea and subject to Coast Guard authority. *Id.* OSHA had no jurisdiction or authority over manning or any other U.S. Coast Guard inspected activities aboard the boat. *OSHA Directive, CPL 2-1.20 – OSHA/U.S. Coast Guard Authority Over Vessels.* The operator of the boat when the subject accident/injury occurred was unlicensed. *Id.* The boat was clearly in violation of its Certificate of Inspection and Coast Guard licensing requirements. *Id.*

Abruska's incident, and the (in)applicability of a Coast Guard regulation, is a wholly distinct factual circumstance. Abruska's accident occurred alongside a dock in Naknek. The longshore operations occurring at the time -- as well as the barge worksite -- were subject solely and exclusively to OSHA jurisdiction and authority. *Defendants' Motion,* p. 20. The Coast Guard had no jurisdiction or authority over the barge perimeter wire or the activities of Northland Services aboard the barge. *OSHA Directive, CPL 2-1.20 – OSHA/U.S. Coast Guard Authority Over Vessels.* Even if three wires had been required at sea, there was no such requirement when the barge was dockside, where portions of the perimeter wires are regularly dropped to facilitate cargo handling. *Defendants' Motion*, p. 22.[4]

Abruska's argument about a three-wire requirement is legally baseless.

---

[4] Under the Coast Guard regulation cited by Abruska, there are no exceptions whatsoever for dropping any portion of the perimeter wire(s) during cargo activities. If, as Abruska alleges, the Coast Guard regulation were enforceable in port, there is no explanation offered by Abruska (or that *could* be offered by him) to explain the legality of this integral aspect of barge loading and unloading. The answer, of course, is that Coast Guard has no regulatory authority or jurisdiction over the barge during dockside cargo operations.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 6 of 15 -

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

E.  THE LOWER WIRE WAS "LOOSE"

The weight of evidence confirms the perimeter wire was not "too loose" as alleged by Abruska. The wire was "workable" (Barge Master Luke Donkersloot). The wire was sufficiently tight to pass the initial walk-around barge inspection by Operations Manager Bill Emory. The wire was sufficiently tight that neither Emory nor Donkersloot felt the need to tighten the wire even *after* Abruska's injury. *Ex. 3*, p. 36. ("[T]he one picture I took of the freight [sic] end of the safety line was the most unusual thing but it's not uncommon.") The wire not a "hazard," much less an unreasonable danger to expert and experienced longshoremen. (Leo Naekel) *Motion*, p. 28.

Defendants will assume, for purposes of summary judgment, the wire could have been made tighter. Abruska must admit, as well, that his employer (Northland Services) had the statutory duty to provide a safe workplace and was, at a matter of law, the party best able to prevent longshore injuries. *See, Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 171 (1981). Abruska's fellow longshoremen at Northland Services had readily available to them the knowledge, skill and manpower, as Luke Donkersloot explained, to "[p]ut a turnbuckle" to any wire that was considered too loose. *Ex. 3*, p. 21.

The purportedly loose wire -- which defendants will assume as such for purposes of summary judgment -- creates no genuine issue of material fact.

III  ARGUMENT

Abruska's legal arguments do not address or fairly draw near the stated principles of the '72 Amendments to the Longshore Act. The design of the 1972 Amendments was to shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries: the stevedore-employer. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 171 (1981). *See also, Hugev v. Damp. Int'l*, 170 F.Supp. 601, aff'd and adopted, 274 F.2d 875 (9th Cir. 1960), where the Court concluded,

> Stevedoring contractors hold themselves out as being trained and equipped to cope with [hazardous] conditions and these dangers. To this end, the stevedoring contractor is usually given full use and charge of the ship's loading and unloading equipment and appliances and the cargo hatches

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 7 of 15 -

and holds. So it is that *the stevedoring contractor cannot reasonably expect, and does not expect, to board a vessel* which in all respects, as to equipment and appliances as well as hull, is *in a seaworthy condition, or even in a reasonably safe condition*. Hence it is not reasonable to infer that the shipowner, in executing the stevedoring contract, impliedly covenants that the condition of the ship or of her equipment or appliances will exceed the stevedoring contractor's reasonable expectations.

Abruska misses the point altogether when he effectively argues that *any* hazard existing at turnover -- no matter the level of risk -- equates automatically to vessel negligence. Under Abruska's rationale, a six-foot length of 2" x 4" dunnage in the middle of the deck would be a hazard. If a neophyte longshoreman were to trip over the dunnage and be injured, the longshoreman would need merely to give his own self-serving opinion about vessel hazards to preclude summary judgment.[5] The testimony and opinions of other, more experienced longshoremen would be useless.

Abruska's rationale is buried by the same '72 Amendments that he failed to mention once in the entirety of his 33-page *Opposition*. Every longshoreman is presumed by law to be an expert who is required to be "mindful" of hazards, not forgetful of them. *Polizzi v. M/V ZEPHYROS II MONROVIA*, 860 F.2d 147, 149 (5th Cir. 1988).[6] Similarly, the *turnover duty* does not require a vessel be free of all foreseeable hazards. The duty relates only to hazards "that would prevent an expert and experienced stevedore from carrying on his operations in a reasonably safe manner." *Thomas v. Newton International Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994).

Under the standards argued by Abruska, any hazard whatsoever aboard a barge is a violation of the *turnover duty,* even if the longshoreman himself (or his supervisors) forgets or overlooks the hazard. Abruska analysis is far wide of the mark.

---

[5] If the longshoreman had an accident report prepared by his stevedore employer recommending that dunnage be henceforth picked up off the deck, the case would apparently grow even stronger.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 8 of 15 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

A. <u>Defendants Assume, for Purposes of Summary Judgment, the Wire Was "Too Loose"</u>

Abruska does not have the knowledge or expertise to pass judgment on the tension of the BARANOF TRADER's perimeter barge wire. The three longshoremen with the technical skills and experience to discuss the issue agree unanimously that the wire was "workable" and otherwise satisfactory (even after Abruska's accident) for longshore work.[7] The wire may not have been perfect, but there is no warranty running to longshoremen that a vessel is free from defect. *See, Bilderbeck v. World Wide Shipping Agency*, 776 F.2d 817, 818 (9th Cir. 1985).

Given the standards of summary judgment, defendants have assumed, solely for purposes of summary judgment, that a wire aboard the BARANOF TRADER was loose. There is no question of fact on this issue.[8] Likewise, there is no question whatsoever that expert and experienced longshoreman could and did work safely aboard the BARANOF TRADER with the wire *exactly as it was at the time of his accident*.

B. <u>The *Smith v. Eastern Seaboard* Decision Affirms Defendants' Position.</u>

Abruska's substantial discussion of and reliance on the *Smith* case offers a useful legal discussion that wholly favors defendants and cuts directly against Abruska's own arguments and theories. *Opposition, p. 17*.

In *Smith*, a marine diver (non-crewman) rode a tugboat to an offshore worksite. The diver jumped from the tugboat into the adjacent waters in the physical presence of the owner/operator's

---

[6] Defendants substantively deny there was any "hazard" aboard the barge, but for summary judgment purposes only, will assume the "loose" wire was a hazard of some sort.

[7] Abruska asks the Court to serve as his expert witness and take judicial notice that a "loose" wire has more restraining capacity than a tight wire. His request is wholly improper under *FRE 201*. Not only does a "loose" wire have the same break strain (or strength) as a tight wire, it could just as well be assumed a loose wire is more flexible, and thus, easier to grab hold of. *See also FRE 201 Advisory Committee's Notes* ("A high degree of indisputability is the essential prerequisite.")

[8] Abruska cites to the *Hedrick* case which, in turn, requires a shipowner to inspect its equipment before turning it over for use by the stevedore. The case is irrelevant, as Donkersloot, Emory and Naekel all believed the wire was perfectly fine as-is.

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

corporate President. *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789 (2nd Cir. 1979). The diver drowned while the President and tug crew tried in vain to rescue him. *Id.* at 792. In evaluating fault for the incident, the Second Circuit noted that under the '72 Amendments to the Longshore Act, "the shipowner was no longer saddled with a non-delegable duty to provide a safe place to work." *Id.* at 794. The court recognized, in turn, that the *stevedore* assumes responsibility for supplying a safe place to work "when it is given exclusive control over the workplace." *Id.*

In *Smith,* the tugboat's owner/operator was actively involved with -- and in control of -- the vessel (the "workplace") throughout the operation. The Court found that the "responsibility for providing a safe vessel from which to dive" remained with the owner/operator who was "in command [of the tugboat] throughout the operation." *Id.* at 796.

In direct opposition to the *Smith* case, the owner of the BARANOF TRADER (Northland Vessel Leasing), the barge's bareboat charterer (Naknek Barge Lines) and the barge's time charterer (Northland Services) had no active involvement or control over the barge during Abruska's work on the barge. Each of the named defendants surrendered control of the *longshore* operation -- the "workplace" -- to Northland Services, as stevedore/longshore employer. In particular, Northland Services (as time charterer) gave up control of the vessel to Abruska's employer; i.e., Northland Services as *stevedore*. The work of Northland Services -- in its Seattle headquarters -- as vessel time charterer was entirely distinct (operationally and managerially) from the work of Northland Services -- in Naknek -- as stevedore/employer. Abruska recognizes this critical legal distinction when he admits he "is not pursuing claims for breach of [the active control] dut[y]." *Opposition, p. 15.*[9]

---

[9] The absence by Abruska of any active-control allegation or theory is crucial. Northland Services -- as time charterer -- was, as a matter of law, not actively involved with or in control of the longshore operation.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 10 of 15 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

There is no genuine issue that Northland Services -- as stevedore/employer -- had exclusive control over the BARANOF TRADER (Abruska's workplace) when the accident occurred.

C.   <u>Abruska's Claim is Grounded on Unseaworthiness Principles, Abolished by the '72 Longshore Act Amendments.</u>

Abruska's *Opposition* brief, carefully read, ultimately reduces to an allegation of unseaworthiness. It is a legal argument that disappeared over thirty years ago with the '72 Amendments to the Longshore Act.

Under the Longshore Act, none of the defendants is charged with the no-fault responsibility for "seaworthiness" toward the Northland Services longshoremen. Abruska argues, nevertheless, he was injured by a "pre-existing condition" of the railing: the lack of a third course of railing and the loose lower railing." *Opposition, p. 16.* The railings, he argues, were "deficient and defective." The "condition" advocated by Abruska is precisely the sort of no-fault remedy the 1972 Amendments specifically eliminated. The following Ninth Circuit Pattern Jury Instruction -- *<u>with italicized explanation by defendants</u>* -- makes clear the nature of the "unseaworthiness" remedy eliminated by the 1972 Amendments:[10]

> <u>9.7  UNSEAWORTHINESS DEFINED.</u>
>
> A vessel owner has a duty to provide and maintain a seaworthy vessel. That duty cannot be turned over to anyone else.
>
> > *Under the 1972 Amendments, the vessel defendants owed no duty to stevedore/employer Northland Services or Abruska to provide a seaworthy vessel.*
>
> A vessel is seaworthy if the vessel and all of its parts and equipment are reasonably fit for their intended purpose and it is operated by a crew reasonably adequate and competent for the work assigned.

---

[10] The "unseaworthiness" remedy is no longer available to <u>longshoremen</u>, but remains a viable theory of recovery for injured <u>seamen</u>. *Cf., Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438 (2001).

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 11 of 15 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

> *The vessel defendants had no absolute duty to stevedore/employer Northland Services or Abruska to provide parts and equipment reasonably fit for their intended purposes.*

A vessel is unseaworthy if the vessel, or any of its parts or equipment, is not reasonably fit for its intended purpose or if its crew is not reasonably adequate or competent to perform the work assigned.

> *Even if the BARANOF TRADER had not been turned over to stevedore/employer Northland Services in a condition "reasonably fit for its intended purpose," Abruska would have no absolute right of recovery against vessel defendants.*

A vessel owner has a duty to provide adequate safety equipment for the vessel. However, the owner of the vessel is not required to furnish an accident-free ship. A vessel owner is not called on to have the best parts and equipment, or the finest crews, but is required to have what is reasonably proper and suitable for its intended use, and a crew that is reasonably adequate.

> *The statutory scheme under the Longshore Act now places the duty of providing safety appliances upon the stevedore employer; the stevedore remains liable for injuries to its workmen that result from any such failure[.]"* Bandeen, supra; Whitehill v. United States Lines, Inc., 177 Cal. App. 3d 1201 (1986).

Defendants are answerable for a distinct form of negligence, but the duty Abruska seeks to impose is a non-delegable duty of seaworthiness or, effectively, the duty to provide an absolutely safe place to work. The seaworthiness allegation is statutorily invalid. *Supra.* The duty to provide a safe place -- which Abruska seeks to thrust on all the defendants -- was owed only by Abruska'a employer, Northland Services.[11]

The authorities cited by Abruska to further his allegations under the *turnover duty* likewise offer Abruska no help. *Cf., Martinez*, 903 F.2d at 606. ("To defend a summary judgment motion, the injured longshoreman must specifically allege negligent conduct; otherwise, it is 'simply another attempt to get seaworthiness into the case in the face of a clear Congressional intent to

---

[11] Section 41 of the Longshore Act (33 U.S.C. § 941) puts the safety obligation on the stevedore -- the longshoremen's employer -- to provide a "reasonably safe" place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to the longshoremen. 33 U.S.C. § 941.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 12 of 15 -

ATTORNEYS AT LAW

BAUER
MOYNIHAN
& JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

remove it'."); *Thomas*, 42 F.2d at 1266 ("Thomas presented evidence, including the declaration of her expert witness [ ], regarding the hazardousness of the unguarded hatch opening ... Plaintiff's expert was a longshore worker with 29 years experience ... [who] had worked in every job category within the industry and for every stevedoring company.")  The Court in *Thomas* concluded, "Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion. . . . Because the declaration raises a material issue of fact as to the ultimate issue of "unreasonable dangerousness," the motion for summary judgment must be denied." *Id.* at 1270.

Abruska, of course, has no expert witness or knowledgeable lay witnesses to support his hypothetical and idiosyncratic theories. Abruska himself worked as a longshoreman for all of two hours in his lifetime and is not qualified to offer expert testimony.[12] He has, quite simply, no genuine evidence to challenge the testimony of Emory, Donkersloot and Naekel and their sixty years of longshore experience.

If it assumed solely for purposes of argument that a third wire was required aboard the BARANOF TRADER, it must be recognized that the absence of the wire was an "obvious" condition that was recognized as adequate and required no change.  The "loose" perimeter wire, too, would have been an open and obvious condition acceptable to Northland Services.

IV    CONCLUSION

The Longshore Act is one of many legal and contractual systems that depend largely upon risk allocation in advance, rather than upon fault-based litigation. In advancing that pattern, the

---

[12] Abruska is charged by law as having the knowledge of "an expert and experienced longshoreman" for purposes of Longshore Act obligations.  He does not, however, have the foundation to testify as an expert witness on longshore safety or practices.

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 13 of 15 -

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

Court in *Scindia* established a practical division of responsibility between the stevedoring and carrying segments of the shipping industry. H.R. Rep. No. 92-1441, 92d Cong., 2nd Sess. (1972); Senate Rep. No. 92-1125, 92nd Cong., 2nd Sess. (1972).

Here, there are no missing facts to be uncovered before or at trial. The BARANOF TRADER was turned over to Abruska's employer (Northland Services) in a condition reasonably safe for expert and experienced longshoremen. The vessel defendants had no duty to warn of a hazard that did not realistically exist, given the experience, expertise and specific barge knowledge of Northland Services. Likewise, the vessel defendants had no duty to alter any appurtenance aboard the barge that was not a genuine hazard to experienced longshoremen. Plaintiff Abruska offers no genuine evidence to the contrary. If, as Abruska alleges, a wire were too loose, then his employer should have simply "but a turnbuckle to it." Abruska's allegation about a third perimeter wire is borderline frivolous.

Abruska has failed to set forth any genuine evidence establishing liability against any of the defendants. Defendants respectfully ask the Court to dismiss all claims, under all theories of liability, advanced against them.

DATED this 2nd day of June, 2006.

BAUER MOYNIHAN & JOHNSON LLP

/s/ Thomas G. Waller

Thomas G. Waller, Alaska Bar No. 0109052
Attorneys for Defendants
2101 Fourth Avenue, Suite 2400
Seattle, Washington 98121
Tel: 206-443-3400
Fax: 206-448-9076
E-mail: tgwaller@bmjlaw.com

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 14 of 15 -

## CERTIFICATE OF SERVICE

I declare under penalty of perjury of the laws of the state of Washington that on June 2, 2006 I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Neil T. O'Donnell**
Email: nto@acglaw.com

**Christopher J. Slottee**
s/Monique Lefebvre
_____
Monique Lefebvre
E-mail: mplefebvre@bmjlaw.com

ATTORNEYS AT LAW
BAUER
MOYNIHAN
& JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

DEFENDANTS' REPLY RE: SUMMARY JUDGMENT
Abruska / Northland; No. A04-209 CV (JKS)
- 15 of 15 -