NEIL T. O'DONNELL
CHRISTOPHER J. SLOTTEE
ATKINSON, CONWAY & GAGNON
Attorneys for Plaintiff Joseph Abruska
420 L Street, Suite 500
Anchorage, Alaska 99501-1989
Phone: (907) 276-1700
Fax: (907) 272-2082
nto@acglaw.com
cjs@acglaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH ABRUSKA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NORTHLAND VESSEL LEASING ) <br> COMPANY, LLC, et al., ) <br> ) <br> Defendants. ) <br> _____) | Case No. 3:04-cv-209-TMB <br><br> **REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT** |

**I.    INTRODUCTION**

The Baranoff Trader is not an unmanned tank barge governed by 46 C.F.R. § 32.02-10. The Baranoff Trader had only a limited license to carry liquid fuel and its primary purpose was not the carriage of liquid cargo. Therefore, under the plain language of the regulations, the Baranoff Trader was governed by 46 C.F.R. § 92.25-5(a)'s requirement that it have three courses of safety railings. Furthermore, the only evidence before the Court is that installation of a third course of safety railings would not be unreasonable or impracticable considering the Baranoff Trader's use and design. Therefore, the Court

should find that the Baranoff Trader was governed by 46 C.F.R. § 92.25-5 and that it accordingly violated that regulation because it did not have three courses of safety railings.

## II. THE BARANOFF TRADER WAS REQUIRED TO COMPLY WITH 46 C.F.R. § 92.25-5 BECAUSE ITS PRINCIPLE PURPOSE OR USE WAS NOT THE CARRIAGE OF LIQUID FUEL

The defendants argue that the Baranoff Trader was not required to have three courses of safety railings because it is allegedly an unmanned tank barge and 46 C.F.R. § 32.02-10 exempts unmanned tank barges from the requirement that there be three courses of safety railings. Abruska does not dispute that 46 C.F.R. § 32.02-10 exempts unmanned tank barges from the three railing requirement. Abruska also does not dispute that the Baranoff Trader had a **limited** license to carry liquid fuel.

Abruska does dispute that the Baranoff Trader was an unmanned tank barge because that was not its primary purpose. The fact that the Baranoff Trader had a limited license to carry liquid fuel does not make the Baranoff Trader an unmanned tank barge. The regulations permit the Coast Guard to issue a limited license to a barge to carry liquid fuel if the "principle purpose or use of the vessel is not for the carriage of liquid cargo," which was indisputably the case here, but such a barge is still required to comply with 46 C.F.R. § 92.25-5 (which contains the three course safety railing requirement).[1]

---

[1] The defendants cite to that portion of Judge Singleton's order stating that the Baranoff Trader was an unmanned tank barge and that unmanned tank barges are exempt from 46 C.F.R. §92.25-5. As also recognized by the defendants, however, the issue of whether the Baranoff Trader was an unmanned tank barge and the applicability of 46 C.F.R. § 32.02-10 was not raised or argued in the earlier briefing. See (Opp., p. 2, n. 1). This issue was not decided by Judge Singleton. (Ex. 7).

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland*, Case No. 3:04-cv-209 (TMB)
Page 2 of 12
84980/7407.1

The Coast Guard regulations governing freight barges, unmanned tank barges, and other vessels are located at 46 C.F.R. et. seq. The regulations are divided into subchapters, with each subchapter governing a different type of vessel. Subchapter D applies to tank vessels, manned or unmanned. 46 C.F.R. § 30 et. seq. Subchapter I applies to cargo vessels, including unmanned barges. 46 C.F.R. § 90 et. seq. Both subchapters contain regulations governing the number of railings a barge is required to have.

46 C.F.R. § 32.02-10(a) states that all tank vessels governed by Subchapter D must have three courses of railings, but exempts unmanned tank barges from this requirement. 46 C.F.R. § 92.25-5(a) states that all vessels governed by Subchapter I must have three courses of railings. There is no exception in 46 C.F.R. § 92.25(a) for barges of any type. Thus, if Subchapter D governs the Baranoff Trader, it is not required to have three courses of safety railings. If Subchapter I governs the Baranoff Trader, it must have three courses of safety railings.

In order to determine which Subchapter the Baranoff Trader falls under, the Court must look to the relevant tables in the regulations. Subchapter D and Subchapter I use the same table to identify the vessels governed by each respective Subchapter.[2] Table 30.01-5(d) and Table 90.05-1(a) are attached hereto as Exhibits 1 and 2. To determine

---

[2] See 46 C.F.R. § 30.01-5(d) ("This subchapter [referring to Subchapter D] is applicable to all U.S.-flag vessels indicated in Column 2 of Table 30.01-5(d)...."); 46 C.F.R. 90.05-1(a) ("This subchapter [referring to Subchapter I] is applicable to all U.S.-flag vessels indicated in Column 4 of Table 90.05-1(a)....")

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 3 of 12
84980/7407.1

whether Subchapter D or Subchapter I governs the Baranoff Trader, the Court must look to columns 2 and 4, respectively, of those tables. (Id.)

Column 2 of Table 30.01-5(d) states that Subchapter D applies to all non-self propelled vessels greater than 100 tons "carrying combustible or flammable liquid cargo in bulk." (Ex. 1 to Reply, p. 2.) Column 4 of Table 30.01-5(d) states that Subchapter I applies to all non-self propelled sea-going barges greater than 100 tons that are not covered by Columns 2 and 3.[3] (Ex. 1 to Reply, p. 2.) The relevant portion of Table 30.01-5(d) is set out below with the applicable columns highlighted:

Table 30.01-5(d) (continued)

| Method of propulsion, qualified by size or other limitation.[1] | | Vessels inspected and certificated under-- | | | Vessels subject to the provisions of-- | | |
|---|---|---|---|---|---|---|---|
| | | Subchapter D--Tank Vessels.[2] | Subchapter H--Passenger Vessels[2, 3, 4, and 5] or Subchapter K or T--Small Passenger Vessels.[2, 3, and 4] | Subchapter I--Cargo and Miscellaneous Vessels.[2 and 5] | Subchapter C--Uninspected Vessels.[2, 3, 6, 7, and 8] | Subchapter U--Oceanographic Vessels.[2, 3, 6, 7, and 9] | Subchapter O--Certain Bulk and Dangerous Cargoes.[10] |
| (4) | Non-self-propelled, vessel ≥ 100 gross tons. | All vessels carrying combustible or flammable liquid cargo in bulk.[5] | i) All vessels that-- A) Carry more than 12 passengers-for-hire whether chartered or not, or B) Carry more than 12 passengers when chartered with the crew provided, or C) Carry more than 12 passengers when chartered with no crew provided, or D) Carry at least 1 passenger-for-hire and is a submersible vessel, or E) Carry more than 12 passengers on an international voyage.[7] | All seagoing barges except those covered by columns 2 and 3. | All barges carrying passengers or passengers-for-hire, except those covered by columns 3 and 6. | All seagoing barges engaged in oceanographic research. | All tank barges carrying cargoes listed in Table 151.05 of this chapter or unlisted cargoes that would otherwise be subject to part 151.[1, 11, and 12] |

Column 2 (Subchapter D) refers to vessels actually "carrying" such cargo, not to vessels with merely a limited license to carry such cargo. (Ex. 1 to Reply, p. 2.) Furthermore, the regulations make clear that the principle purpose of the vessel has to be the carriage of flammable liquid cargo to be considered a tank vessel. (Id.)

---

[3] Table 90.05-1(a) is identical. (Ex. 2 to Reply.)

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland*, Case No. 3:04-cv-209 (TMB)
Page 4 of 12
84980/7407.1

> Footnote 5 to Column 2 (Subchapter D) of Table 30.01-5(d) states:
>
> Vessels covered by Subchapter H (Passenger Vessels) or I (Cargo and Miscellaneous Vessels) of this chapter, **where the principle purpose or use of the vessel is not for the carriage of liquid cargo, may be granted a permit to carry a limited amount of flammable or combustible cargo in bulk**. The portion of the vessel used for the carriage of the flammable or combustible liquid cargo must meet the requirements of subchapter D (Tank Vessels) **in addition to the requirements of subchapter** H (Passenger Vessels) or **I (Cargo and Miscellaneous Vessels)** of this chapter.

(Ex. 1 to Reply, p. 6) (emphasis added). Consequently, the regulations permit the Coast Guard to issue a limited license to a barge to carry liquid fuel if the "principle purpose or use of the vessel is not for the carriage of liquid cargo," but the barge is still required to comply with the requirements of Subchapter I, including three course safety railing requirement of 46 C.F.R. §92.25-5. (Id.) Thus, the presence of a limited license to carry fuel does not mean that a barge is an unmanned tank vessel subject to Subchapter D.

The primary purpose of the Baranoff Trader is not the carriage of liquid fuel. Bill Emory, Northland Services' operations manager in Naknek, testified that Northland Services does not transport fuel. (Ex. 3 to Reply, Emory Depo. p. 112) (*"Q: Does Northland Services transport any fuel? A: No."*) Luke Donkersloot testified that the Baranoff Trader transported fuel only for company purposes, and even then only rarely. (Ex. 4 to Reply, Donkersloot Depo, pp. 77-78) (*"Q: Does the Baranoff Trader haul any fuel at all? A: It has, but just for company use. . . . Q: Okay. Does it do that very often? A: Unh-unh (negative)."*) Furthermore, the Coast Guard's Certificate of Inspection (COI) conclusively establishes that the Baranoff Trader was given only a limited license to carry liquid fuel and that the barge's

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 5 of 12
84980/7407.1

primary purpose could **not** be the carriage of liquid fuel. (Ex. 1 to Opp., p. 2). The COI states:

> This vessel is authorized to carry grade d in port and stbd after rake wing tanks to a maximum capacity of 100,000 gallons **as fuel for the towing vessel** only during **occasional long voyages.** When not carrying fuel during **occasional long voyages**, tanks are to be emptied of all fuel.

(Ex. 1 to Opp., p. 2) (emphasis added). The Baranoff Trader was prohibited by its COI from carrying liquid fuel for any purpose other than providing fuel to its towing vessel. (Ex. 1 to Opp., p. 2). The Baranoff Trader could only carry that fuel during "occasional long voyages." (Ex. 1 to Opp., p. 2). Based on the undisputed testimony of Emory and Donkersloot, and the COI issued by the Coast Guard, the Baranoff Trader's primary purpose is the carriage of freight, not the carriage of liquid fuel. (Exs. 3, 4 to Reply; Ex. 1 to Opp.).

The fact that the Baranoff Trader had a limited license to carry liquid fuel for its towing vessel on occasional long voyages does not mean that the Baranoff Trader was an unmanned tank vessel subject to Subchapter D. According to Table 30.01-5(d), the requirements of Subchapter I continue to apply to the Baranoff Trader because its primary purpose was not the carriage of liquid fuel. (Ex. 1 to Reply, p. 4). Subchapter I requires three courses of railings for all barges, including the Baranoff Trader. 46 C.F.R. §92.25-5(a).

### III. THE MARINE SAFETY MANUAL CANNOT ABROGATE COAST GUARD REGULATIONS

The defendants argue that Abruska has failed to show that the Coast Guard's interpretation of 46 C.F.R. § 92.25-5 was unreasonable. In making this argument, the

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 6 of 12
84980/7407.1

defendants both ascribe an unjustified expansive reading of Judge Singleton's order and ignore the Coast Guard's obligation to comply with the plain terms of its regulations.

46 C.F.R. § 92.25-5 requires three courses of railings unless it can be shown that this requirement would be "unreasonable and impracticable, having regard to the business of the vessel." 46 C.F.R. § 92.25-5(a). Based on this limited exception, Judge Singleton found that the Coast Guard could exercise its discretion to exempt unmanned barges from the three-railing requirement and that the Coast Guard had done so with the Marine Safety Manual.

Judge Singleton, however, also properly recognized that the Coast Guard could not ignore the plain language of 46 C.F.R. § 92.25-5, including its limitation on the Coast Guard's discretion to exempt vessels from the requirements of the regulation to cases where installation of three courses of railings would be "unreasonable and impracticable." (Ex. 7, pp. 7). See also Pub. Employees Ret. Sys. v. Betts, 492 U.S. 158, 171 (1989) (agency interpretation of a regulation or statute that conflicts with the plain language of the regulation or statute is entitled to "no deference."); Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984) (agency cannot adopt an interpretation of a regulation that conflicts with that regulation). Judge Singleton also recognized that the Marine Safety Manual did not have the force of law, but only the power to persuade. (Ex. 7, p. 5). Other courts have also recognized that the Marine Safety Manual does not have the force of law and cannot overrule the plain language of the regulations. In Berry v. Land and Lake Tours, Inc., 169 F. Supp. 2d 973 (W.D.Ark. 2001), the court noted

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 7 of 12
84980/7407.1

that "[w]hile [the Marine Safety Manual] is an important document, it cannot overrule a regulation." Id. at 976. The court concluded that the Coast Guard could not provide its inspectors with discretion in determining whether to issue a notice of deficiency when regulation did not authorize that type of discretion. Id. See also Smith v. United States Coast Guard, 220 F. Supp. 2d 275, 281 n. 7 (S.D.N.Y. 2002) (Marine Safety Manual did not have the force of law); BP Exploration & Oil, Inc. v. U.S. Dept. of Transportation, 44 F. Supp. 2d 34, 38 (D.D.C. 1999) (noting that Coast Guard could not rely on Marine Safety Manual to disregard the law or regulations); DFDS Seacruises (Bahamas) Ltd. v. United States, 676 F. Supp. 1193, 1203 (S.D.Fla. 1987) (Marine Safety Manual does not have the force of law).[4]

Consequently, Judge Singleton did not deny Abruska's motion because he found that having three railings would be unreasonable and impracticable or that the Coast Guard's Marine Safety Manual was entitled to deference.[5] Rather, Judge Singleton recognized that it was Abruska's burden to show that the Baranoff Trader violated 46 C.F.R. § 92.25-5, and that required a showing that the Baranoff Trader did not fall within 46 C.F.R. § 92.25-5's exception to the three-railing requirement. (Ex. 7, p. 8). This required Abruska to prove "that installation of a third railing was reasonable and practicable in light of the BARANOFF TRADER'S use and design." (Ex. 7, p. 8).

---

[4] These cases were discussed in Plaintiff's Reply to Motion for Summary Judgment, filed March 1, 2005.

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 8 of 12
84980/7407.1

With this motion, Abruska has met his burden of proof. There can be no dispute that 46 C.F.R. § 92.25-5 applies to the Baranoff Trader. See supra Section I. Furthermore, the only evidence before the Court is that installation of a third railing would not interfere with any operations on the Baranoff Trader, or any other freight barge for that matter. (Emory Depo., Ex. 3, pp. 107-110; Naekel Depo, Ex. 5 to Reply, pp. 51-52, 61-63).[6] Installation of a third course of railing would also not be difficult. (Emory Depo. Ex. 3, p. 107; Naekel Depo. Ex. 5 to Reply, pp. 62-63). The defendants have submitted no contrary evidence. Therefore, the Court must find that installation of a third course of railing was not unreasonable and impracticable. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (to survive summary judgment, nonmovant must submit "significant probative evidence" tending to refute movant's evidence); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.")

  The defendants complain that Abruska has not addressed why unmanned tank barges should be treated differently from unmanned freight barges, as unmanned tank barges do not have to have three courses of railings. As shown above, however, that is not always

---

[5] In fact, the Court found that the Marine Safety Manual was not entitled to any deference. (Ex. 7, p. 5). It was "entitled to 'respect,' but only to the extent it has the 'power to persuade.'" (Ex. 7, p. 5).

[6] Leo Naekel is the defendants' expert. His deposition was taken shortly before Abruska filed his Renewed Motion for Summary Judgment and a transcript of his testimony was not available until after the filing of that motion. Abruska also discussed Mr. Naekel's testimony regarding whether a third course of railing was reasonable and practicable in his Opposition to the defendants' Joint Motion for Summary Judgment. See (Docket 45, p. 8).

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 9 of 12
84980/7407.1

true.  See supra Section I.  Regardless, that was not Abruska's burden of proof.  The plain language of 46 C.F.R. § 92.25-5 requires unmanned freight barges to have three courses of railings.  46 C.F.R. § 92.25-5(a).  The only exception to that rule is if a third course of railing would be unreasonable and impracticable.  Id.  The only evidence is that a third course of railing would not be unreasonable and impracticable.  Supra p. 7.  Thus, the Coast Guard's interpretation of 46 C.F.R. § 92.25-5 has been shown to conflict with the plain language of the regulation and is of no effect.  Pub. Employees Ret. Sys., 492 U.S. at 171; Chevron, U.S.A., Inc., 467 U.S. at 842-43.  The Court should therefore find that the Baranoff Trader violated 46 C.F.R. § 92.25-5(a).

### IV.   IF THE BARANOFF TRADER DID NOT HAVE THREE COURSES OF RAILINGS, THE DEFENDANTS WERE NEGLIGENT *PER SE*

The defendants argue that the Baranoff Trader's violation of 46 C.F.R. §92.25-5 is irrelevant to any issues in this case.  The defendants made this same argument in their motion for summary judgment.  See (Docket 28).  Abruska responded to this argument in his opposition to the defendants' motion for summary judgment and Abruska incorporates that response herein.  See (Docket 45, pp. 18-21).  It is clear that the defendants' violation of 46 C.F.R. §92.25-5 is relevant.  See e.g. Martinez v. Korea Shipping Corp., Ltd., 903 F.2d 606, 611 (9th Cir. 1990) (violation of regulations relevant to standard of care in LHWCA claim).  The only evidence in the case is that Abruska fell overboard **between** the two existing courses of safety wire – right where the third wire should have been.  Furthermore, the absence of the required third wire is dispositive of the issue of defendants' negligence. Duty v. East Coast Tender Service, Inc., 660 F.2d 933, 947 (4th Cir. 1981) (LHWCA

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 10 of 12
84980/7407.1

defendant violated Coast Guard regulations; reversible error not to instruct jury that violation resulted in defendant being negligent *per se*); Restatement (Second) of Torts § 288B (violation of regulation is "conclusive on the issue of an actor's negligence").

## V.   CONCLUSION

The Baranoff Trader's principle purpose is not the carriage of liquid fuel. Therefore, it is not governed by 46 C.F.R. § 32.02-10, but rather by 46 C.F.R. §92.25-5. Furthermore, the only evidence is that it was not unreasonable or impracticable to install three courses of railings on the Baranoff Trader. The Court must conclude the Coast Guard's blanket exemption of all unmanned barges from the requirements of 46 C.F.R. §92.25-5 conflicts with the plain language of that regulation and is of no legal effect.

Therefore, the Baranoff Trader violated 46 C.F.R. §92.25-5 and the defendants were negligent *per se.*

DATED this 2nd day of June, 2006.

> ATKINSON, CONWAY & GAGNON
> Attorneys for Joseph Abruska
>
> By        s/ Christopher J. Slottee
>         Christopher J. Slottee
>         420 L Street, Suite 500
>         Anchorage, AK 99501
>         Phone:  (907) 276-1700
>         Fax:  (907) 272-2082
>         E-mail:  cjs@acglaw.com
>         ABA No. 0211055

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 11 of 12
84980/7407.1

I certify that on June 2, 2006, a copy
a copy of the foregoing was served electronically
on the following attorneys or parties of record:

Thomas G. Waller, Esq.

By      s/ Christopher J. Slottee
           Christopher J. Slottee

Reply to Opposition to Renewed Motion for Summary Judgment
*Abruska v. Northland, Case No. 3:04-cv-209 (TMB)*
Page 12 of 12
84980/7407.1