UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JOSEPH ABRUSKA,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHLAND VESSEL LEASING CO., LLC; NAKNEK BARGE, LLC, and NORTHLAND SERVICES, INC.<br><br>Defendants. | No. 3:04-cv-00209-TMB<br><br>MEMORANDUM DECISION and ORDER<br>[Re: Motions at Docket Nos. 28 and 36] |

## I. MOTION PRESENTED

At Docket No. 28 defendants Northland Vessel Leasing Co., LLC ("Northland Leasing"), Naknek Barge, LLC ("Naknek"), and Northland Services, Inc. ("Northland Services") (collectively "Northland Defendants") have filed a motion for summary judgment. Plaintiff Joseph Abruska ("Abruska") has filed an opposition to the motion,[1] to which the Northland Defendants have replied.[2] At Docket No. 36 Abruska has filed a motion to compel responses to discovery. The Court heard oral argument on the motion for summary judgment on October 2, 2006. At Docket Nos. 67 and 68 Abruska has filed supplemental materials. The Court having considered the moving papers, opposition, oral argument and supplemental materials now renders its decision.

## II. BACKGROUND/FACTS

There is little, if any, dispute over the facts in this case. On August 24, 2003, Abruska was employed as a longshoreman by Northland Services to work on the barge

---

[1] Docket 48. In his opposition Abruska expends significant effort expounding upon the severity of the injuries he suffered. That Abruska suffered serious injuries does not appear to be in dispute in this case and certainly was not an issue raised by the motion.

[2] Docket 53.

*Baranof Trader*.[3] Northland Leasing owned the *Baranof Trader* and Naknek, as the bare boat charterer, was the owner *pro hac vice*.[4] Northland Services, in addition to being the stevedore, was the time-charterer of the *Baranof Trader*.[5] Abruska alleges that while he was "engaged in shackling operations," he slipped and fell "between the two cables running the circumference of the *Baranof Trader*."[6] He caught himself on the lower cable, but when the barge moved back against the dock, Abruska was "crushed" between the dock suffering severe injuries.[7] It is undisputed that the *Baranof Trader* was equipped with only two cable railings strung between stanchions.[8] Abruska brought this suit under § 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), alleging that the Northland Defendants were negligent "in using, furnishing and maintaining unsafe and improper railings."[9]

It is undisputed that Abruska has received benefits to which he is entitled under § 4 of LHWCA [33 U.S.C. § 906]. While Abruska may nonetheless maintain this action,[10] he may not receive a double recovery under the LHWCA.[11]

### III. ISSUES

The motion at bar presents two issues. First, whether the Northland Defendants, or any of them, owed Abruska a duty of care under the LHWCA. Second, assuming a duty of care existed under the LHWCA, whether that duty of care was breached and that breach was a proximate cause of Abruska's injuries.

---

[3] Amended Complaint, p. 2, ¶ 10, Docket 14 at 2.

[4] *Id.*, ¶¶ 7, 8.

[5] *Id.*, ¶ 9.

[6] *Id.*, p. 4, ¶ 19, Docket 14 at 4.

[7] *Id.*, ¶¶ 20, 21, 22.

[8] Opposition to Defendants' Motion for Summary Judgment, Exh. 3, pp. 14, 22, Docket 48-5 at 14, 22.

[9] Amended Complaint, p. 4, ¶ 24, Docket 14 at 4.

[10] *Rodriguez v. Bowhead Transp. Co.*, 270 F.3d 1283, 1286 (9th Cir.2001).

[11] *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530 n. 5 (1983).

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                              2

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[12] Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[13] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[14] The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. In order to show that a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[15] Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[16] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[17]

---

[12] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989).

[13] FED. R. CIV. P. 56(e)

[14] *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir.2002).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[16] *Id.* at 255.

[17] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
Abruska v. Northland Vessel Leasing Co., et al
No. 3:04-cv-00209-TMB                    3

## V. DISCUSSION

Abruska brings this action against the Northland Dependants in their capacities as the owner, owner *pro hac vice*, charterer or bare boat charterer.[18] LHWCA § 5(b) [33 U.S.C. § 905(b)] provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

LHWCA § 2(21) [33 U.S.C. § 902(21)] broadly defines "vessel" as:

> Unless the context requires otherwise, the term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

Northland Services and Northland Leasing deny that they are liable as vessels under LHWCA. Naknek, provided that the injury can be attributed to the negligence of the vessel under the LHWCA, concedes that it is. The facts concerning the ownership and operational control of the *Baranof Trader* are undisputed.

---

[18] Abruska concedes that he can only recover from Northland Services for negligence in its capacity as a "vessel." *Jones & Laughlin Steel Corp. v. Pfeifer, supra*, 462 U.S. at 531 n. 6.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    4

Northland Leasing was at all times material solely a vessel holding company.[19] It owned the barge *Baranof Trader*, but had no offices, no staff, no employees and no involvement in the operations of its vessels. Its sole function was to hold title to vessels for demise (bare boat) charter to third parties.[20]

Naknek was at all times relevant the bare boat charterer (owner *pro hac vice*) of the *Baranof Trader*. As a bare boat charterer, Naknek operated the towing vessel that towed the barge and, as such, had exclusive navigational control over the barge at sea but it had no offices or other personnel based in Alaska.[21]

Northland Services was at all material times a transportation and stevedoring company. Northland Services time-chartered the barge *Baranof Trader* from Naknek. Under the Time Charter, Naknek had exclusive navigation and control of the *Baranof Trader* (with its tugs and crew) between destinations identified by Northland Services.[22] Personnel employed by Northland Services at its corporate shipping offices in Seattle were responsible for the barge's scheduling, ports of call and cargo booking. Those employees were not involved in the loading, unloading or lashing of cargoes in Naknek.[23] Northland Services also operated as a stevedore/longshoreman employer in August 2003, with its longshoremen loading and unloading the *Baranof Trader* when it arrived and departed Naknek. Northland Services supervisors and longshoremen in Naknek were employed solely to load and unload the barges.[24] They did not take any part in and had no responsibility for the booking or destinations of cargoes.[25]

---

[19] It appears that at the time of the incident that Northland Vessel was a corporation and has since become a LLC. That change in status from corporate to LLC is irrelevant to the issues presented in the case or the liability of Northland Vessel.

[20] Declaration of Barry Hachler, Docket 29.

[21] Declaration of Ed Hiersche, Docket 30.

[22] Declaration of Barry Hachler, Docket 29.

[23] *Id.*

[24] *Id.*

[25] *Id.*

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    5

Case 3:04-cv-00209-TMB   Document 71   Filed 10/10/2006   Page 6 of 16

A vessel owes three duties to stevedores: the turnover duty, the active control duty, and the duty of intervention.[26] The parties agree that to the extent that the Northland Defendants have liability as "vessels," that liability is governed by the "turnover duty" rule. That is, in their respective capacities as owner, owner *pro hac vice*, or bare boat charterer of the vessel, the Northland Defendants had a duty to turn over the *Baranof Trader* and its equipment

> in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.[27]

As noted above, Abruska posits his negligence claim on that one of two, or both, conditions contributed to his injury: (1) use of a two-wire instead of a three-wire railing; and (2) the slack lower wire. The Northland Defendants assert that Abruska's injuries were the sole result of the negligence of Northland Services as the stevedore.[28]

Abruska's primary thrust on the "two-wire" theory is that it constitutes negligence *per se*. His position is based upon the assumption that the use of two-wire railings violated 46 C.F.R. § 92.25-5.[29] Unfortunately for Abruska the Court has ruled twice that

---

[26] *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 812 (9th Cir.2003).

[27] *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 167 (1981).

[28] The Court notes that where an injury to a longshoreman while loading or unloading cargo from a vessel is occasioned by the combined negligence of the shipowner, stevedore and injured longshoreman, the liability of the shipowner is not restricted to that proportion of total damages that matches its proportion of fault; thus, as long as a shipowner has any degree of fault it may be made to pay all the damages not due to the injured longshoreman's own negligence. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 273 (1979).

[29] 46 C.F.R. § 92.25-5 provides:
(a) All vessels shall have efficient guard rails or bulwarks on decks and bridges. The height of rails or bulwarks shall be at least 39½ inches from the deck except that where this height would interfere with the normal operation of the vessel, a
(continued...)

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
Abruska v. Northland Vessel Leasing Co., et al
No. 3:04-cv-00209-TMB                    6

§ 92.25-5 does not apply to the *Baranof Trader*.[30] That is the law of the case; therefore, Abruska has failed to establish negligence *per se*. While the custom of the industry or the defendant may establish the existence of a duty,[31] Abruska has failed to introduce evidence that a three-wire railing was the custom of the industry.[32] Indeed, while Abruska has produced evidence that a three-wire railing would be safer, he has produced no evidence whatsoever that the use of a two-wire railing was negligent or a design defect. Moreover, the Ninth Circuit in *Bandeen v. United Carriers (Panama), Inc.*,[33] in holding that a vessel owner was not liable for failure to provide rigging between stanchions that could have prevented a worker from falling overboard, made clear that it is the duty of the stevedore to provide whatever safety equipment was required, not the vessel. In this case, as in *Bandeen*, the lack of a third wire did not cause the fall.[34] Abruska's two-wire theory, without a specific showing of negligence on the part of the

---

[29](...continued)
lesser height may be approved by the Commandant. At exposed peripheries of the freeboard and superstructure decks, the rails shall be in at least three courses, including the top. The opening below the lowest course shall not be more than 9 inches. The courses shall not be more than 15 inches apart. In the case of ships with rounded gunwales the guard rail supports shall be placed on the flat of the deck. On other decks and bridges the rails shall be in at least two courses, including the top, approximately evenly spaced. If it can be shown to the satisfaction of the Officer in Charge, Marine Inspection, that the installation of rails of such height will be unreasonable and impracticable, having regard to the business of the vessel, rails of a lesser height or in some cases grab rails may be accepted and inboard rails may be eliminated if the deck is not generally accessible.

[30] Dockets 11, 60.

[31] *Christensen v. Georgia-Pacific Corp.*, supra, 279 F.3d 812–813.

[32] The sole evidence on this point is the testimony of Leo Naekel that one barge operated by B-P in Prudhoe Bay had a three-wire railing. Opposition to Defendants' Motion for Summary Judgment, Exh. 5, Deposition of Leo Naekel, pp. 50:11–51:7, Docket 48-7 at 7, 8.

[33] 712 F.2d 1336, 1340 (9th Cir.1983).

[34] This fact also differentiates this case from the case relied on by Abruska: *Martinez v. Korea Shipping Corp., Ltd.*, 903 F.2d 606 (9th Cir.1990). In *Martinez* the lack of a safety railing around the ladder opening caused the fall. 903 F.2d at 611. It also differs from *Hedrick v. Daiko Shoji Co. Ltd., of Osaka*, 715 F.2d 1355 (9th Cir.1983), also relied on by Abruska, in which a defective splice caused the injury.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB    7

Northland Defendants, amounts to a claim that the barge was unseaworthy, a strict liability action not cognizable under § 905(b).[35/]

The slack wire poses a somewhat different and, perhaps, closer question. In this respect, it was not a lack of safety equipment but an alleged failure of the vessel to properly maintain the safety equipment that was an integral part of the vessel itself. That is, the condition was existing at the time that the *Baranof Trader* was turned over to the stevedore, Northland Services. Viewed in the light most favorable to Abruska, the evidence establishes: (1) the wire was slack at the time the vessel was turned over;[36/] it could have been ascertained by a reasonable inspection;[37/] and that the slack wire was a major contributing factor to the accident.[38/]

As noted above, the primary duty to provide a safe workplace lies with the stevedore. It is not disputed that the vessel was in the control of the Northland Services in its capacity as stevedore at the time of the Abruska accident. A vessel has a duty to take reasonable steps to eliminate or correct any dangerous conditions only if: (1) the vessel knows or should know of the condition; (2) realizes or should realize the condition presents an unreasonable risk of harm to expert and experienced longshoremen; (3) knows or should know that the stevedore, as a result of an obviously

---

[35/] "The liability of a vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 36 U.S.C. § 905(b); *DeLange v. Dutra Const. Co., Inc.*, 183 F.3d 916, 921 (9th Cir.1999) (*per curium*).

[36/] Defendants' Joint Motion for Summary Judgment, Exh. 3, Deposition of Luke Donkersloot, pp. 3, Docket 28-4 at 3 (testimony that the wire had been slack all summer).

[37/] See *Howlett v. Birkdale Shipping Co. S.A.*, 512 U.S. 92, 99-100 (1994). The only evidence of an inspection identified by the parties was a walk-around *after* turnover of the barge. Defendants' Joint Motion for Summary Judgment, Exh 1, Deposition of William "Bill" Emory (Northland Services' stevedore/longshore supervisor), 55:19–56:14, Docket 28-2 at 6. During this walk-around, a loose wire railing on the side of the barge opposite the side in question was noted. *Id.*; 29:15–21, Docket 28-2 at 4.

[38/] See Opposition to Defendants' Motion for Summary Judgment, Exh. 2, p. 5, Docket 48-4 at 5.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    8

improvident judgment, has failed to remedy the situation; and (4) the vessel helped create the hazard.[39]

Initially, the court must determine whether Northland Leasing and Northland Services were responsible for the slack wire railing. When the owner of the vessel enters into a demise or "bare boat" charter, all possession and control of the vessel is surrendered to the charterer. Since the owner no longer has the right to control the use of the vessel, the owner, who now holds bare legal title, is no longer charged with the duties and liabilities that arise out of its ownership. Conversely, the demise charterer becomes subject to the duties and responsibilities of ownership.[40] As one leading commentator has stated:[41]

> Concerning liability to third parties, a basic distinction is whether the charter is a demise or bareboat charter, on the one hand, or a time or voyage charter, on the other. The vital distinction between a demise and other charter parties is whether the charterer is given the exclusive control of the vessel. In a demise, in contrast to other charters, the charterer is considered the owner *pro hac vice*. The charterer is accordingly liable *in personam* for all liabilities arising out of the operation of the vessel; he is responsible for the actions of the master and crew. The shipowner is generally not liable *in personam*, although the ship may be liable *in rem*. Even in this case, the charterer is obliged to indemnify the owner against liability suffered by the vessel as a consequence of the charterer's negligence. The shipowner may be liable, however, where liability or injury results from unseaworthiness or negligence which existed prior to delivery of the vessel to the demise charterer.

Consequently, all incidents of, and liabilities for, ownership of the *Baranof Trader* transferred to Naknek with the demise charter.[42] Accordingly, since Northland Leasing

---

[39] *Torres v. Johnson Lines*, 932 F.2d 748, 750–751 (9th Cir.1991).

[40] 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW, § 11-3 (4th ed.); *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir.1973); *see Dant & Russell, Inc. v. Dillingham Tug & Barge Corp.*, 895 F.2d 507, 510 (9th Cir.1998).

[41] 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MAR. LAW, § 11-18 (4th ed.) (footnotes omitted).

[42] Naknek concedes it was the owner *pro hac vice* with operational and navigational control over the *Baranof Trader*.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    9

was not responsible for the maintenance and repair of the *Baranof Trader* preceding Abruska's injury and there is no evidence that the condition existed at the time control of the vessel was transferred from Northland Leasing to Naknek, it was not responsible for the slack wire rail. Therefore, it was not negligent within the scope of § 905(b) liability.[43]

The Court agrees that under certain circumstances a time charterer, such as Northland Services, may have liability under § 905.[44] However, the Court does not agree with Abruska that it is appropriate to do so under the facts of this case. In the traditional time charter arrangement, the charterer directs the commercial activities of the vessel, but the owner retains navigation and management of the vessel. Possession and control remain with the owner and the ship is operated by its regular crew, but the charterer determines the ship's routes and destinations.[45] Generally a time charterer, one who has no control over the vessel, assumes no liability for negligence of the crew or condition of the vessel absent a showing that the parties to the charter intended otherwise.[46] The activities of Northland Services as a time charterer did not fall outside those duties normally associated with a time charterer. There is no evidence that Northland Services exercised operational control over the *Baranof Trader* or that it was negligent while acting in its capacity as time charterer of the vessel; the mere fact that it directed movement and cargo operations does not establish operational control.[47] To accept Abruska's argument would be tantamount to

---

[43] The court notes that this result would not apply to the "three-wire" argument advanced by Abruska—if the railing were defective under that theory, it predated the charter.

[44] See *Rodriguez v. Bowhead Transp. Co.*, 270 F.3d 1283, 1286 (9th Cir.2001); *Carpenter v. Universal Star Shipping, S.A.*, 924 F.2d 1539, 2542. (9th Cir.1991).

[45] *Kerr-McKee Corp. v. Ma-Ju Marine Services, Inc.*, 830 F.3d 1332, 1340–1341 (5th Cir.1987)

[46] *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1062 (5th Cir.1989).

[47] *Alexander v. United States*, 63 F.3d 820, 822–823 (9th Cir.1995).

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    10

holding that § 905(b) imposes strict liability on vessels; a view that has been expressly rejected by controlling authority.[48]

As noted above, the situation with respect to Naknek differs. As the demise or bare boat charterer, Naknek had full responsibility for the operation, repair and maintenance of the *Baranof Trader*. It is therefore bears full responsibility as the owner under § 905(b). For Naknek the question becomes whether it had a duty to correct the slack wire.

The difficult problem that Abruska must overcome and this Court must address arises out of the fact that, as noted above, the law places primary responsibility for the safety of longshoremen on the stevedore, not the vessel. It is further complicated by the nature of the accident. Abruska slipped, fell, or otherwise lost his balance, and went between the upper and lower wire railings but managed to catch the lower wire which prevented him from falling completely overboard into the water, which is precisely what vessel railings are primarily intended to do, yet permitted him to hang outboard the *Baranof Trader*. The *Baranof Trader* moved crushing Abruska between the vessel and the dock.

There is no evidence that any defect in the vessel caused Abruska to slip or otherwise lose his balance and fall. Abruska testified concerning the accident:[49]

> Q. You don't know what made your foot slip when you fell, do you? Or did your foot slip?
>
> A. I just remember falling over. I don't think I slipped, I just kneeled down and tumbled to the side, on my way to pick up a shackle.
>
> Q. Were you working inside the wires or outside the wires?
>
> A. Inside, next to the container vans.
>
> Q. Did you fall headfirst. Or which direction did you go?
>
> A. I went off to the left.
>
> Q. Your left side?

---

[48] *DeLange v. Dutra Const. Co., Inc.*, supra.

[49] Opposition to Defendant's Motion for Summary Judgment, Exh. 1 Deposition of Dennis Abruska, II, pp. 163:16–165:21; 170:5–171:7, Docket 48-3 at 18–20.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                11

A. Yes. My left side, towards the water, over the bottom one, right over the top of that.

Q. Did you realize how close you were to the wires at the time, or was it too dark?

A. Well, there's not much room, anyway, you're pretty much up against those.

Q. Were you holding on to the wires at the time you were bending over?

A. I couldn't say.

Q. Do you know if you went under the bottom course of the wire, through the two courses, or over the top?

A. I went over the bottom course of wire.

Q. Sideways or backwards?

A. Kind of sideways.

Q. Off to your left side?

A. Yes, off to my left side.

Q. And you don't know what precipitated your loss of balance; is that safe to say?

A. Yes.

Q. Did you grab the wire, at some point?

A. Yes. After I rolled over the wire, I managed to grab the cable, safety wire.

Q. Is it the top you grabbed or the bottom?

A. The bottom one, the one I rolled over.

Q. And did that support you?

A. When I was holding on?

Q. Right.

A. After I fell over?

Q. Right.

A. Yes.

Q. So you were hanging on to that?

A. Yes.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
Abruska v. Northland Vessel Leasing Co., et al
No. 3:04-cv-00209-TMB                 12

Case 3:04-cv-00209-TMB   Document 71   Filed 10/10/2006   Page 13 of 16

> Q. With one hand or two hands?
>
> A. At first, one hand was the one that caught me, and then I switched over to two.
>
> Q. Were you in the process of pulling yourself back up? Or what happened next?
>
> A. Yes. I tried to pull myself back up onto the deck of the barge, and tried to call for help.
>
> Q. Okay.
>
> A. But I didn't have my hands free, for the radio.
>
> \* \* \* \*
>
> Q. Let's go back to the accident again. Can you describe for me everything that you can recall happening? We kind of jumped here and there. Can you just, in your own words, say what — kind of, as you were standing there, and then when you fell, how that came about?
>
> A. Okay. I was working on the barge, and had a shackle in my hand to tie the turnbuckle. And I dropped the shackle down and bent down and on one of my knees and was picking up the shackle. And then I fell off the side and rolled over the bottom cable. And I was holding on with one hand and I turned around and grabbed it, grabbed the other — I grabbed the cable with my other hand, as well, and tried pulling myself back up. And the barge started coming in and pinned me against — against the piling, and proceeded to smash me for a period of ten seconds, I'd say, and it went back out. I moved over a little ways, to get away from the piling, turned around, grabbed the I-beam and pulled myself to the horizontal I-beam. I sat down and lifted my leg, my right leg, up over the I-beam, laid down and then radioed for help.
>
> And then Bill Emory came down on the barge and found me, and then he called — called the paramedics and family and everything.

The evidence in the record shows that, if it were taut, the lower wire would be approximately 18 inches above the deck and the distance between the two wires approximately 17½ inches.[50/] What the evidence does not establish is the actual distance the lower wire was above the deck or the distance between the wires at the time of the accident. Abruska argues that if the bottom wire was not slack it would have

---

[50/] Opposition to Defendants' Motion for Summary Judgment, Exh. 3, p. 23, Docket 48-5 at 23; Affidavit of Rhonda Gerharz, Exhs. 1 and 2, Dockets 68-2, 68-3.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                         13

prevented him from passing between the wires. The only direct evidence that the fact the lower wire was slack contributed to Abruska's injuries is the conclusory statement in the accident report prepared by Northland Services that Abruska was able to fall through the safety lines due to the lower line being slack.[51] The other evidence in support of that hypothesis, the testimony by Leo Naekel that may be construed as opining that if the bottom wire had not been slack Abruska probably would not have slipped between the wires, is somewhat equivocal.[52] However, be that it as it may, it is not for the Court to weigh the evidence on a motion for summary judgment.

This case does not fall within the scope of those decisions where the defect caused the accident; to the contrary, it falls within the scope of the line of cases where the controlling authority placed the responsibility for providing a safe work place for longshoremen on the stevedore.[53] While viewing the evidence in the light most favorable to Abruska the alleged hazard existed at the time the barge was turned over to the stevedore, Northland Services, and Naknek should have known that it existed, the evidence fails to show that Naknek realized either that the condition created an unreasonable hazard or risk to an expert and experienced stevedore, or, if did create such a risk, that Northland Services, the stevedore, would improvidently fail to correct it.[54]

Although the parties spend not inconsiderable time arguing over the relative inexperience of Abruska, his experience or inexperience is irrelevant. What is relevant is whether the barge was turned over "in such condition that an expert and experienced *stevedoring contractor*, mindful of the dangers he should reasonably expect to

---

[51] Opposition to Defendants' Motion for Summary Judgment, Exh. 2, p. 5, Docket 48-4 at 5.

[52] Affidavit of Leo Naekel, Exh. 1 p. 2, Docket 31 at 3; Plaintiff's Supplemental Material Regarding Lower Safety Rail Height, Exh. 13, Deposition of Leo Naekel, 49:3–49:10, Docket 67 at 3.

[53] Compare *Martinez v. Korea Shipping Corp., Ltd.*, supra, with *Bandeen v. United Carriers (Panama)*, supra.

[54] *Torres v. Johnson Lines*, supra.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                    14

encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property."[55] Northland Services' supervisor testified that a walk-around inspection was conducted before the accident and a loose wire was discovered and corrected on the side opposite the side where the accident occurred,[56] but he was unaware that the lower wire where the accident occurred was loose.[57] However, Luke Donkersloot, an experienced longshoreman and Northland Services supervisor, testified that he was aware of the loose wire but considered it to be still "workable."[58] Loose wires were also routinely repaired when necessary by Northland Services' employees,[59] which is easily done by simply tightening the turnbuckle that connects it to the stanchion.[60]

Abruska was not injured because Naknek failed to turnover the barge in a reasonably safe condition. To the extent that the slack lower wire contributed to Abrusjka's injuries, it was as a result of the failure of the stevedore, Northland Services, to remedy an obvious condition.[61] This case is almost on all fours with the Ninth Circuit decision in *Bandeen*. Just as the vessel had no duty to string lines between the

---

[55] *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (emphasis added); see also *Federal Marine Terminals, Inc. v Burnside Shipping Co.*, 394 U.S. 404, 416 n. 18; *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1208 (9th Cir.1989)

[56] Defendants' Joint Motion for Summary Judgment, Exh 1, Deposition of William "Bill" Emory (Northland Services' stevedore/longshoreman supervisor), 29:15–21; 55:19–56:14, Docket 28-2 at 4, 6.

[57] *Id.*, 42;13–15, Docket 28-2 at 5.

[58] Defendants' Joint Motion for Summary Judgment, Exh. 3, Deposition of Luke Donkersloot, pp. 3, 5, Docket 28-4 at 3, 5.

[59] *Id.*, p. 8, Docket 28-4 at 8.

[60] *Id.*, p. 6, Docket 28-4 at 6. This was also demonstrated, without objection, by counsel for the Northland Defendants at oral argument.

[61] Northland Services, as the stevedore, may also have been negligent in allowing Abruska, an obviously inexperienced longshoreman, to work unsupervised in the locale and under the conditions that existed where Abruska was working. However, as counsel for Abruska pointed out in oral argument, even experienced longshoremen can lose their balance and tumble. There is no evidence that Abruska's inexperience contributed to the accident.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                         15

stanchions in *Bandeen*, the vessel had no duty to ensure that the safety lines installed on the *Baranof Trader* were taut or were adequate to prevent Abruska from falling between the wires. That responsibility lay with Northland Services, the stevedore. As the Ninth Circuit Stated in *Bandeen*:[62/]

> It is the exceptional case, under *Scindia*, in which the shipowner remains liable as a "deep pocket" defendant, when it turns the vessel over to the stevedore for loading. This was not one of the exceptional cases. To permit a jury to reimpose, under the guise of negligence, back-up liability for the stevedore's failure to provide adequate safety devices would be to repeal the statutory amendments and restore the pre-1972 practice which allowed longshoremen and their employers to pass the costs of loading and unloading accidents back to the ship under the rubric of unseaworthiness. The trial court correctly refused to frustrate the intent of Congress in this manner.

## VII. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment at Docket 28 is **GRANTED**; and Plaintiff's Motion to Compel Discovery at Docket 36 is **DENIED**, as moot.

IT IS ORDERED THAT the case be, and it hereby is, **DISMISSED**, with prejudice; Plaintiff to take nothing by way thereof, and judgment entered thereon in favor of Defendants. Costs, if any, to be awarded in accordance with FED. R. CIV. P. 54(d) and D. AK. LR 54.1

The Clerk of the Court to enter judgment accordingly.

Dated:   October 10, 2006

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[62/] 712 F.2d at 1341.

MEMORANDUM DECISION and ORDER [Re: Motions at Dockets 28 & 36]
*Abruska v. Northland Vessel Leasing Co., et al*
No. 3:04-cv-00209-TMB                                16