FILED

DEC 10 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RECEIVED

FEB 04 2008

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

| | |
|---|---|
| JOSEPH ABRUSKA,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>NORTHLAND VESSEL LEASING CO., LLC; NAKNEK BARGE, LLC; NORTHLAND SERVICES, INC.,<br><br>Defendants - Appellees. | No. 06-35932<br><br>D.C. No. CV-04-00209-TMB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted August 6, 2007
Anchorage, Alaska

Before: WALLACE, NOONAN, and PAEZ, Circuit Judges.

While performing longshoreman's work aboard the Baranof Trader, Joseph Abruska fell overboard and sustained serious injuries. After recovering statutory damages from his employer, pursuant to the Longshore and Harbor Workers'

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901-950, he sought damages in negligence from the vessel, pursuant to section 5 of the Act, 33 U.S.C. § 905(b). Because Abruska produced evidence sufficient to establish a triable issue of fact as to both claims, the district court erred in granting summary judgment to Defendants Northland Vessel Leasing Co., Naknek Barge, LLC, and Northland Services Inc. (collectively "Defendants" or "the vessel").[1] We therefore reverse and remand for further trial proceedings.

I.

All three defendants are potentially liable as "the vessel" for purposes of the Act. *See* § 902(21) (defining "vessel" as, *inter alia*, the vessel's owner, owner pro hac vice, or charterer). The fact that Abruska recovered statutory damages from Northland Services, acting as his employer, pursuant to § 905(a) does not bar his claim for negligence against Northland Services, acting as "the vessel", pursuant to § 905(b). *See Jones & Laughlin Steel Corp. v. Pfiefer*, 462 U.S. 523, 532 (1983); *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 788-89 (9th Cir. 2007) (explaining the dual-capacity doctrine).

II.

[1] As explained in the text, pursuant to § 902(21), all three defendants are potentially liable in negligence as "the vessel" and are therefore collectively referred to as such.

46 C.F.R. § 92.25-5 requires all vessels subject to subchapter I of the Coast Guard regulations, which pertains to cargo vessels, to have three-course guard rails "[a]t exposed peripheries of the freeboard and superstructure decks." Abruska asserts that the vessel was negligent *per se* because at the time of his injury its upper deck had a two-course rail.[2]

We agree. The Baranof Trader, as a cargo vessel, is clearly subject to § 92.25-5. The Certificate of Inspection ("COI") issued by the Coast Guard identifies the boat as a "freight barge;" the Marine Survey Certification similarly identifies it as "deck cargo barge." We therefore reject Defendants' characterization of the Baranof Trader as an "unmanned tank vessel" subject to subchapter D of the Coast Guard regulations.

Nor is the Coast Guard's interpretation of § 92.25-5 in its Marine Safety Manual, wherein it exempts "unmanned deck cargo barges for ocean service" from § 92.25-5 requirements, entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). Section 92.25-5 is unambiguous in its requirement that "[a]ll vessels" have three-course railings at the freeboard and superstructure decks. *See also* §

[2] To prevail on this theory Abruska must show a regulatory violation, membership in the class of intended beneficiaries, an injury of the type the regulation at issue seeks to prevent, absence of excuse for the violation, and causation. *See Fuszek v. Royal King Fisheries, Inc.*, 98 F.3d 514, 517 (9th Cir. 1996).

92.01-1 ("Provisions of this subpart . . . shall apply to all vessels.") "*Auer* deference is warranted only when the language of the regulation is ambiguous . . . . To defer to the agency's position [where the regulation is not ambiguous] would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000).

Not only is § 92.25-5 unambiguous, but the Coast Guard's interpretation in the Marine Safety Manual is inconsistent with the text of the regulation, which does not authorize the Coast Guard categorically to exempt an entire group of vessels from these requirements. Rather, § 92.25-5 requires a determination by the Officer in Charge, and not the Coast Guard generally, that the rail requirements would be "unreasonable and impracticable, having regard to the business" of the particular vessel. Even if § 92.25-5 were ambiguous, the Marine Safety Manual would not control because in this regard it is "plainly . . . inconsistent with the regulation." *Auer*, 519 U.S. at 461.

Nor may Defendants rely on the exception in § 92.25-5, allowing for "rails of a lesser height or in some cases grab rails may be accepted and inboard rails may be eliminated if the deck is not generally accessible" when it is "shown to the satisfaction of the Officer in Charge, Marine Inspection, that the installation of

[such] rails . . . will be unreasonable and impracticable, having regard to the business of the vessel." First, it is unclear whether this exception abrogates § 92.25-5's three-course requirement or only the rail-height requirements. Even assuming that it eliminates both, there is no evidence that the Officer in Charge made the requisite determination of unreasonableness and impracticability for the Baranof Trader. Defendants have not produced authority to support the proposition that issuing the COI indicated such a determination by the Officer in Charge who, in signing the COI, simply "certified the vessel, in all respects, is in conformity with the applicable vessel inspection laws and the rules and regulations prescribed thereunder." This denotes general compliance with Coast Guard regulations but not a specific determination of unreasonableness and impracticability so as to warrant the limited exception in § 92.25-5.

Because § 92.25-5's three-course safety rail requirement applies to the Baranof Trader and because the vessel only had a two-course rail, Abruska has established a regulatory violation. There is also sufficient evidence of the remaining elements to survive summary judgment. Abruska belongs to the class of beneficiaries and suffered an injury of the type the regulation seeks to prevent. *See* Fed. Reg. 1058, ¶ 26 (Feb. 25, 1954) (expressing congressional goal of

"reduc[ing] the possibility of people falling through the guard rails").[3] As to excuse, Defendants have produced no evidence to support their burden of proving this affirmative defense. Abruska's own evidence would support a jury's conclusion in his favor regarding causation.[4]

III.

"[T]he vessel owes to stevedore and his longshoremen employees the duty of exercising due care 'under the circumstances.'" *Scindia Steam Navigation Co., Ltd. v. de los Santos*, 451 U.S. 156, 166 (1981) (quoting *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415 (1969)). Abruska's common-law negligence claim involves only one dimension of this generalized duty of care, the turnover duty of safe condition, which requires "exercising ordinary care under the

---

[3] Defendants' argument that Coast Guard Regulations do not extend to non-seamen lacks merit. The fact that Occupational Health and Safety Administration ("OSHA") regulations govern longshoremen does not mean that Coast Guard regulations do not also apply. *See Martinez v. Korea Shipping Corp., Ltd.*, 903 F.2d 606, 611 (9th Cir. 1990) (amended opinion) ("Although OSHA standards only impose a duty on stevedores, . . . it is not an exclusive duty."); *see also Duty v. East Coast Tender Serv., Inc.*, 660 F.2d 933, 938-39 (4th Cir. 1981) (en banc) (entertaining longshoreman's cause of action for negligence *per se* under 33 U.S.C. § 905(b) based on vessel's alleged violation of an applicable Coast Guard regulation).

[4] The accident report, for example, found that the Baranof Trader's top deck had a two-course safety rail and concluded that "[i]nadequate . . . safety lines" were a "<u>major contributing factor</u>" to the accident.

circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." *Id.* at 167. The vessel therefore owed Abruska a duty to turn over the Baranof Trader in such condition that Northland Services, acting in its capacity as the employer, would be able to pursue its stevedoring operations with reasonable safety to its workers.

Abruska produced evidence that the slack lower wire presented a safety risk to workers. The accident report, for example, notes that "[t]he lower safety line, although connected to vertical stanchions, was loose and did not provide an effective barrier" and that "[i]nadequate and improperly secured safety lines . . . [are] considered to be a major contributing factor. Joseph was able to fall through the safety lines due to the lower line being slack."[5] Defendants' own witness testified that it is industry custom to provide adequate safety railings. Contrary to Defendants' and the dissent's assertion, Abruska was not required to produce expert testimony on the issue of breach. *See Salem v. United States Lines Co.*, 370 U.S. 31, 36-37 (1962) (holding that plaintiff was not required to produce expert

[5] The accident report also concluded that "[i]nexperience and the absence of effective supervision are considered to be major contributing factors." This created a material question of fact whether a more experienced worker would have faced the same risk of falling overboard.

testimony to establish a claim that the vessel's lack of railings or other safety devices rendered it unseaworthy); *Spokane & Inland Empire R. Co. v. United States*, 241 U.S. 344, 351 (1916) (holding that question of whether defendant breached duty under applicable safety statutes "was not one for experts"); *cf. Torres v. Johnson Lines, N.Y.K.*, 932 F.2d 748, 751 (1992) (affirming exclusion of expert testimony in § 905(b) case because such evidence "is appropriate . . . only . . . [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence" and because the "jury was capable of using common sense to evaluate, without the help of experts, whether [shipowner's negligence caused] the accident").

Abruska has thus satisfied his burden to defeat summary judgment on his common-law negligence claim by producing evidence that the slack lower wire was hazardous to longshoremen and therefore constituted a breach of the turnover duty of safe condition. *See Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (reversing summary judgment dismissal of § 905(b) claim when the worker produced evidence that the shipowner turned over the vessel to the stevedore with a hazardous condition and explaining that whether obviousness of the hazard absolved shipowner's liability was "inappropriate for resolution at the summary judgment stage"); *see also Scheuring*, 476 F.3d at 791 (reversing

summary judgment dismissal of § 905(b) claim when plaintiff's evidence showed a hazardous condition and noting that the "ultimate issue of 'unreasonable dangerousness'" was a question of fact for the jury); *Martinez*, 903 F.2d at 611 (similar); *Subingsubing v. Reardon Smith Line, Ltd.*, 682 F.2d 779, 782 (9th Cir. 1982) (holding that shipowner owed the plaintiff longshoreman a duty of care to keep the vessel free of "dangerous and non-obvious tripping hazards" and remanding for determination of breach).

In reaching a contrary conclusion, the district court incorrectly applied the duty of active control and duty to intervene standards to Abruska's claim that Defendants breached the turnover duty of safe condition. On remand the district court should consider only whether the vessel was turned over to the employer in such condition that an expert and experienced stevedore, exercising reasonable care, would be unable to carry out its stevedoring operations with reasonable safety to its workers.

Finally, the district court erred in requiring that Abruska establish direct causation. Abruska can prevail on a theory of proximate causation by showing that the slack lower wire was a "substantial factor in the injury." *See Moore v. M/V Angela*, 353 F.3d 376, 383 (5th Cir. 2003) (discussing causation for purposes

of breach of a *Scindia* duty). To the extent the accident report so concluded, Abruska's evidence is also sufficient to survive summary judgment on this issue.

IV.

Abruska produced evidence sufficient to survive summary judgment on both his negligence *per se* and common-law negligence claims. We therefore reverse the district court's summary judgment in favor of Defendants and remand for further proceedings.

**REVERSED and REMANDED.**

FILED

DEC 10 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

*Abruska v. Northland Vessel*, No. 06-35932
WALLACE, Senior Circuit Judge, dissenting:

I conclude that the district court's summary judgment is not reversible on either the issue of common-law negligence or negligence *per se*, and therefore respectfully dissent.

Prior to 1972, a longshoreman injured while unloading a ship could recover directly from a shipowner, even if the condition that caused his injury was created by the stevedore. *See Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 164-65 (1981). When Congress amended the Longshore and Harbor Workers' Compensation Act (Act) in 1972, it "radically changed this scheme of things." *Id.* The amendments "substantially increased" the compensation payments an injured longshoreman could recover from the stevedore, while expressly limiting the shipowner's liability in section 905(b). *Id.* at 165.

Abruska has already recovered from the stevedore. To recover further, Abruska must demonstrate that his is an "exceptional case, under *Scindia*, in which the shipowner remains liable as a 'deep pocket' defendant, when it turns the vessel over to the stevedore for loading." *Bandeen v. United Carriers (Panama), Inc.*, 712 F.2d 1336, 1341 (9th Cir. 1983). The turnover duty of care requires a shipowner to,

> exercis[e] ordinary care under the circumstances to have the ship and its equipment in such condition that an <u>expert and experienced</u>

> stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property . . . .

*Scindia*, 451 U.S. at 167 (emphasis added). As we explained in *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1208 (9th Cir. 1989), the Supreme Court's choice of language "implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them." Therefore, to succeed on a claim against a shipowner, "the plaintiff must introduce evidence that the hazard was such that an expert and experienced stevedore would not be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." *Id.* (quotation marks removed; citation omitted).

Abruska has not met his burden of proof on this issue. He presented no expert testimony as to whether a slack line would have been hazardous to an expert and experienced stevedore. The mere fact of Abruska's accident also does not meet the requirement given his inexperience. Because Abruska has failed to produce sufficient evidence, I would affirm the district court's summary judgment on this issue.

Although the issue is closer, I would also affirm the district court on the issue of negligence *per se*. Coast Guard regulations require unmanned cargo

vessels, like the Baranof Trader, to maintain three-course guardrails. 46 C.F.R. § 92.25-5. These regulations, however, provide an exception, whereby "rails of a lesser height or in some cases grab rails," are acceptable when it is "shown to the satisfaction of the Officer in Charge, Marine Inspection, that the installation of rails of such height will be unreasonable and impracticable, having regard to the business of the vessel." *Id.*

The majority contends that this exception only serves to excuse the height requirement of section 92.25-5, and does not allow for two-course railings. On September 25, 2000, however, the Officer in Charge signed a Certificate of Inspection which certified that the Baranof Trader was in compliance with all Coast Guard regulations. Under the text of the regulation, the only way for a vessel to simultaneously comply with section 92.25-5 and have only two rails, is to fall within the exception. Implicit in the officer's certification, then, was a determination that an additional rail would have been unreasonable and impracticable given the business of the Baranof Trader. Such a finding is consistent with the Marine Safety Manual, which provides "[t]he rail and deck guard requirements of 46 CFR 92.25 do not apply to unmanned deck cargo barges for ocean service." Therefore, I would also affirm the district court's summary judgment on the issue of negligence *per se*.